COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
BETHANY C. LOBO (248109)
(blobo@cooley.com)
YUHAN ALICE CHI (324072)
(achi@cooley.com)
ERIK LAMPMANN-SHAVER (362460)
(elampmannshaver@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

NAOMI HARRALSON MAY (291462)
(nmay@cooley.com)
NACHI A. BARU (345978)
(nbaru@cooley.com)
10265 Science Center Drive
San Diego, CA  92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

Attorneys for Defendant
RENAISSANCE LEARNING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| NICOLE REISBERG, on behalf of her minor children M.C. 1 and M.C. 2, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RENAISSANCE LEARNING, INC.,<br><br>Defendant. | Case No. 8:25-cv-01379-FWS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:          December 11, 2025<br>Time:          10:00 a.m.<br>Courtroom:   10D<br><br>Pretrial Conference:   Not Yet Set<br>Trial Date:              Not Yet Set |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................... 1

II. FACTUAL BACKGROUND ......................................................... 2

    A.  Established Student Data Privacy Laws Govern Renaissance's Provision of Services to Schools. ................................................ 2

    B.  Plaintiff Does Not Identify the At-Issue Data or Products. ................. 3

III. LEGAL STANDARD ................................................................... 5

IV. ARGUMENT ............................................................................. 6

    A.  Plaintiff's Complaint Falls Short of Rule 8's Pleading Requirement. ...................................................................... 6

    B.  Plaintiff's Section 1983 Claims Fail Because Plaintiff Has Not Pled State Action or an Actionable Constitutional Violation (Counts I and II). ................................................................. 7

        1.  Plaintiff Has Not Pled that Renaissance Is a State Actor. .......... 7

        2.  Plaintiff Alleges No Cognizable Violation of the Fourth or Fourteenth Amendment. ............................................. 10

    C.  Plaintiff's Federal and State Wiretapping Claims Fail Because She Has Not Alleged An "In Transit" Interception of "Content," Third-Party Involvement, or Recording of "Confidential" Communication (Counts III, IV, and IX). ................................. 12

    D.  Plaintiff Lacks Standing Under CDAFA and Fails to Plead a CDAFA Violation (Count V). ............................................... 16

    E.  Plaintiff's UCL Claim Fails Because She Lacks Standing and Does Not Plausibly Plead Any of the Prongs (Count VI). ................. 18

    F.  Plaintiff Does Not State Privacy-Related Tort Claims (Counts VII and VIII). .................................................................... 20

    G.  Plaintiff Does Not State a Viable Unjust Enrichment Claim (Count XI). ..................................................................... 23

    H.  Plaintiff's WDTPA Claim Should Be Dismissed (Count X). ........... 24

V.  CONCLUSION ......................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*A.C. by and through Park v. Cortez,*
  34 F.4th 783 (9th Cir. 2022)............................................................................... 12

6

7

*Aleksick v. 7-Eleven, Inc.,*
  205 Cal. App. 4th 1176 (2012)........................................................................... 19

8

9

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001).............................................................................. 11

10

11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 5

12

13

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015).............................................................................. 23

14

15

*Avist v. Cnty. of Napa,*
  No. C 00-1525 VRW, 2000 WL 1268244 (N.D. Cal. Aug. 31,
  2000)................................................................................................................... 11

16

17

*B.K. v. Eisenhower Med. Ctr.,*
  721 F. Supp. 3d 1056 (C.D. Cal. 2024).............................................................. 21

18

19

*Baiul-Farina v. Lemire,*
  804 F. App'x 533 (9th Cir. 2020)....................................................................... 23

20

21

*Banga v. Equifax Info. Servs. LLC,*
  No. 14-cv-03038-WHO, 2015 WL 3799546 (N.D. Cal. June 18,
  2015)................................................................................................................... 21

22

23

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 5

24

25

*Belluomini v. Citigroup Inc,*
  No. C 13-01743 CRB, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)............... 22

26

27

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009).............................................................................. 18

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020)................................................................. 13

*Camara v. Mun. Ct. of City & Cnty. of S.F.*,
    387 U.S. 523 (1967) ............................................................................................ 10

*Cappello v. Walmart Inc.*,
    No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019)................... 19

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010)................................................................................. 9

*Cherkin v. PowerSchool Holdings, Inc.*,
    No. 24-cv-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025).................... 19

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) ............................................................................... 7

*Cousart v. OpenAI LP*,
    No. 23-cv-04557-VC, 2024 WL 3282522 (N.D. Cal. May 24, 2024)................... 7

*Custom Package Supply, Inc. v. Phillips*,
    No.15:cv-04584-ODW-AGR, 2015 WL 8334793 (C.D. Cal. Dec. 7,
    2015)................................................................................................................... 16

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................................ 20

*Doe v. Cnty. of Santa Clara*,
    No. 23-cv-04411-WHO, 2024 WL 3346257 (N.D. Cal. July 8,
    2024)................................................................................................................... 17

*Doe v. Davita Inc.*,
    No.: 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr.
    24, 2024)............................................................................................................. 21

*Dusterhoft v. OneTouchPoint Corp.*,
    No. 22-cv-0882-BHL, 2024 WL 4263762 (E.D. Wis. Sept. 23,
    2024)................................................................................................................... 25

Cooley LLP
Attorneys at Law
San Francisco

- iii -

Memo. of Points and Authorities ISO
Motion to Dismiss Complaint
No. 8:25-cv-01379 FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*ESG Cap. Partners, LP v. Stratos,*
 828 F.3d 1023 (9th Cir. 2016)..................................................................23

*Figy v. Amy's Kitchen, Inc.,*
 No. CV 13–03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25,
 2013)...........................................................................................................20

*Flanagan v. Flanagan,*
 27 Cal. 4th 766 (2002).................................................................................15

*Gonzaga Univ. v. Doe,*
 536 U.S. 273 (2002) ....................................................................................11

*Graham v. Noom, Inc.,*
 533 F. Supp. 3d 823 (N.D. Cal. 2021)..................................................14, 15

*Griffith v. TikTok, Inc.,*
 No. 5:23-cv-00964-SB-E, 2023 WL 9019035 (C.D. Cal. Dec. 13,
 2023)...........................................................................................................23

*Hadley v. Kellogg Sales Co.,*
 243 F. Supp. 3d 1074 (N.D. Cal. 2017)......................................................20

*Hammerling v. Google LLC,*
 615 F. Supp. 3d 1069 (N.D. Cal. 2022)......................................................22

*Hassan v. Facebook, Inc.,*
 No. 19-CV-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23,
 2019)...........................................................................................................23

*Heineke v. Santa Clara Univ.,*
 965 F.3d 1009 (9th Cir. 2020) .................................................................7, 12

*Heiting v. Taro Pharms. USA, Inc.,*
 709 F. Supp. 3d 1007 (C.D. Cal. 2023)..........................................13, 17, 18

