Melisa A. Rosadini-Knott
mrosadini@peifferwolf.com
(California Bar No. 316369)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
323-982-4109

*Counsel for Plaintiffs and the Proposed Class*

[*additional counsel listed on signature page*]

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian AMY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RENAISSANCE LEARNING, INC.<br><br>Defendant. | Civ. No. 8:25-cv-01379<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RENAISSANCE LEARNING, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT<br><br>Date: February 5, 2026<br>Time: 10:00 a.m.<br>Courtroom: 10D<br><br>Pretrial Conference: March 9, 2028<br>Trial Date: April 4, 2028 |

1

# TABLE OF CONTENTS

LEGAL STANDARD ..................................................................10

ARGUMENT .........................................................................11

  A.  FERPA does not absolve Renaissance of its duty to obtain parental consent. ..11

  B.  Plaintiffs state claims under federal and state wiretapping laws. .................... 12

    1.  The party exception to the ECPA and WESCL does not apply.....................13

    2.  The FAC details "in transit" interception......................................14

    3.  Plaintiffs allege that Renaissance aided third-party interception..................15

    4.  The communications at issue are "confidential communications" protected by CIPA.........................................................................16

  C.  Plaintiffs state a pen-register claim. ........................................ 18

    1.  Renaissance collects and shares far more than IP addresses. .......................19

    2.  Renaissance's authorities do not support dismissal. .....................................20

  D.  Plaintiffs state a CDAFA claim.............................................. 23

    1.  Plaintiffs allege loss sufficient to confer standing under CDAFA.................23

    2.  Plaintiffs need only show that Renaissance's "access" was knowing. ..........24

    3.  Plaintiffs need not show Renaissance overcame technical barriers..............24

  E.  Plaintiffs state a UCL claim................................................. 25

  F.  Plaintiffs state a claim for invasion of privacy. ................................. 26

  G.  Plaintiffs state a claim for unjust enrichment. ................................. 28

  H.  Plaintiffs state a negligence claim. ........................................ 31

  I.  Plaintiffs State a WDTPA claim. ......................................... 34

2

# TABLE OF AUTHORITIES

## CASES

*A.B. by & Through Turner v. Google LLC*,
    737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) ....................................... 17, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ................................................................. 11

*Bd. of Ed. v. Sinclair*,
    222 N.W.2d 143, 146-48 (1974) ....................................................... 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ................................................................ 10

*Biden v. Ziegler*,
    737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) ...................................... 24

*Boulton v. Community.com, Inc.*,
    No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) ............... 17

*Brahm v. Hospital Sisters Health System*,
    2024 WL 3226135, *7-8 (W.D. Wis. June 28, 2024) ............................ 29

*Bravo ex rel. Ramirez v. Hsu*,
    404 F. Supp. 2d 1195 (C.D. Cal. 2005) .............................................. 18

*Brown v. Google LLC*,
    2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021) ........................... 24, 25

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ...................................... 25

*Calhoun v. Google, LLC*,
    113 F.4th 1141, 1147 (9th Cir. 2024) ................................................ 24

*Camplisson v. Adidas America, Inc.*,
    2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ................................. 24

*Capitol Records Inc v. Thomas-Rasset*,
    2009 WL 1664468, *2 (D. Minn. June 11, 2009)..................................... 23

*Cherkin v. PowerSchool Holdings, Inc.*,
    No. 24-CV-02706-JD, 2025 WL 844378, *2 (N.D. Cal. Mar. 17, 2025) ......... passim

*D'Angelo v. FCA US, LLC*,
    726 F. Supp. 3d 1179, 1200-02 (S.D. Cal. 2024)................................. 15, 16

*Deivaprakash v. Condé Nast Digital*,
    2025 WL 2541952, at *4 (N.D. Cal. Sept. 4, 2025) ......................... 14, 15

*Demetrius Smith, et al. v. Rack Room Shoes, Inc*.,
    2025 WL 2210002, *3 (N.D. Cal. Aug. 4, 2025)................................... 23

*Desnick v. American Broadcasting Companies,*
    44 F.3d 1345, 1353 (7th Cir. 1995)............................................ 14

*Doe v. GoodRx Holdings, Inc.,* No. 23-CV-00501-AMO, 2025 WL 2052302, at *12
    (N.D. Cal. July 22, 2025) ................................................ 25, 26

*Doe v. Eating Recovery Ctr., LLC*,
    2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ...................................... 22

*Drummer v. CoStar Grp., Inc.*,
    No. EDCV 25-1047, 2025 WL 3190656, *2 (C.D. Cal. Oct. 22, 2025) ............11, 19

*Dusterhoft v. OneTouchPoint Corp.*,
    No. 22-cv-0882-BHL, 2024 WL 4263762, at *12 (E.D. Wis. Sept. 23, 2024) ....... 33

*Fox v. Iowa Health Sys*.,
    399 F. Supp. 3d 780, 795 (W.D. Wis. 2019)............................................ 33

4

*Frasco v. Flo Health, Inc.*,
   No. 21-CV-00757-JD, 2025 WL 2680068, *10 (N.D. Cal. Sept. 17, 2025) ........... 17

*Fregosa v. Mashable, Inc*,
   2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........................................................... 22

*Gabrielli v. Haloen US Inc*,
   2025 WL 2494368, at *7-8 (N.D. Cal. Aug. 29, 2025) .......................................... 21

*Giasson v. MRA Mgmt. Ass'n, Inc.*,
   777 F. Supp. 3d 913, 940–41 (E.D. Wis. 2025) ......................................... 28, 29, 34

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................... 15

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007, 1016-17 (C.D. Cal. 2023) ............................................. 15, 25

*Hernandez-Silva v. Instructure, Inc.*,
   No. 2:25-CV-02711, 2025 WL 2233210, *5 (C.D. Cal. Aug. 4, 2025) ................... 14

*Hillman v. Columbia Cnty.*,
   474 N.W.2d 913, 920 (Wis. Ct. App. 1991) ........................................................... 27

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d, 589, 603 (9th Cir. 2020) .................................................................... 19, 24

*In re Meta Pixel Tax Filing Cases*,
   793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) ................................................... 22, 25

*In re. E.K.*,
   982 N.W.2d 361 (Wis. Ct. App. 2022) ................................................................... 26

*Jones v. Peloton Interactive, Inc.*,
   720 F. Supp. 3d 940, 950 (S.D. Cal. 2024) ............................................................ 26

5

*L.B. v. LinkedIn Corp.*,
    No. 5:24-CV-06832-EJD, 2025 WL 2899514, *18 (N.D. Cal. Oct. 10, 2025) ....... 17

*Le v. Kohls Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096, 1115 (E.D. Wis. 2016) ........................................................ 34

*Levings v. Open Text Corp.*,
    2024 WL 5672082, *1 (Cal, Super. Ct. L.A. Cnty., Sept. 3, 2024) ........................ 21

*Licea v. Hickory Farms, LLC*
    2024 WL 1698147, *1 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024)........................ 20

*Matera v. Google Inc.*,
    201 WL 8200619 (N.D. Cal. Aug. 12, 2016)........................................................ 22