*Hernandez v. Hillsides, Inc.,*
 47 Cal. 4th 272 (2009).................................................................................21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

**MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hernandez v. Path, Inc.*,
No. 12-cv-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ................................................................................................... 22

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ............................................................................................ *passim*

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................................................................... 16

*Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*,
No. 20-CV-371, 2022 WL 4273475 (E.D. Wis. Sep. 15, 2022) ....................... 24

*Jones v. Becerra*,
CV 17-7846-CJC (AS), 2017 WL 10574359 (C.D. Cal. Nov. 16, 2017) ................................................................................................... 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................... 19

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................... 5, 20

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ............................................................. 13

*Marshall v. Barlow's, Inc.*,
436 U.S. 307 (1978) ....................................................................... 10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .................................................. 18

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ............................................................. 19

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985) ....................................................................... 10

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Pasadena Republican Club v. W. Just. Ctr.*,

4

985 F.3d 1161 (9th Cir. 2021) ................................................................. 9

5

*Produce Int'l, LLC v. Fresh is Best, Inc.*,

6

No. LACV1905935JAKAS, 2023 WL 3311113 (C.D. Cal. Apr. 19,

7

2023) ...................................................................................................... 24

8

*Q.J. v. PowerSchool Holdings LLC*,

No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ........... 15

9

*Reisberg v. SeeSaw Learning, Inc.*,

10

No. 30-2025-01481220-CU-PO-CXC ...................................................... 4

11

*Rendell-Baker v. Kohn*,

12

457 U.S. 830 (1982) ................................................................................ 9

13

*Revitch v. New Moosejaw, LLC*,

14

No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23,

15

2019) ...................................................................................................... 16

16

*Sateriale v. R.J. Reynolds Tobacco Co.*,

697 F.3d 777 (9th Cir. 2012) ................................................................ 20

17

*Shroyer v. New Cingular Wireless Servs., Inc.*,

18

622 F.3d 1035 (9th Cir. 2010) .............................................................. 19

19

*Slane v. Emoto*,

20

582 F. Supp. 2d 1067 (W.D. Wis. 2008) .............................................. 24

21

*Smith v. Maryland*,

22

442 U.S. 735 (1979) .............................................................................. 10

23

*State v. Duchow*,

24

310 Wis. 2d 1 (2008) ............................................................................ 13

25

*Swartz v. KPMG LLP*,

476 F.3d 756 (9th Cir. 2007) .................................................................. 5

26

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-
Conditioning Eng'rs, Inc.*,

27

755 F.3d 832 (7th Cir. 2014) ................................................................ 24

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vi -

**MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Attson*,
    900 F.2d 1427 (9th Cir. 1990) ................................................................. 10

*United States v. Olson*,
    856 F.3d 1216 (9th Cir. 2017) ................................................................. 17

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ..................................................... 13

*Weaver v. Champion Petfoods USA Inc.*,
    3 F.4th 927 (7th Cir. 2021) ..................................................................... 25

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26,
    2013) ........................................................................................................ 21

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................. 14

**Statutes**

18 U.S.C. §§ 2510, *et seq.* ...................................................... 11, 12, 13, 14, 16

Cal. Bus. & Prof. Code § 22584(b)(4) ............................................................. 3

Cal. Bus. & Prof. Code § 17200 ................................................................ 2, 18

Cal. Educ. Code § 49076(a) ............................................................................. 3

Cal. Penal Code § 502 ........................................................................ 16, 17, 18

Cal. Penal Code §§ 630, *et seq.* ............................................... 12, 13, 15, 16

Wis. Stat. § 100.18 ..................................................................................... 2, 24

Wis. Stat. § 968.31 .................................................................... 12, 13, 14, 16

**Other Authorities**

34 C.F.R. § 99.31 ............................................................................................. 3

64 Fed. Reg. 59888, 59903 (Nov. 3, 1999) ..................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vii -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Federal Rules of Civil Procedure, Rule

    8 ............................................................................................................ 1, 6, 7

    9(b) ........................................................................................................ 5, 20

    12(b)(6) ......................................................................................................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

## I.    INTRODUCTION

This Complaint extends Plaintiff's and her counsel's crusade to improperly legislate through the courts and cripple educational technology ("edtech") providers that are important to schools.  Plaintiff's counsel represent several ideologically-aligned litigants, including Plaintiff Nicole Reisberg, in lawsuits against major edtech providers, including this action against Defendant Renaissance Learning, Inc. ("Renaissance").  These lawsuits seek to impair use of technology in the classroom by destroying a longstanding regulatory framework that allows schools to consent to use of student data for educational purposes.  However, just as this court recently held in dismissing a near-identical complaint against another edtech provider,[1] Instructure, Plaintiff's tortuous, 112-page Complaint fails to satisfy Rule 8, let alone to adequately plead any of its eleven constitutional, privacy, or fraud claims.  Instead, the Complaint is an extended "think piece" expressing Plaintiff's (or counsel's) personal opinions on "surveillance capitalism," parental rights, and pedagogical practices.  It does not state any claim that survives dismissal.

The Complaint's most fundamental shortcoming is that it is not grounded in Plaintiff's children's actual experiences.  Instead, it is a generic screed challenging Renaissance's hypothesized data practices.  Like the allegations ruled deficient in *Instructure*, Plaintiff's Complaint fails to identify which of Renaissance's services her children interacted with (if any)—or even what schools her children attend(ed)—and how—if at all—her children were actually harmed.  Instead, Plaintiff speculates as to what data each of Renaissance's services might collect and how that data might be used.  This is a far cry from the notice pleading required under Rule 8.

Each of Plaintiff's claims also fails for other, independently dispositive reasons.    Plaintiff's constitutional claims under the Fourth and Fourteenth Amendments fail because she does not, and cannot, plead any state action, let alone

---

[1] *See Hernandez-Silva v. Instructure, Inc.*, No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *2 (C.D. Cal. Aug. 4, 2025).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

cognizable constitutional violations. Her wiretapping claims fail because she does not allege that Renaissance "intercepted" data in transit or that the data constituted actionable "contents" of communications, among other deficiencies. Plaintiff's claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California Unfair Competition Law ("UCL"), and Wisconsin Deceptive Trade Practices Act ("WDTPA") also fail as she has neither pled a cognizable injury nor all of the other elements of these statutory violations. Additionally, Plaintiff fails to plausibly allege a reasonable expectation of privacy over the challenged data, that Renaissance's provision of educational tools was "highly offensive," or that the data was publicly disclosed, as required to state each of her privacy tort claims. Meanwhile, Plaintiff's unjust enrichment "claim" is not a recognized cause of action in this Circuit and cannot support Plaintiff's recovery because her claims do not sound in quasi-contract.

This case is an improper attempt to use the courts to achieve ideologically driven changes to a well-established consent mechanism for educational products and services. That consent mechanism has long benefited students, parents, and school districts alike, and can only properly be amended by the legislature. Because Plaintiff's theories of liability are conceptually deficient, they cannot be cured by further amendment, warranting dismissal of the entire complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Established Student Data Privacy Laws Govern Renaissance's Provision of Services to Schools.