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d 916, 927 (D. Minn. 2024) ........................................................ 13

*Mitchell v. Hess*,
    No. 08-C-847, 2010 WL 1212080, at *3 (E.D. Wis. Mar. 23, 2010) ..................... 31

*Okey v. Runde Chevrolet, Inc.*,
    998 N.W.2d 849 (Wis. Ct. App. 2023).................................................................. 27

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
    2024 WL 3914663, *14 (C.D. Cal. May 30, 2024) ............................................... 25

*Ostrosky v. State of Alaska*,
    913 F.2d 590, 595 (9th Cir. 1990)........................................................................ 24

*Pachowitz v. Ledoux*,
    666 N.W.2d 88, 95-97 (Wis. Ct. App. 2003) ........................................................ 22

*Palda v. Gen. Dynamics Corp.*,
    47 F.3d 872, 874 (7th Cir. 1995)......................................................................... 27

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
NO. 8:25-CV-01379

*Pelnar v. Rosen Systems, Inc.*,
  964 F. Supp. 1277, 1284 (E.D. Wis. 1997) ................................................. 31

*Popa v. Microsoft Corporation*,
  153 F. 4th 784 (9th Cir. 2025) ................................................................... 21

*Q.J. v. PowerSchool Holdings LLC*,
  No. 23-CV-5689, 2025 WL 2410472, at *1, 8 (N.D. Ill. Aug. 20, 2025) ............... 14

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) ........................................... 13

*RepublicBank Dallas, N.A. v. First Wisconsin Nat. Bank of Milwaukee*,
  636 F. Supp. 1470, 1472-73 (E.D. Wis. 1986) ........................................... 27

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075, 1086 (N.D. Cal. 2025) ...................................... 19, 22

*Rodriguez v. Google LLC*,
  772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025) ..................................... 23, 24

*Rodriguez v. Plivo Inc.*,
  2024 WL 5184413, *2 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024) ................. 21

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2018) ................................... 24

*Scharon v. Paramount Global*,
  2025 WL 2996812 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) ..................... 22

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) ............................................ 22

*Slane v. Emoto*,
  582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008) ....................................... 34

*Smith v. YETI Coolers, LLC*,
　　754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ............................................................ 17

*State v. Talyansky*,
　　995 N.W.2d 277, 283 (Wis. Ct. App. 2023) ........................................................ 34

*Tate v. VITAS Healthcare Corp.*,
　　762 F. Supp. 3d 949, 954 (E.D. Cal. 2025) ........................................................ 15

*Taylor v. ConverseNow Techs., Inc.*,
　　No. 25-CV-00990-SI, 2025 WL 2308483, *7 (N.D. Cal. Aug. 11, 2025) .............. 17

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning
　　Eng'rs, Inc.*,
　　755 F.3d 832, 837 (7th Cir. 2014) ...................................................................... 34

*Valenzuela v. Nationwide Mut. Ins. Co.*,
　　686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ................................................ 15, 16

*Walsh v. Dollar Tree Stores, Inc.*,
　　2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .................................................... 22

*Vincent v. Voight*,
　　614 N.W.2d 388, 396 (200) .............................................................................. 30

*Yockey v. Salesforce, Inc.*,
　　688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) ...................................................... 15

8

**STATUTES**

20 U.S.C. § 1232 ...................................................................................... 6

Cal. Bus. & Prof. Code § 22584 .......................................................... 26

Cal. Pen. Code § 632 .........................................................................7, 11

Cal. Pen. Code § 638.51 ....................................................................... 13

Cal. Pen. Code §§ 631 ........................................................................... 7

18 U.S.C. § 2511 .................................................................................... 7

Wis. Stat. § 968.31 ................................................................................ 7

Wis. Stat. § 995.50 ......................................................................... 21, 27

The central issue in this case is whether Defendant Renaissance Learning, Inc. ("Renaissance") obtained effective consent before taking and monetizing Plaintiffs' personal information in the compulsory setting of K-12 education. Plaintiffs allege that it did not: any purported consent obtained by Renaissance was not informed, freely given, or provided by a person with authority to do so.

Consistent with its invasive data practices, Renaissance's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") is hostile to the rights of students and parents, including their right to access the courts.[1] It characterizes this case as "ideological" to obfuscate the fact that its theory of consent rests on an egregious distortion of the law: that statutes enacted to enhance student privacy instead undermine it. It argues that state and federal privacy laws authorize companies to take and use all manner of personal information from students, as long as the company obtains consent from someone at the students' schools. This radical, ends-driven proposition finds no support in the law, especially not laws enacted to protect children's information and parents' rights over that information.

Renaissance may provide educational services to schools, but it may not violate the basic rights of children by exploiting their personal information for commercial gain without effective consent. For the reasons stated herein, Renaissance's motion should be denied in its entirety.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] Renaissance criticizes Plaintiffs' counsel for bringing this lawsuit and others like it, Dkt. 44 at 10, but challenging industry-wide abuses in court is neither new nor untoward. To the contrary, consumer-protection lawsuits drove critical reforms in the tobacco, automobile, asbestos, and opioid industries. They assume special importance when aimed at protecting children from systemic harm.

544, 570 (2007). A court must accept all allegations as true, and a claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts resolve facial attacks under Rule 12(b)(1) as they would a motion to dismiss under Rule 12(b)(6). *Drummer v. CoStar Grp., Inc.*, No. EDCV 25-1047, 2025 WL 3190656, *2 (C.D. Cal. Oct. 22, 2025).

## ARGUMENT

### A. FERPA does not absolve Renaissance of its duty to obtain parental consent.

Renaissance contends that the Family Educational Rights and Privacy Act ("FERPA") and analogous California state law absolve it of its duty to obtain parents' consent before harvesting students' data. Dkt. 44 at 11. (citing 34 C.F.R. § 99.31(a)(1)(i)(A); Cal. Educ. Code § 49076(a)). It argues that these laws "authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without express parental consent." *Id*. That argument fails for at least three reasons.

***First***, FERPA regulates schools, not private companies. 20 U.S.C. § 1232g(a). Accordingly, the "school official" exception Renaissance cites provides that *schools* may disclose education records to third parties without parental consent under certain narrow conditions.[2] *Id*. § 1232g(b)(1)(A). Plaintiffs have sued Renaissance, not their schools.

---

[2] Under strictly limited circumstances inapplicable here, a contractor may be considered a "school official," but only if it (1) performs an institutional service or function for which the school would otherwise use employees; (2) is under the direct control of the school as to the use and maintenance of education records; and (3) does not redisclose any personally identifiable information from education records without prior parental consent. 34 C.F.R. §§ 99.30(a), 99.31(a)(1)(i). Further, a school must

*Second*, both FERPA and the California statute were enacted to protect student privacy and parents' rights, not undermine them. *Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706-JD, 2025 WL 844378, *2 (N.D. Cal. Mar. 17, 2025); (Donato, J.) (rejecting the same argument, noting that students' "privacy interest is expressly recognized in federal and California state law"). Renaissance's interpretation would transform an exception to parental consent—intended as a narrow safety valve to permit essential internal school operations—into a gaping pathway for the undisclosed, mass transfer of student information to the private sector. Basic canons of statutory construction preclude any such interpretation.