Renaissance contracts with schools and school districts to provide educational software and services. ECF No. 1, Complaint ("Compl.") ¶ 35. Administrators and educators use Renaissance products to perform a wide range of functions, including classroom "assessment creation and administration," "personalized instruction and practice," and "student-data analytics" to improve teaching and learning. *Id*. Because these tools greatly enhance the learning process, the edtech market has

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

grown significantly in the past decade. *See id.* ¶¶ 30, 34 ("[s]chool districts access an average of nearly 3,000 Edtech tools during a schoolyear" and "[a] single student accesses nearly fifty Edtech tools per year").

Federal and state student data privacy laws recognize that schools need support from third-party educational companies, including edtech providers, and thus contain exceptions to generally applicable consent requirements. For example, regulations implementing the federal Family Educational Rights and Privacy Act ("FERPA") and a similar California statute authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without express parental consent. *See* 34 C.F.R. § 99.31(a)(1)(i)(A); Cal. Educ. Code § 49076(a). Both federal and California law also authorize the service provider to disclose student data to third parties. *See, e.g.*, 34 C.F.R. § 99.33(b)(1) ("the party receiving the information may make further disclosures of the information" where, among other things, doing so would further legitimate educational interests); Cal. Bus. & Prof. Code § 22584(b)(4) (allowing operator to "further disclose" information to, *e.g.*, "allow or improve operability and functionality").[2]

In short, Renaissance's services comply with the well-established regulatory regime allowing schools to utilize edtech vendors to enhance "significant aspects" of education, as the Complaint concedes. *See* Compl. ¶ 42.

### B.    Plaintiff Does Not Identify the At-Issue Data or Products.

Plaintiff Nicole Reisberg brings this action on behalf of her two minor

---

[2] For more than two decades, the Federal Trade Commission ("FTC") has published guidance confirming that schools can consent on behalf of parents to the collection of personal information for educational purposes. *See* Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59903 (Nov. 3, 1999) (online operators can rely on school authorization); Complying with COPPA: Frequently Asked Questions, § N, FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#N.%20COPPA%20AND%20SCHOOLS ("schools may act as the parent's agent and can consent under COPPA to the collection of kids' information on the parent's behalf").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

children, who attended unidentified school(s) in Orange County, California.[3]  Compl. ¶¶ 18–19.   Her children's schools allegedly required them "to access and use Renaissance products and services[.]"  *Id*.   At ***no*** point in Plaintiff's 112-page Complaint does she identify basic and knowable facts like what school(s) her children attend(ed) or what Renaissance products they used, rendering the complaint unclear as to what data of theirs Renaissance purportedly collected, shared, or otherwise used, and which of those uses were allegedly unlawful.  *See id*. ¶¶ 270–78; *see also id*. ¶ 35 (Renaissance provides a "host of services").

Instead, in broad, conclusory strokes, Plaintiff challenges four aspects of Renaissance's alleged data practices.

***First***, Plaintiff alleges that Renaissance collects "information from and about" students through its products, without effective consent.  *Id*. ¶¶ 70–71.  The student information collected includes—"[a]t minimum"—student contact information (*e.g.*, name, email, address), parent and teacher contact information, language, attendance record, and various other technical information (*e.g.*, IP address, links clicked, browser type).  *Id*. ¶ 70.  But these generic categories of data say nothing about what data relating to Plaintiff's children were allegedly misused by Renaissance.  *See id*. ¶¶ 270–73.

***Second***, Plaintiff objects to Renaissance's alleged uses of student data, including to develop and maintain its products, enforce its terms of use, and "[t]o comply as it believes necessary with applicable laws."  *Id*. ¶ 84.  She also alleges that Renaissance uses the data to build dossiers of students.  *Id.* ¶ 86.  Schools and school districts then use the supposed dossiers to automate "learning evaluation methods," develop personalized curricula, and manage students and school administration.  *Id*. ¶ 89.  In other words, Plaintiff challenges Renaissance's alleged use of the student

---

[3] Plaintiff is also the named plaintiff in another lawsuit against an edtech provider filed in Orange County Superior Court, *Reisberg v. SeeSaw Learning, Inc.*, No. 30-2025-01481220-CU-PO-CXC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

data it collects to help facilitate learning.  *See id*. ¶¶ 86–96.

**Third,** Plaintiff claims that Renaissance shares the disputed data with third parties.  *Id*. ¶¶ 97–127.  Plaintiff does not identify which third parties (if any) received her children's data (and if so, which data types they received).  Instead, she rattles off a laundry list of Renaissance's publicly disclosed vendors and speculates as to other "partners" with whom Renaissance purportedly works.  *See id*. ¶¶ 108, 113–27.  Tellingly, she admits the third parties serve different (and legitimate) purposes—such as "hosting" and "engineering support"—and receive different types of information to fulfill those purposes.  *See, e.g., id*. ¶¶ 108, 123.

**Fourth**, Plaintiff alleges that Renaissance made false and misleading disclosures about its data collection practices.  *Id*. ¶ 204.  But she does not identify any specific basis for alleging that the challenged representations were false, or any misrepresentation **by Renaissance** that Plaintiff—or any parent—actually saw. Instead, Plaintiff alleges that parents relied on representations by their children's schools, not Renaissance.  *See id*. ¶¶ 202–04.

## III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts" to state a facially plausible claim to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Factual allegations must create "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and thereby "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (a complaint must contain "more than labels and conclusions").

Further, fraud-related factual allegations must satisfy Rule 9(b)'s heightened pleading requirements.  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009).  That is, the plaintiff must allege the "time, place, and specific content of the false representations" and "the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

IV.    **ARGUMENT**

  A.    **Plaintiff's Complaint Falls Short of Rule 8's Pleading Requirement.**

  Despite spanning 502 paragraphs, the Complaint fails to allege a "short and plain statement of the claim[s] showing . . . [an] entitle[ment] to relief," requiring dismissal.  *See* Fed. R. Civ. P. 8(a)(2).