*Third*, even if Renaissance could invoke FERPA as a private defense to liability, the FAC alleges that Renaissance's data practices do not meet the school-official exception, which, at this stage, must be accepted as true. ¶¶ 275-84.[3]

## B. Plaintiffs state claims under federal and state wiretapping laws.

Plaintiffs allege that Renaissance violated the Electronic Communications Privacy Act ("ECPA") and the Wisconsin Electronic Surveillance Control Law ("WESCL"), each of which prohibit the intentional (1) interception of electronic communications, (2) disclosure of electronic communications, and (3) use of the contents of those communications. U.S.C. § 2511(1)(a), (c), (d); Wis. Stat. § 968.31(1)(a), (c), (d). Plaintiffs also allege that Renaissance violated section 631 of the California Invasion of Privacy Act ("CIPA"), which prohibits aiding third parties in intercepting *or* using the contents of electronic communications, and section 632 of CIPA, which prohibits the intentional recording of or eavesdropping upon confidential electronic communications. Cal. Penal Code §§ 631(a), 632 (a). Plaintiffs plausibly

---

ensure those receiving records under this exception obtain access only to records in which they have legitimate educational interests. *Id*. § 99.31(a)(1)(ii).

[3] All references to the FAC are cited as "¶."

allege the elements of each violation with detailed factual support. *See* ¶¶ 85-92 (automatic interception of communications when Plaintiffs used Renaissance's products), 152-221 (disclosure of intercepted communications to third parties; aiding third parties to intercept communications), 108-24 (use of intercepted communications). Plaintiffs further allege that they did not consent to these activities. ¶¶ 8-15, 19, 59, 66, 75, 88, 93, 111, 123, 127, 138, 151, 156, 196, 222-63.

Renaissance raises several defenses, all of which fail in light of Plaintiffs' allegations and applicable law.

### 1. The party exception to the ECPA and WESCL does not apply.

First, Renaissance argues that the party exception to the ECPA and WESCL applies and requires dismissal of Plaintiffs' claims. Dkt. 44 at 14. But that exception is precluded by the crime-tort exception.

The party exception applies only if a defendant, in intercepting communications, did not intend to commit a crime or tort. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927 (D. Minn. 2024) (party exception inapplicable if a party intercepts a communication 'for the purpose of committing any criminal or tortious act in violation of'" state or federal law) (quoting 18 U.S.C. § 2511(2)(d)). Here, the crime-tort exception precludes invocation of the party exception at this stage because Plaintiffs allege that Renaissance intercepted their communications to tortiously invade their privacy. *See* Section F, *infra*; ¶¶ 377-79, 433-45; *see R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (party exception did not support dismissal where plaintiffs alleged that defendant intercepted their website communications in violation of their privacy rights). For example, Plaintiffs allege that Renaissance installed source code that directed their communications to third parties without their consent. ¶¶ 125-221, 377-79, 433-45. Renaissance's alleged tortious intent thus precludes dismissal of Plaintiffs' claims.

13

Renaissance cites *Desnick v. American Broadcasting Companies*, but that case is distinguishable because the parties did not dispute that the defendant's purpose in recording plaintiffs was non-tortious investigative reporting. 44 F.3d 1345, 1353 (7th Cir. 1995) (crime-tort exception inapplicable because plaintiffs did not allege tortious intent at the time of the recording). By contrast, Plaintiffs allege that Renaissance installed tracking technologies to intercept students' communications for the purpose of disclosing them to third parties for commercial gain without effective consent. ¶¶ 141-50, 171-81.[4]

### 2.  The FAC details "in transit" interception.

Renaissance next argues that Plaintiffs do not sufficiently allege how their communications were intercepted "in transit." Dkt. 44 at 15. Renaissance relies on *Hernandez-Silva v. Instructure, Inc*., which concluded that the plaintiffs failed to sufficiently describe how the defendant had intercepted their data in real time. No. 2:25-CV-02711, 2025 WL 2233210, *5 (C.D. Cal. Aug. 4, 2025).

***First***, other courts have upheld wiretapping claims in similar cases. *See Cherkin*, 2025 WL 844378, at *5; *Q.J. v. PowerSchool Holdings LLC*, No. 23-CV-5689, 2025 WL 2410472, at *1, 8 (N.D. Ill. Aug. 20, 2025).

***Second***, Renaissance fails to show that the wiretapping allegations in the FAC are similar to those in the *Instructure* complaint. They are not. The FAC contains extensive allegations describing how Renaissance intercepted Plaintiffs' communications—and aided third parties' interception of Plaintiffs' communication—

---

[4] Renaissance also argues Plaintiffs do not sufficiently describe how it intercepted their communications on web properties belonging to third parties. Dkt. 44 at 15. But Plaintiffs provide detailed allegations describing additional interception of their communications on third-party web properties, including those of PowerSchool, Finalsite, and others. ¶¶ 141-49. Further, because Plaintiffs allege that Renaissance intercepted their communications for tortious purposes, they need not allege additional interception to state claims under the ECPA and WESCL.

14

in real time through application programming interface technology and by installing tracking source code in its products, allegations supported by forensic evidence. ¶¶ 145-49, 152-221.

### 3. Plaintiffs allege that Renaissance aided third-party interception.

Renaissance contends that it cannot be liable for aiding and abetting third-party violations of CIPA under the fourth clause of section 631(a). Dkt. 44 at 16. It argues that Plaintiffs do not allege that third parties *used* Plaintiffs' data they collected with Renaissance's support "as would be required for an aiding and abetting claim," citing *Graham v. Noom, Inc*., 533 F. Supp. 3d 823 (N.D. Cal. 2021). However, courts have broadly rejected *Graham*'s third-party "use" requirement in favor of a requirement that plaintiffs allege facts showing that a third party *is capable* of using intercepted data for the third party's own benefit, including courts in this District. *See Tate v. VITAS Healthcare Corp*., 762 F. Supp. 3d 949, 954 (E.D. Cal. 2025); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1200-02 (S.D. Cal. 2024); *Heiting v. Taro Pharms. USA, Inc*., 709 F. Supp. 3d 1007, 1016-17 (C.D. Cal. 2023); *Yockey v. Salesforce, Inc*., 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023).[5] And the FAC extensively alleges that numerous third parties are capable of using data they intercepted from Plaintiffs in real time with Renaissance's help. Here are just a few examples:

Plaintiffs allege that a company called Mixpanel intercepts Plaintiffs' Nearpod data in real time "to refine its own predictive models, develop new commercial tools and features, benchmark behavioral engagement across clients, and create or train proprietary datasets and algorithms" for use in products and services. ¶¶ 178-81.

---

[5] In fact, one court in this District concluded that third-party benefit is entirely irrelevant. *Valenzuela v. Nationwide Mut. Ins. Co*., 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("Whether the third party's use was purely for [defendant]'s benefit, rather than for its own benefit, is immaterial under the statute. Allowing a third party to listen in makes the third party liable for a violation of Section 631.").