  The court in *Hernandez-Silva v. Instructure, Inc*. dismissed a nearly identical complaint,[4] rejecting plaintiffs' attempt to base their claims on generic, unsupported allegations of wrongdoing, rather than fact allegations specific to plaintiffs' children.  *See* 2025 WL 2233210, at *2.  The *Instructure* complaint "consist[ed] of broad, generalized allegations" about Instructure's services, "offer[ed] scant detail about Plaintiffs' own experiences," and failed even to plead readily-knowable facts like what schools plaintiffs' children attended and which Instructure products they used.  *Id*.  The *Instructure* court dismissed the complaint in full because these factual "omissions undermine[d] [p]laintiffs' ability to plausibly allege **any** claim for relief" and "fail[ed] to satisfy the basic requirements of Rule 8."  *Id*. (emphasis added); *see also id*. at *3 ("Plaintiffs' failure to allege specific facts about Defendant's taking of **their** data defeats all their claims." (emphasis in original)).[5]

  *Instructure*'s reasoning applies in full here.  Plaintiff's Complaint encompasses everything from her opinions about the "modern internet" to recitations of Renaissance's publicly disclosed vendors and corporate acquisitions.  *See* Compl. ¶¶ 22–34, 77–127.  But, as in *Instructure*, Plaintiff does not identify even basic facts that might support her claims, such as her children's schools, the Renaissance

---

[4] *Compare, e.g.*, Am. Compl. ¶ 1, *Instructure*, No. 2:25-cv-02711-SB-MAA (C.D. Cal. May 8, 2025), Dkt. No. 33 (Instructure "has built a multibillion-dollar corporate empire by monetizing troves of personal information from users . . . without effective consent.") *with* Compl. ¶ 2 ("Renaissance has built a multi-billion dollar empire by monetizing troves of personal information from individual users . . . without effective consent.").

[5] The plaintiffs in *Instructure* declined to amend following the dismissal of their complaint.  *See Instructure*, No. 2:25-cv-02711-SB-MAA, Dkt. No. 71.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

products they used, and what data was thereby unlawfully collected and used. *See Instructure*, 2025 WL 2233210, at *2–*3; *Cousart v. OpenAI LP*, No. 23-cv-04557-VC, 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024) (dismissing "needlessly long" complaint under Rule 8(a) because it contained "largely irrelevant, districting, or redundant information" and because "rhetoric and policy grievances [] are not suitable for resolution by federal courts"). The Court should dismiss Plaintiff's complaint in full for failure to comply with Rule 8.

### B.    Plaintiff's Section 1983 Claims Fail Because Plaintiff Has Not Pled State Action or an Actionable Constitutional Violation (Counts I and II).

Plaintiff does not state a claim under Section 1983, which would require her to adequately allege that Renaissance's activities constituted governmental conduct that violated her children's constitutional rights. But this Circuit **presumes** that "private conduct" by a corporate defendant like Renaissance "does **not** constitute governmental action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) (emphasis added) (citation omitted). Because Plaintiff's allegations do not overcome this presumption, her Section 1983 claims under the Fourth and Fourteenth Amendments necessarily fail, and Counts I and II should be dismissed with prejudice.

### 1.    Plaintiff Has Not Pled that Renaissance Is a State Actor.

The state action inquiry asks "whether the nature of the relationship between the private party and the government is such that 'the alleged infringement of federal rights is fairly attributable to the [government].'" *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) (quoting *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021)) (alteration in original). A plaintiff must allege facts supporting an inference that the government "is **responsible** for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013)) (emphasis in original).[6]

---

[6] Plaintiff does not even identify the relevant government actor, *i.e.*, her children's school district.

*Instructure* dismissed very similar Section 1983 claims—challenging an edtech provider's alleged collection, use, and disclosure of student data without consent—for failure to satisfy this standard. *See* 2025 WL 2233210, at *3–*5. The claims failed because plaintiffs had not adequately alleged that the government (*i.e.*, the students' school district) was "responsible for [d]efendant's collection and use of student data." *Id.* at *3. Indeed, plaintiffs alleged the opposite—that Instructure impermissibly shared student data with third parties *for its own purposes* and that its school district customers *did not control* its data practices. *See id.*

The same logic requires dismissal here. Plaintiff alleges that "[s]chools *do not control* the generation, collection, storage, use, or disclosure of student data by Renaissance or any third party to which Renaissance grants access to student data." Compl. ¶ 154 (emphasis added). This allegation—and others like it[7]—are fatal to Plaintiff's Section 1983 claims. That is, Plaintiff cannot maintain that Renaissance's data practices are "fairly attributable to the [government]" when her Complaint asserts the opposite. *See Instructure*, 2025 WL 2233210, at *3 (plaintiffs fail to "show how each relevant district directed [d]efendant's actions" where "the FAC alleges that *Defendant* collects student data" (emphasis in original)). In short, the very premise of Plaintiff's Complaint—that Renaissance allegedly obtains and misuses student data for its own commercial purposes—forecloses both Section 1983 claims, because they could only survive if Plaintiff could allege that Renaissance is

---

[7] Other allegations similarly identify Renaissance—not a government entity—as the actor allegedly unlawfully collecting and misusing data. *See, e.g.*, Compl. ¶¶ 112–17 (the data Renaissance "obtains and discloses" through "third-party data-sharing agreements . . . . enables Renaissance and participating partners to develop, improve, expand, deliver, support, market, and sell their products and services"); ¶¶ 72–74 (alleging the data Renaissance collects "far exceeds" both that which "is legally or traditionally characterized as 'education records'" and that which is "reasonably necessary for children to participate in any school activity"); ¶ 86 ("Renaissance does not generate and collect user data . . . for the limited purpose of assisting parents and their children with their educational pursuits").

Cooley LLP
Attorneys at Law
San Francisco

- 8 -

Memo. of Points and Authorities ISO
Motion to Dismiss Complaint
No. 8:25-cv-01379 FWS-JDE

a state actor (which she cannot).

Plaintiff's Section 1983 claims also do not meet the "state actor" requirement under any of the four interrelated state action tests recognized by the Supreme Court (public function, joint action, governmental compulsion, or governmental nexus).

*First*, Plaintiff has not pled that Renaissance is a state actor under the public function test because she does not (and cannot) allege that the "provision of educational services" is a "public function" that has "traditionally and exclusively" been performed by the government.  *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815–16 (9th Cir. 2010) (affirming dismissal of  Section 1983 claim where defendant was a "private entity that contracted with the state to provide students with educational services," because its "provision of educational services" was "not a function that is traditionally and exclusively the prerogative of the state"); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) ("[t]hat a private entity performs a function which serves the public does not make its acts state action[;]" rather, the function must also be "traditionally the *exclusive* prerogative of the State") (internal quotations and citation omitted).