Plaintiffs allege that Renaissance facilitates real-time interception of Plaintiffs' communications collected as they use Nearpod by Comscore, "an advertising measurement, marketing data, and analytics platform that sells audience data to third parties." ¶ 188. Using that data, Comscore can uniquely identify a student, identify her "media consumption across multiple devices," and track the student's location and web-browsing activities, data certainly capable of use by a marketing and data-analytics company. ¶¶ 189-90.

Plaintiffs allege that Renaissance aided Google and other third parties in intercepting Plaintiffs' communications on Fastbridge, ¶¶ 196-221, including tracking technologies such as Google Analytics that "allow[] Google to monetize advertisements directed to the uniquely identified student" and bolster "a unique, longitudinal profile about student users, which it then uses or is capable of using for its own purposes independent of the services it provides Renaissance." ¶¶ 208, 211.

These allegations amply support Plaintiffs' aiding-and-abetting claim at this stage. *See Tate*, 762 F. Supp. 3d at 956 (allegations sufficient that cited defendant's terms of service stating that third party *may* use data obtained from calls to defendant for its own purposes); *D'Angelo*, 726 F. Supp. 3d at 1201 (allegations sufficient that "Salesforce 'harvests' and 'exploit[s]' the data collected from the chat conversations for 'financial gain,' and 'analyze[s]' the intercepted conversations for Salesforce's own 'business purposes'"); *Valenzuela*, 686 F. Supp. 3d at 969 (allegations sufficient that the third-party's business model was harvesting data from communications made on defendant's website).

### 4. The communications at issue are "confidential communications" protected by CIPA.

Renaissance next contends that Plaintiffs' communications are not sufficiently "confidential" to support a section 632 claim because they were "internet

16

communications." Dkt. 44 at 17. This oversimplification contradicts the text of the statute and has been rejected by numerous courts.

CIPA defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made ... in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Pen. Code § 632(c). Courts routinely hold that internet communications can have sufficient confidential character to support a section 632 claim. *See*, *e.g.*, *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, *18 (N.D. Cal. Oct. 10, 2025) (health information); *Taylor v. ConverseNow Techs., Inc.*, No. 25-CV-00990-SI, 2025 WL 2308483, *7 (N.D. Cal. Aug. 11, 2025); (credit card information); *Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2025 WL 2680068, *10 (N.D. Cal. Sept. 17, 2025) (period tracking information).

Here, Plaintiffs—children working on school assignments—allege that they had a reasonable expectation of privacy in their communications while using Renaissance's products as required by their schools. ¶¶ 435-38. This is sufficient to allege confidentiality under section 632. *See A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) (minor plaintiffs adequately alleged reasonable expectation of privacy in their personal information disclosed on apps). Moreover, this "fact-intensive inquiry" is "often too difficult to resolve at the pleadings stage." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024).

Contrary to Renaissance's suggestion, neither section 632(c) nor the Ninth Circuit have adopted a bright-line rule excluding "any text-based communications" from the statute. Dkt. 44 at 17. Further, *Boulton v. Community.com, Inc.* is distinguishable because, there, the plaintiff knew her text message would be recorded.

No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025). By contrast, Plaintiffs allege that Renaissance's interception of their communications was surreptitious and undisclosed to them. ¶¶ 228-32, 343. And Renaissance's argument that whatever Plaintiffs may have understood about Renaissance's data practices when they filed their FAC may be imputed to what they understood at the time Renaissance and third parties harvested and exploited their information is wholly without support. Dkt. 44 at 18.

Finally, Renaissance notes that "students at school have a lesser expectation of privacy than members of the public generally," then argues that students have no expectation of privacy whatsoever in their school-issued devices. *Id*. at 18. But the latter does not follow from the former. And Renaissance's cited authority, *Bravo ex rel. Ramirez v. Hsu*, 404 F. Supp. 2d 1195 (C.D. Cal. 2005), does not support this sweeping proposition. Rather, *Bravo* holds that a *school* may infringe upon student privacy, but *only* when there are reasonable grounds to believe the student has violated the law or school rules, and *only* to the extent supported by the purported infraction. *Id*. at 1201. Again, Plaintiffs have sued Renaissance, not their schools. Further, even if Renaissance's rights were coextensive of schools' rights (and they are not), no allegations justify Renaissance's persistent invasion of Plaintiffs' privacy as described in the FAC. Rather, Plaintiffs' privacy interest in their personal information "is expressly recognized in federal and California state law." *Cherkin*, 2025 WL 844378, at *2. That interest does not vanish simply because student information is collected through software instead of paper.

### C. Plaintiffs state a pen-register claim.

Renaissance challenges Plaintiffs' pen-register claim, arguing that (1) there is no expectation of privacy in IP addresses, thus Plaintiffs lack Article III standing, and (2) section 638.51 does not apply to IP addresses. These arguments are both wrong and a misdirect.

### 1. Renaissance collects and shares far more than IP addresses.

*First*, California district courts and the Ninth Circuit recognize an expectation of privacy in IP addresses and cookie identifiers where, as here, the defendant has used that information to "'allegedly compile[] highly personalized profiles'" about users; such allegations "'prevent [the courts] from concluding that the Plaintiffs have no reasonable expectation of privacy.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1086 (N.D. Cal. 2025) (concluding that alleged collection of IP addresses and electronic device identification numbers could support a pen-register claim) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d, 589, 603 (9th Cir. 2020); *Deivaprakash v. Condé Nast Digital*, 2025 WL 2541952, at *4 (N.D. Cal. Sept. 4, 2025) (section 638.51 allegations that "trackers allow the third parties to generate profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics, and hinder users' ability to remain anonymous" sufficiently allege injury).[6]

*Second*, Plaintiffs allege that Renaissance collected far more data than just IP addresses and shared that data with third parties, including companies engaged in advertising, marketing, and identity-resolution.[7] ¶ 153. For example, the FAC describes how Renaissance's Nearpod product shares student data with Google, Mixpanel, Microsoft, Xandr, Comscore, and Taboola. ¶¶ 158, 171, 182, 184, 187, 191. Student

---

[6] *See also Drummer*, 2025 WL 3190656, at *3 ("the issue is not about Plaintiffs' expectation of privacy in transmitting their IP address to Defendant for its use, it is about Defendant's alleged transmission of the IP address to others with whom Plaintiff did not share the address.").

[7] Renaissance argues that Plaintiffs did not explain the process through which Device Metadata is collected. However, Plaintiffs alleged "Renaissance admits that it collects the following information *automatically* from every student who uses it Products, which includes Plaintiffs." ¶¶ 86-87, 90.

information shared with Google includes pages visited and duration, referral source, number of sessions and engagement time, device and browser details, ¶ 162, and the Google Tag Manager Tag ID, which can identify a specific student, ¶ 169. Google then combines this data with information collected through its proprietary cookies to build unique, longitudinal profiles of student users for its own purposes. ¶¶ 158-70. Mixpanel similarly receives student information through Nearpod, such as a student's name, city, state, gender, unique devices they use, and the student's lifetime value in U.S. dollars, ¶ 176, and a Mixpanel Distinct ID allows that data to be combined with data from other sources, enabling longitudinal behavioral profiling of the student. ¶¶ 176, 180. Mixpanel consolidates this to create "whole child data" to "enable[] more targeted student surveillance, predications of academic and behavioral outcomes." ¶¶ 119; *see also* ¶¶ 82 ("DnA data may be 'aggregate[d] and disaggregate[d]'"), 42 (SAEBRS "*identifies* students who are at risk…"). Aggregation of Plaintiffs' personal data collected by Renaissance allows Renaissance and third parties to create highly detailed profiles that can include sensitive information such as social-behavioral characteristics, age, gender, and geographic location, further hindering Plaintiffs' ability to remain anonymous. *See Deivaprakash*, 2025 WL 2541952, at *4.