*Second*, Plaintiff cannot satisfy the joint action test by alleging that Renaissance contracts with public schools and school districts. *See, e.g.*, Compl. ¶ 342.  "Acts of [] private contractors do not become acts of the government" simply because they have public significance.  *Rendell-Baker*, 457 U.S. at 841; *Pasadena Republican*, 985 F.3d at 1170.  To satisfy the joint action test via contract, the agreement must show "financial[] integrat[ion]" across the entities, "government profit[] from the alleged unconstitutional activity," and government cooperation in the purported misconduct.  *Instructure*, 2025 WL 2233210, at *4.  In other words, the contractual relationship must plainly illustrate that the challenged action is fundamentally a government action.  The Complaint pleads none of these elements. Instead, it affirmatively claims that Renaissance's challenged data practices are not controlled by, and function independently of, its school and school district customers.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

1    *See*, *e.g.*, *supra* note 7.[8]

2        **2.    Plaintiff Alleges No Cognizable Violation of the Fourth or**

3            **Fourteenth Amendment.**

4        Even if Plaintiff could show state action (she cannot), her claims would still

5    fail because they do not state the required, underlying violations of the Fourth or

6    Fourteenth Amendments.

7        <u>Fourth Amendment</u>.    The Complaint has no nexus to Plaintiff's Fourth

8    Amendment rights.  The Fourth Amendment applies only "to governmental conduct

9    that can be reasonably characterized as a 'search' or a 'seizure[,]'" like a criminal

10   law enforcement investigation.  *United States v. Attson*, 900 F.2d 1427, 1429 (9th

11   Cir. 1990).  Courts apply the Fourth Amendment outside the criminal context "[o]nly

12   rarely," and to noncriminal, non-investigatory government conduct in "[e]ven rarer"

13   circumstances.[9]  *Id.* at 1430.  Yet, the Complaint makes no reference to any

14   governmental investigations alleged to have involved Renaissance, its school and

15   school district customers, or putative class member students.  Plaintiff's failure to

16   plead the required search or seizure defeats this claim.

17       Plaintiff's Fourth Amendment claim fails for two additional reasons.  First,

18   Plaintiff has no reasonable expectation of privacy over the disputed data, because the

19   data was provided to Renaissance in connection with Plaintiff's children's use of its

20   services.  *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) ("This Court

21

22   [8] Based on the parties' meet-and-confer discussion, Renaissance understands that
     Plaintiff does not intend to argue that her Section 1983 claims satisfy the
23   governmental compulsion or governmental nexus tests.  *See* Lobo Decl. ¶ 7.
     However, if she does, Renaissance reserves the right to further demonstrate on reply
24   why Plaintiff's allegations do not establish state action under these tests.

25
     [9] *See, e.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 343–47 (1985) (Fourth Amendment
26   applied to a teacher's search of a student's purse for contrabands); *Camara v. Mun.
     Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528–534 (1967) (applying Fourth
27   Amendment to building inspectors); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311
     (1978) (applying same to OSHA inspectors).

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); *see also* Compl. ¶ 12 ("Schools have always collected certain personal information belonging to students and their parents in order to provide educational services, and they must be able to continue to do so[.]").[10]  Second, to state a Fourth Amendment claim against a "non-law enforcement governmental party," Plaintiff must allege that Renaissance "acted with the intent to assist the government in its investigatory or administrative purposes, and not for an independent purpose." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924 (9th Cir. 2001) (internal quotations and citation omitted). But as described above, the gravamen of the Complaint is that Renaissance makes independent use of the data, in ways divorced from the government's purposes.  Thus, Plaintiff does not and cannot satisfy this requirement.

Fourteenth Amendment.  Plaintiff's Fourteenth Amendment claim also fails. The claim is based on the allegation that Renaissance violated Plaintiff's children's "right to informational privacy" by collecting and processing student data as part of its services, *see* Compl. ¶¶ 378, 445(f), but these allegations fall short.

For instance, the Complaint's failure to allege which Renaissance products Plaintiff's children used and how their personal information was publicly disclosed foreclose this claim, because it requires a public disclosure of private information. *See Avist v. Cnty. of Napa*, No. C 00-1525 VRW, 2000 WL 1268244, at *2 (N.D. Cal. Aug. 31, 2000) (dismissing Fourteenth Amendment claim because plaintiff did not plead "facts evidencing an actual disclosure of personal information"); *Jones v. Becerra*, CV 17-7846-CJC (AS), 2017 WL 10574359, *5 (C.D. Cal. Nov. 16, 2017) (dismissing Fourth and Fourteenth Amendment privacy claim where plaintiff's allegation of public disclosure was "entirely speculative").

---

[10] Section 1983 claims are not the proper vehicle for vindicating privacy rights against nondisclosure of student data under FERPA.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002); Compl. ¶ 376.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
- 11 -
MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

Further, the Fourteenth Amendment right to informational privacy "is a conditional right[.]" *A.C. by and through Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022). It "may be infringed" where, as here, disclosure serves a "proper governmental interest." *Id.* Students, schools, and the public at large have a strong interest in the quality and efficacy of the education system. Renaissance provides services which are essential to the functioning of that system, as Plaintiff admits.[11] Thus, even if Renaissance's access to, and use of, student data infringed on this informational privacy right (which Plaintiff has not sufficiently alleged), the infringement would be permissible under this standard, because the government has a strong interest in facilitating access to edtech providers like Renaissance. Plaintiff cannot overcome these interests through specious allegations of harm. *See, e.g.*, Compl. ¶¶ 223–25 (speculating about the risk of cybercrime among edtech providers based on the activities of a different company).

*    *    *

Counts I and II should be dismissed since Plaintiff fails to allege state action or a cognizable constitutional violation. *Heineke*, 965 F.3d at 1012. Because Plaintiff cannot allege additional facts demonstrating state action, as no facts could show that the mere provision of edtech transformed Renaissance into a state actor, the dismissal should be with prejudice.

**C.    Plaintiff's Federal and State Wiretapping Claims Fail Because She Has Not Alleged An "In Transit" Interception of "Content," Third-Party Involvement, or Recording of "Confidential" Communication (Counts III, IV, and IX).**

The federal Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), and the Wisconsin Electronic Surveillance Control Law ("WESCL") each prohibit the unauthorized interception of communications, and courts frequently analyze alleged violations of these statutes

---

[11] *See, e.g.*, Compl. ¶ 38 ("over 40 percent" of U.S. schools use Renaissance's services).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

jointly. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (CIPA analysis "is the same as that under the federal Wiretap Act" (citation omitted)); *State v. Duchow*, 310 Wis. 2d 1, 14–16 (2008) (WESCL was intended to "effect the state 'implementation' of [the ECPA]" and Wisconsin courts "employ[] reasoning from federal [wiretapping] decisions" when "interpreting the [WESCL]" (citation omitted)).

No "in transit" interception. For a communication to be "intercepted," it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts routinely dismiss claims where plaintiffs fail to allege sufficient facts that their communications were collected in real time. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing wiretapping claim alleging defendant's code "secretly intercept[ed] [communications] in real time" as "[t]hat statement does little more than restate the pleading requirements of real time interception"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) ("Merely parroting the statutory requirement that [interception] occurred in transit is insufficient.").

Here, Plaintiff makes cursory allegations that Renaissance's alleged interception occurred "contemporaneously with the Plaintiff['s] and Class members' sending and receipt of [] communications." Compl. ¶ 398. There are no facts explaining when and how any purported interception occurred.[12] *See id.* ¶¶ 393–419, 463–79. The *Instructure* court dismissed near-identical wiretapping claims on this basis. *See* 2025 WL 2233210, at *5 (dismissing CIPA claims where the complaint "only vaguely references [d]efendant's use of [Application Program Interfaces or

---

[12] The Complaint includes factual allegations that are fundamentally inconsistent with any putative real-time interception. *See id.* ¶¶ 399, 472 (suggesting Renaissance collects "webpage browsing **histories**," which necessarily occurs after a user has already browsed a page).