**2. Renaissance's authorities do not support dismissal.**

Most of the cases cited by Renaissance are inapposite because they involve only IP addresses. Dkt. 44 at 19-22.[8] As discussed, Plaintiffs allege that Renaissance collected far more than just their IP addresses *and* that it widely shared that information

---

[8] Those cases include *Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *Khamooshi v. Politico*, LLC, 786 F. Supp. 3d 1174, 1179 (N.D Cal. 2025); *Capitol Records Inc v. Thomas-Rasset*, 2009 WL 1664468, *3 (D. Minn. June 11, 2009); *Licea v. Hickory Farms, LLC,* 2024 WL 1698147, *1 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024); *Levings v. Open Text Corp.,* 2024 WL 5672082, *1 (Cal, Super. Ct. L.A. Cnty., Sept. 3, 2024); *Rodriguez v. Plivo Inc.*, 2024 WL 5184413, *2 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024).

with third parties—whose business is creating detailed profiles of users—without Plaintiffs' effective consent. ¶¶ 152-221.[9]

Renaissance's reliance on *Popa v. Microsoft Corporation*, 153 F. 4th 784 (9th Cir. 2025), is similarly misplaced. *Popa* focused on session-replay technology that allowed Microsoft "to capture and reproduce customers' interactions with its website." *Id*. at 786. The court noted that, "[a]t most, Popa alleges that [the session-replay technology] gathered her pet-store preferences and her street name." *Id*. at 791. The court concluded that the plaintiff failed to explain how collecting such data "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law" because the data collected was not "embarrassing, invasive, or otherwise private information." *Id.* By contrast, Plaintiffs have alleged privacy invasions that would be actionable at common law, *e.g.*, that Renaissance collected and disclosed deeply personal information such as Plaintiffs' date of birth, gender, physical locations, academic information, social-behavioral characteristics, and even their school lunch balances, ¶¶ 56, 73, 81, 86, in addition to IP addresses, cookies, and routing metadata. *See Gabrielli v. Haloen US Inc,* 2025 WL 2494368, at *7-8 (N.D. Cal. Aug. 29, 2025) (distinguishing *Popa* and finding allegations that the use of cookies allowed third parties to collect data such as age, gender, email address, "device information, session information, and/or geolocation data" sufficient to establish Article III standing); *see also Camplisson v. Adidas America, Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (distinguishing *Popa* "where the collection of Plaintiffs' information concerns their

---

[9] *Malibu Media LLC v. Pontello* is also distinguishable, as it concerns the Federal Pen Register Act, not section 638.51; further, the IP address collected there was voluntarily sent. 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013).

21

person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases.").

Renaissance also posits that because CIPA's updates did not specifically enumerate IP address information, it cannot be extended to cover such information. Dkt. 44 at 21. But courts have broadly interpreted CIPA as protecting privacy interests and applied it to new technologies. *See*, *e.g.*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) ("Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies."). Indeed, "there is no doubt that the California Legislature, in enacting CIPA, intended to protect the right of privacy of the people of this state . . . . This philosophy appears to lie at the heart of virtually all the decisions construing [CIPA]." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (cleaned up). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests." *Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) (cleaned up).

Moreover, while some courts have taken the minority view that CIPA does not apply to internet communications, *see Scharon v. Paramount Global*, 2025 WL 2996812 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025); *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025), most courts have concluded that it does. *See Riganian*, 791 F. Supp. 3d 1093 (applying section 638.51 to "IP addresses and electronic device identification numbers"); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) (extending section 638.51 to cookies); *Fregosa v. Mashable, Inc*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) (extending section 638.51

to "software processes that record addressing information in electronic communications").

Finally, Renaissance argues that CIPA is inapplicable because California's Consumer Privacy Act ("CCPA") "more clearly speaks to the practice of data sharing." Dkt. 44 at 22. But courts routinely apply CIPA to new technologies, as cited and described herein. Renaissance also claims that the CCPA permits its conduct because the collection of IP addresses is "reasonably necessary." *Id*. at 14. But Plaintiffs allege that Renaissance collects far more than what is "reasonably necessary" to provide education services—and shares it with numerous third parties. ¶¶ 86, 91, 94-97, 152-221.

### D. Plaintiffs state a CDAFA claim.

#### 1. Plaintiffs allege loss sufficient to confer standing under CDAFA.

Renaissance argues that Plaintiffs lack standing under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") because they do not allege damage or loss. Dkt. 44 at 24. This argument fails for at least three reasons.

**First**, "the plain language of CDAFA's 'damage or loss' requirement contains no such limitation," as the purpose of the statute is to protect the privacy of individuals. *Cherkin*, 2025 WL 844378, at *6 (sustaining similar CDAFA claim, citing statutory language and purpose).

**Second**, Plaintiffs plead damage by not having received a share of the unjust profits generated from their data under a disgorgement theory. ¶ 341; *Demetrius Smith, et al. v. Rack Room Shoes, Inc.*, 2025 WL 2210002, *3 (N.D. Cal. Aug. 4, 2025); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025).

**Third**, Plaintiffs plead economic loss by alleging that a market for their data exists and they were not compensated for Renaissance's monetization of their data, that Renaissance's use of their data diminished its value, or both. ¶¶ 121, 310, 311, 330,

332; *see Rodriguez*, 772 F. Supp. 3d at 1110; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600 (stake in unjustly earned profits exists no matter individual's intent to sell or diminution data's value); *Brown*, 685 F. Supp. 3d at 940 (evidence of market for plaintiffs' data precludes ruling as a matter of law that plaintiffs suffered no damages under CDAFA).

### 2. Plaintiffs need only show that Renaissance's "access" was knowing.

Renaissance further contends Plaintiffs cannot show that it accessed Plaintiffs' data *knowing* that it lacked permission because it purportedly relied on schools' consent. Dkt. 44 at 24. But several courts have rejected this argument as unsupported by the text and purpose of the statute. *See*, *e.g.*, *Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) (CDAFA's "knowing" requirement modifies only the "access" element); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2018) (same). Further, even if knowing unauthorized access was an element, Renaissance's erroneous reliance on school consent in lieu of parental consent would not shield it from liability, as a mistake of law is generally not a defense to criminal liability. *Ostrosky v. State of Alaska*, 913 F.2d 590, 595 (9th Cir. 1990). Even if it was, what Renaissance knew or believed about any purported school-consent exception is a fact question for another day—as would the question of whether Plaintiffs' schools actually provided effective consent, which would be Renaissance's burden to prove. *Calhoun v. Google*, LLC, 113 F.4th 1141, 1147 (9th Cir. 2024).