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

APIs] without explaining how the technology allows real-time interception in general or how it was used to intercept [p]laintiffs' data in particular").[13]  This Court should likewise dismiss each of Plaintiff's wiretapping claims on this basis alone.

<u>No "contents" of communications.</u>  Plaintiff alleges the interception of her children's "user communications" and "internet communications" without specifying which aspects of those communications are implicated.  Compl. ¶¶ 397–98, 413.  Courts routinely hold that wiretapping statutes prohibit only the unauthorized interception of the "***content***" of a communication, which is "the intended message conveyed by the communication." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (citation omitted).  This definition does ***not*** include so-called "record information regarding the characteristics of the message that is generated in the course of the communication." *Id*.  Such data is considered non-content information and includes "IP addresses, locations, browser types, and operating systems." *Id*.

The Complaint does not adequately plead that Renaissance intercepted the "content" of Plaintiff's children's communications.  For example, Plaintiff alleges that Renaissance intercepted "detailed URL requests."  Compl. ¶¶ 399, 472. However, URLs are generally viewed as non-content, record information, unless the URLs reveal user-entered search terms. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).  Browsing histories are not "content" information for the same reason. *Id.* (holding that information about "webpage[s] that a user previously viewed" is non-content record information).  While the Complaint asserts that Renaissance collected "search queries," Compl. ¶¶ 399, 472, it does not allege that Plaintiff's children entered any search terms into any Renaissance product.

<u>No third-party involvement.</u>  Plaintiff's CIPA claim fails for additional reasons.  She alleges that Renaissance "aided and abetted numerous third parties in

---

[13] The *Instructure* plaintiffs did not assert ECPA or WESCL claims.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

1  unlawfully intercepting protected communications." Compl. ¶ 417. This is an

2  apparent attempt to allege a violation of clause four of CIPA Section 631(a), which

3  imposes liability on someone "who aids, agrees with, employs, or conspires with any

4  person or persons to unlawfully do, or permit, or cause to be done" an act of

5  eavesdropping or wiretapping.

6      Plaintiff's allegations again fall short. Courts reject CIPA claims premised on

7  third-party involvement where the third parties in question are service providers who

8  do not make independent use of any data, but instead passively store the data for a

9  client's later retrieval or analysis. *See Graham*, 533 F. Supp. 3d at 832 (dismissing

10 CIPA claim and finding that a service provider was not an eavesdropper as it merely

11 "provide[d] a software service that capture[d] its clients' data, host[ed] it on

12 [provider]'s servers, and allow[ed] the clients to analyze their data"). Of the 28

13 vendors that Plaintiff identifies in the Complaint, she concedes that all of them are

14 involved in passive functions related to providing technical support for Renaissance's

15 products and services. *See* Compl. ¶ 108. None of them are alleged to have

16 participated in any direct, simultaneous recording of communications made on

17 Renaissance's platforms. *Cf. Q.J. v. PowerSchool Holdings LLC*, No. 23 C 5689,

18 2025 WL 2410472, at *1, 8 (N.D. Ill. Aug. 20, 2025) (denying dismissal of CIPA

19 claim based on particularized allegations that a third-party provider "automatically

20 capture[d] [] user interactions on [defendant's platform], from the moment of

21 installation forward, including every click, swipe, tap, pageview, and fill" (internal

22 quotations omitted)). Plaintiff makes no specific, non-speculative allegation that any

23 of these vendors make independent use of any Renaissance data such that they can

24 even be considered "third parties" that Renaissance purportedly aided and abetted.

25     No "confidential communications" under CIPA Section 632. Section 632

26 applies only to "confidential communications," which are communications where

27 one of the parties "has an objectively reasonable expectation that the conversation is

28 not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

(2002). "[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). Plaintiff's claim under Section 632 is explicitly predicated on Renaissance's "non-consensual tracking of the Plaintiff['s] and Class members' **internet communications**." Compl. ¶ 413 (emphasis added). This is plainly insufficient to support a Section 632 claim. Further, as discussed *supra*, Plaintiff alleges that Renaissance publicly makes known the "dozens" of vendors that supposedly have access to student information. *Id.* ¶ 108. Given this public disclosure, users of Renaissance products could not have an "objectively reasonable expectation" that their communications would not be "overheard or recorded" by outside entities. *See Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 n. 9 (N.D. Cal. July 1, 2024) (holding, in invasion of privacy context, "that reasonable users should expect the collection of their internet-browsing data").

\*       \*       \*

For the foregoing reasons, Plaintiff's claims under ECPA, CIPA, and WESCL (Counts III, IV, and IX) should be dismissed.

### D.    Plaintiff Lacks Standing Under CDAFA and Fails to Plead a CDAFA Violation (Count V).

California's CDAFA is an "anti-hacking statute" designed to "prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]." *Custom Package Supply, Inc. v. Phillips*, No.15:cv-04584-ODW-AGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015); Cal. Penal Code § 502(a) (the California legislature's intent was to combat the "proliferation of computer crime[s]"). In other words, CDAFA exists to address data breaches, hacking, and other unauthorized access—a fundamental mismatch with Plaintiff's theory of liability. Unsurprisingly, then, Plaintiff both lacks statutory standing and has not otherwise stated this claim.

CDAFA standing requires a plaintiff to plead that she has suffered "damage or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

loss." Cal. Penal Code. § 502(e)(1); *Heiting*, 709 F. Supp. 3d at 1020–21; *Instructure*, 2025 WL 2233210, at *6. But the Complaint does not do so. Plaintiff alleges Renaissance "effectively charged" her by "acquiring [her children's] sensitive and valuable personal information without permission and using it for Renaissance's own financial benefit" without compensation. Compl. ¶ 423. However, this allegation does not confer statutory standing for two reasons. First, Plaintiff's allegations are entirely conclusory and unsupported, requiring dismissal. *Id*. ¶¶ 292–300, 423. Second, this theory of "damage or loss" is, fundamentally, a privacy loss, which does not confer CDAFA standing. *See, e.g.*, *Doe v. Cnty. of Santa Clara*, No. 23-cv-04411-WHO, 2024 WL 3346257, at *9–10 (N.D. Cal. July 8, 2024) (no CDAFA standing where plaintiff alleged that "[d]efendants took something of value from [p]laintiff . . . and derived benefit therefrom without [p]laintiff's . . . knowledge or informed consent and without sharing the benefit"); *Heiting*, 709 F. Supp. 3d at 1020–21 (collecting cases holding that privacy violations based on loss of data "do not qualify [as 'damage or loss'] under the statute").

Beyond standing deficiencies, Plaintiff has failed to plead the elements of a CDAFA claim. She alleges that Renaissance violated CDAFA section 502(c)(2) by "knowingly accessing and without permission taking, copying, analyzing, and using Plaintiff['s] and Class members' data." Compl. ¶ 422. This allegation does not suffice.