### 3. Plaintiffs need not show Renaissance overcame technical barriers.

Renaissance contends that "Plaintiffs do not allege that Renaissance collected data from or accessed parts of their children's computers ***outside*** of Renaissance's products." Dkt. 44 at 25 (emphasis in original). This appears to be another way of arguing that the statute requires a showing that Renaissance overcame technical barriers. *See id.* (citing *Heiting*, 709 F. Supp. 3d at 1020 (citing *Perkins v. LinkedIn*

24

*Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014). But the Ninth Circuit has rejected that argument. *See Cherkin*, 2025 WL 844378, at *6 (citing *United States v. Christensen*, 828 F.3d 763, 789–90 (9th Cir. 2015)).

### E. Plaintiffs state a UCL claim.

Renaissance argues that Plaintiffs lack standing to bring a UCL claim because they fail to allege lost money or property. Dkt. 44 at 25.

Courts are split as to whether the economic-injury requirement is satisfied only if the plaintiff loses money or property, or whether allegations of data misappropriation will suffice, and there is no binding Ninth Circuit precedent. *See A.B. ex rel v. Google LLC*, 737 F. Supp. 3d at 881. Renaissance correctly observes that some courts have held that disclosure of personal information alone is not sufficient to establish UCL standing. Dkt. 44 at 26. But other courts have concluded that alleged misappropriation of personal information confers UCL standing. *See*, *e.g.*, *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025); *Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, *14 (C.D. Cal. May 30, 2024); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (quoting *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024)); *Brown v. Google LLC*, 2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021). Under this line of authority, Plaintiffs have standing to bring a UCL claim, as they allege that, in taking and monetizing their information, Renaissance forced them to participate in the data market without their consent or compensation. ¶¶ 310, 330-31, 341.

Plaintiffs further argue that Renaissance caused them economic loss because its conduct has prevented the development of a legitimate market for student data in which Plaintiffs could reasonably participate. ¶¶ 306-33. The relevant inquiry under the UCL focuses on whether a defendant prevented a plaintiff from realizing the economic value of their own data through unfair business practices. *See Jones v. Peloton Interactive,*

*Inc.*, 720 F. Supp. 3d 940, 950 (S.D. Cal. 2024). That Renaissance prevented plaintiffs from doing so by diminishing the value of their data in an existing market, or by preventing the development of a legitimate student-data market, is a distinction without a difference. Renaissance's conduct is precisely what the UCL was enacted to prevent.

Renaissance further contends that Plaintiffs do not meet the unlawful prong of the UCL because their allegations are derivative of their other claims, which purportedly fail. Dkt. 44 at 27. But because Plaintiffs' other claims do not fail, Plaintiffs state a UCL claim under the unlawful prong. *See GoodRX Holdings*, 2025 WL 2052302, at *12. And Renaissance's argument as to unfairness is soundly refuted by allegations throughout the FAC. ¶¶ 341–343, *passim*.

## F. Plaintiffs state a claim for invasion of privacy.

Renaissance argues that Plaintiffs' invasion of privacy claim fails because Plaintiffs' cite a theory of intrusion upon seclusion but do not alleged an intrusion of any geographical or physical "space." Dkt. 44 at 28. Plaintiffs' claim may not be so narrowly construed.

Wisconsin Statute section 995.50 codifies the state's recognition of a right to privacy and provides specific definitions for actionable invasions of privacy. Wisc. Stat. § 995.50. It defines "invasion of privacy" as encompassing multiple distinct claims actionable under common law, including intrusion upon seclusion, misappropriation of name or likeness, and public disclosure of private facts. *Id*. § 995.50(2)(am). The statute does not require plaintiffs to specify a particular type of privacy invasion in their pleading. Instead, it broadly recognizes the right of privacy and provides relief for any unreasonable invasion of privacy. *See In re. E.K.*, 982 N.W.2d 361 (Wis. Ct. App. 2022) ("Under Wis. Stat. § 995.50(2)(am), the phrase 'invasion of privacy' is defined as *any* of the causes of action for invasion of privacy set forth therein.") (emphasis in original).

26

Further, the FAC elsewhere claims an invasion of privacy "by public disclosure of private facts," thereby notifying Renaissance of that theory of liability. ¶ 492. Thus, Plaintiffs' claim for invasion of privacy may be fairly evaluated under the theory of public disclosure of private facts. *See also Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 874 (7th Cir. 1995) ("Complaints are to be read liberally, and the district court may grant a 12(b)(6) motion only if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief.") (cleaned up); *RepublicBank Dallas, N.A. v. First Wisconsin Nat. Bank of Milwaukee*, 636 F. Supp. 1470, 1472-73 (E.D. Wis. 1986) (interpreting plaintiff's misrepresentation claim based on plaintiff's response to defendant's motion for summary judgment).

An invasion of privacy claim based on public disclosure of private facts has four elements: (1) public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private; (3) the private matter made public is one that would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. *See Okey v. Runde Chevrolet, Inc.*, 998 N.W.2d 849 (Wis. Ct. App. 2023). Regarding the first element, Wisconsin courts have held that disclosure to a limited audience may constitute public disclosure of private facts, a question to be decided by the factfinder. *See Pachowitz v. Ledoux*, 666 N.W.2d 88, 95-97 (Wis. Ct. App. 2003) (upholding jury determination that disclosure of private information to one person constituted "publicity"); *Hillman v. Columbia Cnty.*, 474 N.W.2d 913, 920 (Wis. Ct. App. 1991) (sustaining invasion of privacy claim based on oral communication of sensitive health information among numerous jail employees and inmates).

The FAC contains allegations that meet each of these elements: (1) Renaissance shares data regarding Plaintiffs with myriad third parties, ¶¶ 7, 32-33, 108, 117, 125-

27

132, 136-37, 141, 146-47, 435; (2) the data shared by Renaissance is highly personal in nature and includes information regarding students' academic assessments and whether they may be at risk for social-emotional or behavioral problems, ¶¶ 41-42, 57, 64, 73-74, 436-38, 441; (3) Renaissance's disclosure of personal information about school-aged children in a compulsory environment and without parental notice or consent is conduct that is highly offensive to a reasonable person and constitutes an egregious breach of social norms, ¶¶ 289-90, 439-42; and (4) Renaissance's sharing of student data without meaningful notice or consent was undertaken knowingly, willfully, and with reckless disregard for the privacy and well-being of minor students, ¶¶ 435, 485.

Accordingly, Plaintiffs state a claim for invasion of privacy.

**G. Plaintiffs state a claim for unjust enrichment.**

Renaissance argues that Plaintiffs' unjust-enrichment claim should be dismissed because conferral of their personal information to Renaissance does not constitute a tangible benefit. Dkt. 44 at 29.