***First***, Plaintiff's claim that Renaissance acted "knowingly" "without permission" is contradicted by her admission that Renaissance "relie[d] on the consent of school personnel" to process students' data. *See* Compl. ¶ 11; *cf. United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017) ("[courts] ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element" (citation omitted)). Thus, Plaintiff does not, and cannot, plead that Renaissance ***knew*** it lacked permission to receive and process students' data.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

*Second*, CDAFA defines "[a]ccess" to mean "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). "While [CDAFA] has been extended by some district courts outside of the traditional hacking realm," courts still require a showing that "defendant in some way caused output from the function of a computer, without the owner's permission." *Heiting*, 709 F. Supp. 3d at 1020. Plaintiff does not allege that Renaissance collected data from or accessed parts of her children's computers **outside** of Renaissance's products. *See id.* (dismissing CDAFA claim where defendant's alleged collection of data without consent via a website chat function did not satisfy "access" element because plaintiff did not allege "that [d]efendant implanted anything on her computer" or otherwise "make clear how any 'access' took place").

Thus, Plaintiff's CDAFA claim should be dismissed.

### E.    Plaintiff's UCL Claim Fails Because She Lacks Standing and Does Not Plausibly Plead Any of the Prongs (Count VI).

Plaintiff's UCL claim fails both for lack of statutory standing and failure to allege the elements of an unlawful, unfair, or fraudulent prong UCL claim.

Plaintiff lacks statutory standing.  To have UCL standing, a plaintiff must plead that she "lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).

Plaintiff alleges she suffered loss based on the alleged "unauthorized disclosure and taking of [her children's] personal information" by Renaissance and the resulting "diminution of the value of their private and personally identifiable data and content." Compl. ¶ 437.  Neither theory is viable.

As to Plaintiff's "unauthorized taking" theory, within the Ninth Circuit, "[n]umerous courts have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing." *Mastel*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021); *see Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) ("[t]he weight of the authority. . . [holds] that the mere misappropriation of personal information does not establish compensable damages" under the UCL (internal quotations and citation omitted)) (collecting cases); *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019) ("[p]laintiffs must allege more than a loss of personal information to establish standing under the UCL.").

Plaintiff's "diminution of value" theory fares no better. This theory does not confer UCL standing when a plaintiff fails to plausibly "allege they ever attempted or intended to participate in [the] market [for their PII], or otherwise to derive economic value from their PII." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538–39 (2022). Courts have dismissed UCL claims in edtech data privacy matters predicated on the "diminution of value" framework, because "there is no non-speculative basis . . . for thinking plaintiffs can or would transact with the personal information at issue, such as their exam scores or behavioral assessments . . . [In fact,] [i]t is reasonable to infer that plaintiffs would choose *not* to transact in that market" given their alleged privacy interests in such data. *Cherkin v. PowerSchool Holdings, Inc.*, No. 24-cv-02706-JD, 2025 WL 844378, at *5 (N.D. Cal. Mar. 17, 2025); *see Instructure*, 2025 WL 2233210, at *6 (dismissing UCL claim in edtech case because "allegations about the loss of value of data" did not confer statutory standing).

<u>Plaintiff otherwise fails to state a claim under any UCL prong.</u>  Plaintiff's unlawful prong theory is based on the alleged violations of "federal and state laws" pled elsewhere in the Complaint. Compl. ¶ 433. Because Plaintiff's statutory claims are deficient, her derivative UCL claim also fails. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). Plaintiff's common law claims meanwhile cannot form the basis of an unlawful prong claim. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

F.3d 1035, 1043–44 (9th Cir. 2010) (common law violations are insufficient for UCL unlawful prong claims).

Plaintiff's fraudulent prong claim fails because it is not pled with the required Rule 9(b) particularity (*i.e.*, the "who, what, when, where, and how" of the alleged fraud). *See Kearns*, 567 F.3d at 1124. Plaintiff's allegations sound in fraud, as she alleges that Renaissance took part in "fraudulent concealment" and made "false and misleading statements about its data practices," intending to induce the public's reliance. Compl. ¶¶ 179–204, 327–333. But she fails to plead that she was exposed to any of Renaissance's alleged misrepresentations, much less that she relied on those misrepresentations to her detriment. *See Figy v. Amy's Kitchen, Inc.*, No. CV 13–03816 SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (collecting cases); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (requiring that plaintiffs allege "actual reliance on the allegedly deceptive or misleading statement," along with causation, to state a fraud-based UCL claim). Plaintiff similarly fails to plead that Renaissance's alleged omissions about its practices directly influenced any decision she made regarding her children's use of Renaissance products. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("An essential element for a fraudulent omission claim is actual reliance.").

Finally, Plaintiff's unfair prong claim fails because it is based on the same alleged conduct as her meritless claims under the other prongs. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (where the unfair prong "overlap[s] entirely with . . . the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive").

### F.    Plaintiff Does Not State Privacy-Related Tort Claims (Counts VII and VIII).

"To establish liability for . . . the public disclosure of private facts, the plaintiff must show: "(1) public disclosure (2) of a private fact (3) which would be offensive

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Banga v. Equifax Info. Servs. LLC*, No. 14-cv-03038-WHO, 2015 WL 3799546, at \*8 (N.D. Cal. June 18, 2015) (citation omitted).  An intrusion upon seclusion claim requires: "(1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." *Id.* (citation omitted). Courts often analyze these claims together given their similar elements.  *See, e.g.*, *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at \*15 (N.D. Cal. Mar. 26, 2013) (analyzing a public disclosure and intrusion claim together and dismissing them both on the same grounds).

*First*, both claims fail because Plaintiff does not adequately plead that Renaissance collected any information over which she had a reasonable expectation of privacy.  Plaintiff vaguely alleges that Renaissance publicly disclosed students' "grades, disciplinary records, health records, mental health records, [and] behavioral information," Compl. ¶ 444, but she fails to describe what *precise* information (if any) within those broad categories was actually collected about her children, let alone that any such information was shared with third parties.  This lack of detail dooms Plaintiff's claims.  *See Doe v. Davita Inc.*, No. 23-cv-01424-AJB-BLM, 2024 WL 1772854, at \*2 (S.D. Cal. Apr. 24, 2024) (dismissing medical privacy-related complaint where plaintiffs "do not explain what specific information they provided to Defendant" and explaining that plaintiffs cannot maintain her theory of the case absent this factual support); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (dismissing privacy tort claims where "[p]laintiffs fail to plead that any medical information was disclosed").

*Second*, Plaintiff fails to plausibly allege that Renaissance's conduct was "highly offensive," as required for both claims.  Specifically, the alleged invasion of privacy must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 293 (2009) (internal quotations and citation omitted).  Both federal and California state statutes

permit edtech providers like Renaissance to collect student information to assist schools in providing educational services. *See* Section II.A, *supra*. The Complaint simply alleges that—far from committing an egregious breach of social norms—Renaissance is participating in a well-established, decades-old legal framework that allows school districts to authorize this conduct.