In support, it cites *Giasson v. MRA Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 940-41 (E.D. Wis. 2025). There, the plaintiff alleged that the defendant, a nonprofit employer association, had used her personal information "to facilitate its business operations." *Id*. at 940. The court found this allegation too vague to support a claim, citing cases that similarly involved allegations of a benefit that were vague and incidental to the defendant's business operations. *Id*. at 940-41. The court noted that the plaintiff did not explain how her data facilitated the defendant's business operations and offered no "contextualizing information" demonstrating a "measurable, economic" benefit. *Id.* at 941.

*Giasson* is plainly inapposite, as most of the FAC in this case is devoted to explaining how Renaissance benefits from student data and how student data facilitates

its business operations. The FAC opens by alleging that "Renaissance's core business is generating, collecting, and analyzing as much information about the student users of its products as is technologically possible and monetizing that information." ¶ 3. It goes on to describe the student-data market, ¶¶ 34-38, how Renaissance's products "generate, collect, store, share, and analyze data about students, . . . functions [] core to Renaissance business model," ¶ 46, and how its robust access to student data has attracted substantial investment, ¶ 47. The FAC then extensively details how Renaissance monetizes student data. ¶¶ 108-151. In short, Plaintiffs do not allege that Renaissance's collection and use of student data is incidental to its business; they allege that it *is* Renaissance's business. These allegations support an unjust-enrichment claim at this stage. *See Brahm v. Hospital Sisters Health System*, 2024 WL 3226135, *7-8 (W.D. Wis. June 28, 2024) (permitting unjust-enrichment claim where plaintiff alleged that defendants monetized her data "through advertising, sales, or trade for other services.").

Renaissance next argues that Plaintiffs' claim fails because they voluntarily provided their data to Renaissance. Dkt. 44 at 30. First, Plaintiffs allege that they were required to use Renaissance's products as part of their compulsory education. ¶¶ 13, 20, 25-29, 55, 61-62, 87, 239-41, 289. Second, much of the data Renaissance collected about Plaintiffs was not provided by Plaintiffs, but was provided by their school or was generated and extracted directly from Plaintiffs by Renaissance through tracking tools. ¶¶ 85-93.

Renaissance further argues that Plaintiffs' claim fails because Plaintiffs received a benefit from their use of its products. Dkt. 44 at 30. But the law already guarantees Wisconsin children, like all children in the U.S., the right to a public education. *See*, *e.g.*, Wis. Const. art. X, § 3; *Vincent v. Voight*, 614 N.W.2d 388, 396 (2000) ("Wisconsin students have a fundamental right to an equal opportunity for a sound basic

education"). If that right has any meaning, it includes the right to receive pedagogical services. When a school elects to provide those services through software, as Plaintiffs' schools have, it includes the right to use that software. ¶ 240; *see*, *e.g.*, *Bd. of Ed. v. Sinclair*, 222 N.W.2d 143, 146-48 (1974) (even public schools themselves may not charge students for things like facilities, equipment, instruction, required courses and courses credited toward graduation, "electronic listening devices, microfilm readers and similar devices"). As Renaissance itself states, "[s]chools and educators rely on Renaissance's tools to provide classroom instruction, administer student assessments, and analyze student learning." Dkt. 44 at 11. Renaissance cites no authority that permits a private vendor to force students to pay the vendor for "services key to students' educational experiences," let alone with their personal information. *Id*. at 31. Rather, its cited authority holds only that a buyer's dissatisfaction with a seller's product does not support a claim, which Plaintiffs do not allege. *Id*. at 30 (citing *T&M Farms v. CNH Industrial America, LLC*, 488 F. Supp. 3d 756 (E.D. Wis. 2020)).

Even if Renaissance could condition students' use of its services on provision of their personal information, Plaintiffs allege that Renaissance took, used, and shared their personal information far beyond that necessary to provide those services—in violation of federal law, ¶ 271—including by collecting extensive real-time behavioral data, ¶¶ 94-97, 162-63, 177-78, 189, 202-03; creating invasive, persistent digital student profiles, often for marketing purposes, ¶¶ 170, 176, 183, 186, 194, 201, 215, 221; conducting marketing research, ¶¶ 132, 137, 153, 179; testing and developing new products, ¶¶ 114-24, 179-81; and securing commercially valuable third-party data-sharing agreements, ¶¶ 141-51. Thus, the benefits Renaissance received from Plaintiffs' data are substantially disproportionate to the basic educational services Plaintiffs received in exchange. ¶¶ 124, 342.

In sum, Renaissance's retention of vast economic benefits derived from ill-gotten student data that far exceed the benefit students received—that is, the education to which they were already legally entitled—as alleged in the FAC is definitionally unjust. Renaissance's arguments thus fail.

**H. Plaintiffs state a negligence claim.**

Renaissance argues that Plaintiffs' negligence claim should fail for various reasons, Dkt. 44 at 30, all of which are refuted by the FAC and applicable law.

*First*, Renaissance contends Plaintiffs' negligence claim fails because, at the time it contracted with Plaintiffs' schools, it was not foreseeable that Plaintiffs would later claim that its arrangements constituted a privacy violation. *Id.* at 30-31. But negligence under Wisconsin law does not require foreseeability of a lawsuit; it requires foreseeability of the risk of harm suffered due to a defendant's breach. *Mitchell v. Hess*, No. 08-C-847, 2010 WL 1212080, at *3 (E.D. Wis. Mar. 23, 2010) ("To establish a breach of a duty of care, the harm that occurs must have first been foreseeable."). And the harms that Plaintiffs allege—invasion of their privacy; misappropriation and exploitation of their personal information; algorithmic profiling; compromising the value, integrity, and security of their personal information; and making children and their parents choose between their right to privacy and their right to an education— were imminently foreseeable risks of Renaissance's indiscriminate data practices, to which it subjected Plaintiffs without their or their parents' knowledge or consent. ¶¶ 285-340; 468-70.

*Second*, Renaissance contends that Plaintiffs' negligence claim is unsupported by public policy. Dkt. 44 at 31. It relies on *Pelnar v. Rosen Systems, Inc.*, 964 F. Supp. 1277, 1284 (E.D. Wis. 1997), which declined to impose liability on a "subsequent product handler for failing to correct defects created by manufacturers." But that case is inapposite, as Plaintiffs' allegations concern Renaissance's direct collection, use, and

sharing of student data, not its handling of student data as a subsequent recipient of that data. Additionally, its bald assertion that requiring parental consent will "thwart the edtech industry's ability to provide" educational services is without support and insufficient to overcome Plaintiffs' claim at this stage. Further, to the extent public policy is relevant, it supports Plaintiffs' claim, which seeks to hold Renaissance liable for commercially exploiting vast troves of children's personal information without their parents' knowledge or consent under the guise of providing education services. If that is an industry-wide practice, the industry requires more accountability, not less.

*Third*, Renaissance contends that Plaintiffs' claim is based on purported misuse of their data by third parties, *id.* at 31, but its argument is refuted by the FAC, which focuses on *Renaissance's* use and knowing disclosure of Plaintiffs' personal information for further misuse. ¶¶ 85-151.