Additionally, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citation omitted); *see also Belluomini v. Citigroup Inc.*, No. C 13-01743 CRB, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) ("Given that disclosure of [an] individual's social security numbers does not constitute an 'egregious breach,' it certainly cannot be the case that disclosure of contact information constitutes an 'egregious breach.'" (citation omitted)). Thus, Renaissance's routine collection of data for the commercial purposes of providing contracted-for services to schools does not reach the requisite level of offensiveness.

**Third**, Plaintiff fails to satisfy the "public disclosure" element for the public disclosure of private fact claim, which requires that the defendant have communicated the disputed information "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Hernandez v. Path, Inc.*, No. 12-cv-01515 YGR, 2012 WL 5194120, at *6 (N.D. Cal. Oct. 19, 2012) (citation omitted). Plaintiff only provides conclusory allegations of disclosure without identifying what information Renaissance shares, or how it does so. *See, e.g.*, Compl. ¶¶ 157, 442, 444. Nor can Plaintiff avoid dismissal by speculating about circumstances in which Renaissance **might** share certain data with third parties. *See* Compl. ¶¶ 99, 104, 119–121 (alleging that Renaissance maintains "robust [API] technology" and utilizes custom "Zapier ('Zap') codes" which provide Renaissance with the theoretical capability to share information with "nearly one hundred third-party entities"). Plaintiff alleges no facts

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

to support the inference that her children's information was actually disseminated via Renaissance's API or Zap codes.  *See Hassan v. Facebook, Inc.*, No. 19-CV-01003-JST, 2019 WL 3302721, at *2 (N.D. Cal. July 23, 2019) (dismissing public disclosure claim where plaintiff failed to "identify the content of the [information] that [was] exposed or what makes the exposed information personal or private").

The *Instructure* court dismissed nearly identical privacy tort claims based on these shortcomings—that is, because plaintiffs failed to identify even the basic contours of their claims, like "which products [they] use . . . , what type of data was collected from them, or to whom Defendant provided the data," and thus did not plausibly allege Instructure's conduct was "'offensive' or violat[ive of] [p]laintiffs' reasonable expectations of privacy."  2025 WL 2233210, at *8.  These same deficiencies require dismissal of both claims here.

### G.    Plaintiff Does Not State a Viable Unjust Enrichment Claim (Count XI).

California law does not provide "a standalone cause of action for 'unjust enrichment,'" which many courts have found requires dismissal.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted); *see also Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("'[U]njust enrichment is not a cause of action' under California law." (citation omitted)).  Some courts have nonetheless allowed unjust enrichment claims to proceed if construed as "quasi-contract claim[s] seeking restitution."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citation omitted).  However, when plaintiffs do not allege a "viable quasi-contract theory of recovery, [courts decline] to read [*ESG*] as displacing *Astiana*'s general rule that there is no independent cause of action for unjust enrichment under California law."  *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023).  To recover under a quasi-contract theory, "a plaintiff must show that (1) the defendant received a benefit from the plaintiff, and (2) it would be unjust for the defendant to retain that benefit."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

*Produce Int'l, LLC v. Fresh is Best, Inc.*, No. LACV1905935JAKAS, 2023 WL 3311113, at *6 (C.D. Cal. Apr. 19, 2023).  The Complaint does not make any non-conclusory allegations that Plaintiff or her children conferred a benefit on Renaissance that it would be unjust for Renaissance to retain.  This failure to advance *any* quasi-contract theory defeats Plaintiff's unjust enrichment claim.  *See Instructure*, 2025 WL 2233210, at *8 (dismissing unjust enrichment claim where plaintiffs did not articulate a quasi-contract theory).

### H.    Plaintiff's WDTPA Claim Should Be Dismissed (Count X).

Plaintiff's Wisconsin Deceptive Trade Practices Act ("WDTPA") claim fails for several independent reasons.

*First*, Plaintiff cannot pursue a WDTPA claim because she concedes that she and her children (and thus by definition, their school district(s)) were "[a]t all relevant times" citizens and residents of California when exposed to Renaissance's alleged misconduct.  Compl. ¶¶ 18–20.  Because the WDTPA "affords a remedy *only* to Wisconsin consumers," Plaintiff cannot bring a WDTPA claim.  *See Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-CV-371, 2022 WL 4273475, at *10 (E.D. Wis. Sep. 15, 2022) (emphasis added); *accord id.* at *9 ("The only reasonable reading of the statute is that it applies only to Wisconsin consumers.").

*Second*, the WDTPA prohibits parties from undertaking "untrue, deceptive, or misleading" conduct with the intent to "sell, distribute, increase the consumption of or in any [way] dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person[.]"  Wis. Stat. § 100.18(1).  Per its plain statutory language, the WDTPA applies only to "commercial transactions."  *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (noting that the WDPTA applies only to alleged misrepresentations made to "promote the sale of a product" (emphasis omitted; citation omitted)).  Plaintiff does not allege any commercial transaction with

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

1    Renaissance, requiring dismissal.

2          ***Third***, Plaintiff must allege a "pecuniary loss," which requires "a causal

3    connection" between Renaissance's statements and any alleged pecuniary loss

4    Plaintiff experienced.  *Dusterhoft v. OneTouchPoint Corp.*, No. 22-cv-0882-BHL,

5    2024 WL 4263762, at *16 (E.D. Wis. Sept. 23, 2024).  The Complaint alleges

6    ***Plaintiff's children's schools*** were misled by the challenged statements when

7    deciding whether to contract with Renaissance for its services.  Compl. ¶¶ 483, 485.

8    There is no allegation that Plaintiff or her children were "materially induced" to

9    transact with Renaissance by the allegedly false and misleading statements.  *Weaver*

10   *v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).  And even if

11   Plaintiff could demonstrate the requisite causal connection, for the reasons discussed

12   *supra*, Section IV.D, Plaintiff and her children have not suffered tangible economic

13   injury from Renaissance's conduct.

14   **V.    CONCLUSION**

15         For the reasons above, the Complaint should be dismissed in full.  Further

16   amendment of Plaintiff's claims would be futile given the numerous legal

17   insufficiencies identified herein, so dismissal should be without leave to amend.

18   Dated:  September 4, 2025                    COOLEY LLP

19

20                                               By: */s/ Matthew D. Brown*

21                                                   Matthew D. Brown

22                                               Attorneys for Defendant
                                                 RENAISSANCE LEARNING, INC.

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 25 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Renaissance Learnings, Inc., certifies that this brief contains 7,846 words, which complies with the word limit set by court order dated July 30, 2025. *See* Dkt. No. 25.

Dated:  September 4, 2025                    COOLEY LLP


By: */s/ Matthew D. Brown*
     Matthew D. Brown

Attorneys for Defendant
RENAISSANCE LEARNING, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 26 -

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379 FWS-JDE