*Fourth*, Renaissance contends that yet another student-privacy law actually undermines student privacy: this time, it argues that California's Student Online Personal Information Protection Act ("SOPIPA") authorizes its disclosure of student data. Dkt. 44 at 31 (citing Cal. Bus. & Prof. Code § 22584(b)(4)). However, as with its FERPA argument, (1) Renaissance does not argue that SOPIPA provides a private defense or preempts Plaintiffs' claims, and (2) Plaintiffs allege that Renaissance disclosed student data in a manner inconsistent with SOPIPA—not just to allow or improve operability and functionality, but also to create invasive, persistent digital student profiles, often in connection with marketing purposes, ¶¶ 170, 176, 183, 186, 194, 201, 215, 221; to conduct marketing research, ¶¶ 132, 137, 153, 179; to test and build new products, ¶¶ 114-24, 179-81; and to secure commercially valuable third-party data-sharing agreements, ¶¶ 141-51. Such allegations are sufficient at this stage.

*Fifth*, Renaissance argues that Plaintiffs fail to plead actual damages because they do not allege an intention to participate in the data market. Dkt. 44 at 31. But

32

Renaissance cites no case law supporting such a requirement. Further, Renaissance's arguments misapply the pleading standard applicable to damages: "Rule 8 does not create a pleading standard for damages beyond what is necessary to establish standing." *Fox v. Iowa Health Sys*., 399 F. Supp. 3d 780, 795 (W.D. Wis. 2019) (cleaned up). "To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available." *Id*. Plaintiffs have alleged injury in the form of privacy violations, diminution of the value of their personal information, and forced participation in the data market. ¶¶ 285-333. Moreover, Wisconsin law does not limit compensatory damages for privacy violations—even those resulting from negligence—to pecuniary loss. Wis. Stat. § 995.50(4); *see also Doe v. Saftig*, No. 09-C-1176, 2011 WL 1792967, *20 (E.D. Wis. May 11, 2011) (holding that violation of section 995.50 can support a negligence claim). Finally, such damages may be "based either on the plaintiff's loss or defendant's unjust enrichment." Wis. Stat. § 995.50(4). Plaintiffs allege both. *See* section G., *supra* (explaining Renaissance's unjust enrichment).

**Finally**, Renaissance contends that Plaintiffs fail to state a negligence *per se* claim, arguing that COPPA is not the type of "safety statute" required for negligence *per se* because it does not contain a private right of action. Dkt. 44 at 32-33. But Wisconsin courts have rejected that requirement. *See, e.g., Gaisson*, 777 F. Supp. 3d at 933 (observing that inclusion of private right of action is just one "expression of legislative intent that the statute become a basis for the imposition of civil liability"); *Dusterhoft v. OneTouchPoint Corp.*, No. 22-cv-0882-BHL, 2024 WL 4263762, at *12 (E.D. Wis. Sept. 23, 2024) ("While OneTouchPoint is correct that neither HIPAA nor Section 5 creates a private right of action, that is not necessarily required for a claim of negligence per se."). Accordingly, Plaintiffs' claim may not be dismissed on that basis.

### I. Plaintiffs State a WDTPA claim.

Renaissance seeks dismissal of Plaintiffs' claim under the Wisconsin Deceptive Trade Practices Act ("WDTPA") because Plaintiffs (1) are not citizens of Wisconsin, (2) do not allege that they entered into any commercial transaction with Renaissance, and (3) fail to allege a "pecuniary loss." Dkt. 44 at 33-34. But Renaissance is wrong about the law and misconstrues the FAC.

*First*, Plaintiffs need not be Wisconsin citizens to bring a WDTPA claim. *See Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1115 (E.D. Wis. 2016) (sustaining California resident's WDTPA claim because "even if Le 'saw' Kohls' allegedly deceptive statements in California, the advertisements that comprise the basis of Le's claims indeed were 'made,' and then 'disseminated,' by Kohls from its Wisconsin headquarters."). "The statute does not proscribe [*sic*] where the recipient or consumer must be or reside." *State v. Talyansky*, 995 N.W.2d 277, 283 (Wis. Ct. App. 2023).

*Second*, Plaintiffs need not allege that they entered into a commercial transaction with Renaissance. The elements of a WDTPA claim are (1) the defendant made a representation to the public intending to induce an obligation, (2) the representation was untrue, deceptive, or misleading, and (3) the representation caused a pecuniary loss to the plaintiff. *Giasson*, 777 F. Supp. 3d at 943. There is no requirement that a plaintiff have entered into a commercial transaction with a defendant, and the cases cited by Renaissance do not state otherwise. *See Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008) (granting summary judgment for defendant because the misrepresentations at issue were in books that were noncommercial in nature); *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (affirming dismissal of WDTPA claim because the misrepresentations were not related to a commercial transaction).

Here, the FAC includes allegations that Renaissance made false and misleading statements on which it intended schools and parents to rely, namely, that it complies with COPPA and FERPA, and that schools may consent to its student-data practices in lieu of parents. ¶¶ 264-84. Renaissance made these misrepresentations intending to induce Plaintiffs' schools to purchase its products and execute contracts accordingly, which enabled Renaissance to obtain vast troves of student data, including Plaintiffs' data, without parental consent. ¶¶ 58, 65, 265-84, 310. Thus, Plaintiffs sufficiently allege that Renaissance made false and misleading representations tied to a commercial transaction.

**Third**, Renaissance claims that Plaintiffs fail to allege a pecuniary loss, ignoring Plaintiffs' allegations and repeating the incorrect legal standard that Plaintiffs must have engaged in a commercial transaction with Renaissance. *See* Dkt. 44 at 33-34. The FAC alleges pecuniary loss, including the loss of money or property, the unauthorized disclosure and taking of their personal information, diminution of the value of Plaintiffs' private and personally identifiable data and content, and their property right to control the dissemination and use of their personal information and communications. ¶¶ 291-333. Accordingly, Plaintiffs' WDTPA claim should not be dismissed.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Renaissance's motion to dismiss in its entirety. To the extent necessary, however, Plaintiffs request leave to amend the FAC.

Dated: December 4, 2025

Respectfully submitted,

By:  */s/ Julie U. Liddell**
**EDTECH LAW CENTER PLLC**
904 Rio Grande St, Ste. 100
Austin, Texas 78701
(737) 351-5855
julie.liddell@edtech.law

Andrew R. Tate
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(314) 669-3600
atate@peifferwolf.com

Melisa A. Rosadini-Knott
(California Bar No. 316369)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
323-982-4109
mrosadini@peifferwolf.com

Lori G. Feldman*
**GEORGE FELDMAN MCDONALD,**
**PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
 (917) 983-9321
LFeldman@4-Justice.com

36

Karen Dahlberg O'Connell\*
**ALMEIDA LAW GROUP LLC**
157 Columbus Ave, 4th Floor
New York NY 10023
(347) 395-5666
karen@almeidalawgroup.com

\* *pro hac vice* granted

*Counsel for Plaintiffs and the Proposed Classes*

37

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 7,970 words, which complies with the word limit set by court order dated October 6, 2025.

December 4, 2025

*/s/ Julie U. Liddell*
Julie U. Liddell

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
NO. 8:25-CV-01379