COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
BETHANY C. LOBO (248109)
(blobo@cooley.com)
ERIK LAMPMANN-SHAVER (362460)
(elampmannshaver@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

NAOMI HARRALSON MAY (291462)
(nmay@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

STEPHANIE J. SCHUYLER
(Admitted *Pro Hac Vice*)
(sschuyler@cooley.com)
ERIKA P. BRIGANTI ABRAHAM
(Admitted *Pro Hac Vice*)
(ebrigantiabraham@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:  +1 212 479 6000
Facsimile:   +1 212 479 6275

*Attorneys for Defendant*
*RENAISSANCE LEARNING, INC.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION - SANTA ANA

| | |
|---|---|
| M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian AMY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RENAISSANCE LEARNING, INC.,<br><br>Defendant. | Case No. 8:25-cv-01379-FWS-JDE<br><br>**DEFENDANT RENAISSANCE LEARNING, INC.'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:          February 5, 2026<br>Time:         10:00 a.m.<br>Courtroom:  10D<br><br>Pretrial Conference: March 9, 2028<br>Trial Date:          April 4, 2028 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................ 2

    A.    Plaintiffs Fail to State Any Wiretapping Claims ............................. 2

        1.    Renaissance Cannot Intercept Communications with *Itself*, and the Crime-Tort Exception Does Not Apply .............. 2

        2.    Plaintiffs Fail to Plead Third-Party Interception of Communications from Plaintiffs to Renaissance ...................... 3

            a.    Plaintiffs Fail to Plead "In-Transit" Third-party Interception of Plaintiffs' Communications ................... 3

            b.    Plaintiffs' CIPA Aiding and Abetting Theory Fails Because The "Third Parties" Are Service Providers Not Covered by the Statute ............................................ 4

            c.    The Data at Issue Is Not "Confidential Communications" Under CIPA Section 632 .................. 6

    B.    Plaintiffs' "Pen Register" Claim Fails ............................................. 7

        1.    Pleading Deficiencies Compel Dismissal .............................. 7

        2.    Inconsistent Theories of Pen Register Violation ................... 8

    C.    Plaintiffs' CDAFA Claim Fails ..................................................... 11

    D.    Plaintiffs Fail to Plausibly Plead UCL Standing or Any of the Prongs ........................................................................................... 14

    E.    Plaintiffs Fail to Plead Invasion of Privacy ................................... 15

    F.    Plaintiffs Fail to Plead Unjust Enrichment .................................... 17

    G.    Plaintiffs Fail to State a Negligence Claim .................................... 18

    H.    Plaintiffs Fail to Plead a WDTPA Claim ....................................... 20

    I.    The Court Should Dismiss Without Leave to Amend ...................... 22

III.  CONCLUSION ...................................................................................... 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by & Through Turner v. Google*,
737 F. Supp. 3d 869 (N.D. Cal. 2024)............................................................. 6

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012).................................................................. 15

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024)................................................. 3

*Bd. of Ed. v. Sinclair*,
222 N.W.2d 143 (Wis. 1974)....................................................................... 18

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024)......................................................... 13

*Birdsong v. Apple, Inc.*,
590 F. 3d 955 (9th Cir. 2009)...................................................................... 14

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013)...................................................................... 16

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)............................................. 14

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)......................................................... 5

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)......................................................... 14

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......................................................................... 2

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011)..................................................................... 22

*Cherkin v. Powerschool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. 2025)........................................................ 6, 11

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023).......................................................... 5

*Cooper v. Eagle River Mem'l Hosp., Inc.*,
270 F.3d 456 (7th Cir. 2001)...................................................................... 20

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021)......................................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Custom Package Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......................................... 11

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*,
2015 WL 12734783 (C.D. Cal. June 19, 2015) ....................................... 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................... 5

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ......................................... 12

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ..................................... 5, 6

*Dusterhoft v. OneTouchPoint Corp.*,
2024 WL 4263762 (E.D. Wis. Sep. 23, 2024) ................................. 20, 21

*In re Facebook Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020) ................................................................. 9

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .............................................................. 12

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) ........................................... 19, 20

*Giasson v. MRA Mgmt. Ass'n*,
777 F. Supp. 3d 913 (E.D. Wis. 2025) ............................................ 17, 19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................... 4

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................ 15

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..................................... 4, 11, 13

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ......................................... 4

*Hillman v. Columbia Cnty.*,
474 N.W.2d 913 (Wis. 1991) ................................................................ 16

*Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*,
2022 WL 4273475 (E.D. Wis. Sep. 15, 2022) ................................. 20, 21

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................. 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)...................................................5

*Jones v. Dollar Tree Stores, Inc.*,
  2021 WL 6496822 (C.D. Cal., 2021) ....................................................16

*Jones v. Peloton Interactive, Inc.*,
  720 F. Supp. 3d 940 (S.D. Cal. Mar. 12, 2024) ...........................5, 15

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  2025 WL 1745726 (N.D. Cal. June 24, 2025) .................................10

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025)............................................3

*Le v. Kohls Dep't Stores, Inc.*,
  160 F. Supp. 3d 1096 (E.D. Wis. 2016) ..........................................21

*Licea v. Am. Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) .............................................5

*Licea v. Vitacost.com, Inc.*,
  683 F. Supp. 3d 1118 (S.D. Cal. 2023) .............................................5

*Martin v. Sephora USA Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...................................5

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................14

*Mitchell v. Hess*,
  2010 WL 1212080 (E.D. Wis. Mar. 23, 2010)..................................18

*Mitchener v. CuriosityStream, Inc.*,
  2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)...........................8, 9, 10

*Moore v. Centrelake Med. Grp., Inc.*,
  83 Cal. App. 5th 515 (2022)..............................................................15

*Moss v. ResortPass Inc.*,
  2025 WL 3452360 (Cal. Sup. Ct. Oct. 30, 2025)...............................6

*People v. Nakai*,
  183 Cal. App. 4th 499 (2010).............................................................7

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
  51 F.4th 1125 (9th Cir. 2022).............................................................2

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025).............................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

RENAISSANCE'S RESP. TO PLAINTIFFS' OPP.
TO MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379-FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Q.J v. PowerSchool Holdings, LLC*,
  2025 WL 2410472 (N.D. Ill. Aug. 20, 2025)...................................................3, 4

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024)...................................................................3

*Reetz v. Advoc. Aurora Health, Inc.*,
  983 N.W.2d 669 (Wis. Ct. App. 2022)................................................................19

*Rodriguez v. Culligan Int'l Co.*,
  2025 WL 3064113 (S.D. Cal. Nov. 3, 2025).........................................................9

*Roe #1 v. United States*,
  2021 WL 1122441 (E.D. Cal., 2021) ..................................................................16

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  2025 WL 1141168 (C.D. Cal. Feb. 27, 2025).......................................................3

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018)...............................................................13

*Schneider v. Cal. Dep't of Corr.*,
  151 F. 3d 1194 (9th Cir. 1998)..............................................................................8

*Slane v. Emoto*,
  582 F. Supp. 2d 1067 (W.D. Wis. 2008)..............................................................21

*Starr v. Baca*,
  652 F. 3d 1202 (9th Cir. 2011)..............................................................................8

*State v. Talyansky*,
  995 N.W.2d 277 (Wis. Ct. App. 2023).................................................................21

*T&M Farms v. CNH Indus. Am., LLC*,
  488 F. Supp. 3d 756 (E.D. Wis. 2020) ................................................................17

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning
  Eng'rs, Inc.*,
  755 F.3d 832 (7th Cir. 2014)...............................................................................21

*United States v. Olson*,
  856 F. 3d 1216 (9th Cir. 2017)............................................................................12

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................................................5

**Statutes**

Cal. Penal Code § 502(a) ..........................................................................................11

Cal. Penal Code § 502(b)(1) ....................................................................................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

RENAISSANCE'S RESP. TO PLAINTIFFS' OPP.
TO MOTION TO DISMISS COMPLAINT
NO. 8:25-CV-01379-FWS-JDE

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Penal Code § 502(c)(2) ........................................................................ 12

Cal. Penal Code § 502(e)(1) ........................................................................ 11

Cal. Penal Code § 638.50(b) ....................................................................... 10

Wis. Stat. § 893.57 ...................................................................................... 19

Wis. Stat. § 995.50 ...................................................................................... 19

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................ 7

Cooley LLP
Attorneys at Law
San Francisco

vi

Renaissance's Resp. to Plaintiffs' Opp.
to Motion to Dismiss Complaint
No. 8:25-cv-01379-FWS-JDE

## I.    INTRODUCTION

Renaissance's Motion to Dismiss showed that Plaintiffs' First Amended Complaint ("FAC") was an improper attempt to establish as law Plaintiffs' views on how the educational technology ("edtech") sector should obtain consent to process student data—an objective Plaintiffs' center from the first sentence of their Opposition. *See* Opposition ("Opp.") at 10.[1]

The Opposition (like the FAC) states *political* grievances—but does not show that Plaintiffs have *legally* stated a single claim. As before, Plaintiffs' wiretapping claims fail because Renaissance is a party to the communications, and Plaintiffs fail to plausibly allege that *their* data was (1) intercepted in transit (2) by third parties or that (3) it constituted "confidential communications" under CIPA.[2] As to Plaintiffs' pen register claim, the Opposition asserts a new theory untethered to the FAC which the Court cannot consider. Plaintiffs also offer no meaningful response to the deficiencies in their remaining statutory claims under the CDAFA, UCL, and WDTPA.

The Wisconsin common-law claims also fail. The Opposition fails to address—and therefore concedes—Renaissance's argument that Plaintiffs failed to state an intrusion upon seclusion claim. Instead, they improperly recast their claim as one of public disclosure of private facts, which also fails. Plaintiffs' unjust enrichment claim fails because they have not identified any mechanism by which Renaissance monetized their data. Plaintiffs likewise offer scattershot, unavailing arguments in defense of their novel negligence theory, lacking allegations of foreseeability, causation, harm, or any basis to conclude that Congress intended COPPA to be a basis for negligence *per se*.

---

[1] The Opposition's policy argument that FERPA does not "absolve" Renaissance of the duty to obtain parental consent is a legally irrelevant distraction, as Renaissance did not move to dismiss any claim based on FERPA, and the Court need not resolve whether Renaissance is a "school official" under FERPA to dismiss the FAC.

[2] All terms have the same definitions used in the Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

For these reasons, the Court should dismiss the FAC with prejudice.

## II. ARGUMENT[3]

### A. Plaintiffs Fail to State Any Wiretapping Claims

Plaintiffs' wiretapping theories are shifting and unclear. *First*, they appear to challenge *Renaissance's* collection of student data, but each of the three cited wiretapping statutes exempts parties to a communication from liability. Nor does the crime-tort exception save the ECPA and WESCL claims because Plaintiffs fail to allege a separate tortious intent.

*Second*, Plaintiffs contend that Renaissance aided and abetted *third parties'* interception of Plaintiffs' communications. However, that theory also fails under all three statutes because the FAC fails to plead "in transit" interception of Plaintiffs' communications. Plaintiffs' CIPA claims also fail because (1) Renaissance's service providers are not "third parties"; and (2) Plaintiffs do not plead "confidential communications" under Section 632.

#### 1. Renaissance Cannot Intercept Communications with *Itself*, and the Crime-Tort Exception Does Not Apply

Plaintiffs do not dispute that, as a party to its own communications with students, Renaissance is exempt from liability under the referenced wiretapping statutes. Mot. 5; Opp. 13. That is fatal to Plaintiffs' CIPA claim, as Plaintiffs tacitly concede. *Id*. Plaintiffs attempt, but cannot succeed, to salvage only their ECPA and WESCL claims by invoking the crime-tort exception. Opp. 13. First, the exception requires that a party "intercepted the communication for the purpose of a *tortious or criminal act that is independent of the intentional act of recording*." *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010), cited with approval, *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Second, the defendant's "*primary motivation*" or a "determining factor in the defendant's

---

[3] Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted.

actions" must be "to injure plaintiffs tortiously." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025).

Plaintiffs plead neither. The only "tortious intent" they allege is "to tortiously invade [their] privacy" by "disclosing [their data] to third parties for commercial gain." Opp. 14. But recording "for Defendant's commercial advantage" is insufficient. *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *3 (C.D. Cal. Apr. 11, 2024); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (holding collection of data for defendant's own "economic benefit" insufficient to invoke crime-tort exception). Certainly, Plaintiffs fail to allege that Renaissance acted with the ***primary purpose*** of committing a tort beyond the challenged collection.

Plaintiffs' sole case cited in support of the crime-tort exception, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024), is inapposite. It concerned independent HIPAA violations, which courts treat differently. *See Lakes*, 777 F. Supp. 3d at 1057-58 (distinguishing *R.C. v. Walgreens* and declining to apply the crime-tort exception in the context of party's installation of Meta Pixel to collect data, as "the purpose of the interception was not to perpetuate torts on millions of Internet users, but to make money").

All three wiretapping claims must be dismissed to the extent they are based on Renaissance's allegedly "intercepting" its own communications.

### 2. Plaintiffs Fail to Plead Third-Party Interception of Communications from Plaintiffs to Renaissance

#### a. Plaintiffs Fail to Plead "In-Transit" Third-party Interception of Plaintiffs' Communications

Plaintiffs fail to allege that Renaissance transmitted ***their children's*** communications to third parties while they were ***in transit***, defeating all three claims. Mot. 6. Plaintiffs cite only one authority in response: *Q.J v. PowerSchool Holdings, LLC*, 2025 WL 2410472, at *1, *8 (N.D. Ill. Aug. 20, 2025). But *PowerSchool* (a non-binding, unpublished, out-of-Circuit decision) did not even ***address*** whether

plaintiffs had alleged "in-transit" interceptions. *Id. Hernandez-Silva v. Instructure, Inc.,* on the other hand, was decided in this District and directly addressed this question, holding that plaintiffs represented by the same counsel failed to state a wiretapping claim where (as here) they did not allege "how the technology allows real-time interception in general or how it was used to intercept Plaintiffs' data in particular." 2025 WL 2233210, *5 (C.D. Cal. Aug. 4, 2025).[4]

Here, as in *Hernandez-Silva*, Plaintiffs do not allege that Renaissance transmitted ***their data*** in real time to third parties. *See* Mot. 6. They also fail to address Renaissance's cited case law dismissing wiretapping claims based on substantively identical allegations that code embedded in a party's website transmitted data in real time. Mot. 6 (citing *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023). Because Plaintiffs fail to plead that "confidential communications by Plaintiffs' children were intercepted or subject to eavesdropping by a third party," *Hernandez-Silva*, 2025 WL 2233210, at *5, their wiretapping claims should be dismissed.

### b.    Plaintiffs' CIPA Aiding and Abetting Theory Fails Because The "Third Parties" Are Service Providers Not Covered by the Statute

Plaintiffs fail to allege disclosure to third parties under CIPA for the additional reason that the only "third parties" at issue are vendors providing services to Renaissance. *See* FAC ¶ 136. As explained in the Motion, under the "extension" test, a party is not liable for aiding and abetting a vendor who is a mere "***extension*** of" the party, allowing it "to record and analyze its own data in aid of [its] business," unless plaintiffs allege the vendor actually used the data for its own purposes. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). *See* Mot. 7. Although the

---

[4] To the extent Plaintiffs claim that Renaissance intercepted their communications with third-party websites (rather than the opposite), *e.g.*, FAC ¶¶ 371, 375, the FAC contains no supporting factual allegations.

FAC concedes that the third parties at issue are Renaissance's service providers (FAC ¶ 136), Plaintiffs protest that the Court should apply the "capability" test, which would permit aiding and abetting liability if the vendor "***is capable*** of using intercepted data for the third party's own benefit." Opp. 15 (emphasis in original). Plaintiffs are incorrect that courts have "broadly rejected" the "extension" test.[5] *Id.* Although courts are split as they endeavor to apply what Judge Chhabria recently characterized as "CIPA's already-obtuse language to new technologies," *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025), the rule of lenity compels the narrower interpretation of CIPA's reach, *id.* at *6 (warning against interpreting "too broadly" CIPA, which "could affect the extent to which . . . companies are subject to criminal liability").

Even under the capability test, Plaintiffs' allegations plainly fall short: First, as explained *supra*, they fail to allege that their data was actually transmitted in real time to a third party. Second, to the extent they plead service providers' capability to use the data, it is pled in conclusory fashion, and upon information and belief. *See, e.g.*, FAC ¶¶ 181 (alleging "[u]pon information and belief" that Mixpanel can use data for its own purposes), 211 (same for Google). Factual allegations based on "information and belief" that parrot the elements of a claim are insufficient. *Dallas*

---

[5] *See, e.g.*, *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1067-68 (C.D. Cal. 2023) (dismissing CIPA claim where plaintiff did not allege "facts to suggest that [third party] intercepted and used the data itself"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (dismissing CIPA aiding-and-abetting claim, where there "are no facts here to suggest that [third party] intercepted and used the data itself"). *Accord Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023); *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123-24 (S.D. Cal. 2023); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782-83 (C.D. Cal. 2023); *Martin v. Sephora USA Inc.*, 2023 WL 2717636, at *12-13 (E.D. Cal. Mar. 30, 2023), report and recommendation adopted, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 946 (S.D. Cal. Mar. 12, 2024); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843-44 (N.D. Cal. 2024); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

*& Lashmi, Inc. v. 7-Eleven, Inc*., 2015 WL 12734783, at \*2 (C.D. Cal. June 19, 2015). Plaintiffs thus do not plead a plausible aiding-and-abetting claim under Section 631(a).

### c.    The Data at Issue Is Not "Confidential Communications" Under CIPA Section 632

Finally, Plaintiffs' CIPA Section 632 claim fails because they do not adequately plead that the data allegedly intercepted by third parties constituted "confidential communications." Mot. 8. Each of Plaintiffs' three arguments to the contrary is unavailing.

***First***, Plaintiffs assert that some courts have applied Section 632 to Internet communications. Opp. 17. But their cited cases are outliers related to high-sensitivity data (health and credit card information) not at issue in this case about the collection of routine classroom information. *Id*. Plaintiffs fail to justify an exception to the rule that Section 632 does not apply in the Internet context. *See* Mot. 8-9; *Moss v. ResortPass Inc.*, 2025 WL 3452360, at \*1-2 (Cal. Sup. Ct. Oct. 30, 2025) (citing *Eating Recovery Ctr*, 2025 WL 2971090, and holding that "[t]rying to apply [Section 632], originally enacted long before the internet activities described in the FAC were invented, is nothing more than attempting to force a square peg into a round hole"). Plaintiffs' reliance on *A.B. by & Through Turner v. Google*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024), *see* Opp. 17, is similarly misplaced, as there was no CIPA claim at issue.

***Second***, Plaintiffs disagree with Renaissance's argument that students have a reduced legal expectation of privacy in school, but their only supporting citation, *Cherkin*, did not involve a Section 632 claim and thus did not construe CIPA's "confidential communications" element. *Cherkin v. Powerschool Holdings, Inc.*, 2025 WL 844378, at \*5 (N.D. Cal. 2025).

***Third***, Plaintiffs argue generally that Internet users have a reasonable expectation of privacy in their text-based communications, Opp. 17-18, but this does

not transform their communications with Renaissance into "confidential communications" under CIPA, particularly where Plaintiffs themselves allege that Renaissance publicly discloses its use of third-party service providers. FAC ¶¶ 108-151. *See People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (dismissing Section 632 claim based on Yahoo! Chat messages because (1) publicly-posted Yahoo! policies disclosed that users' chats could be shared and (2) "[c]omputers that are connected to the internet are capable of instantaneously sending writings and photographs to thousands of people"). Here too, students had no reasonable expectation of privacy in the information they disclosed on school-issued devices—particularly where the FAC concedes their awareness of Renaissance's disclosures that it could share such information. Section 632 does not apply.

### B.    Plaintiffs' "Pen Register" Claim Fails

Plaintiffs claim that Renaissance's products are a pen register prohibited under CIPA. *See* FAC ¶¶ 394-407. Their Opposition asserts that the Motion does not account for the scope of data allegedly collected by Renaissance. *See* Opp. 19. Plaintiffs' arguments fail.

### 1.    Pleading Deficiencies Compel Dismissal

Plaintiffs assert the FAC alleges Renaissance collected both their IP address information and a range of other "Device Metadata." *See* Opp. 19; *see also* FAC ¶ 399. Plaintiffs' Opposition appears to argue that "Device Metadata" refers to a separate, enumerated list of data elements found 50 pages earlier in the FAC. *See* Opp. 19 n.7 (citing FAC ¶¶ 86-87, 90).

This is not a fair reading of Plaintiffs' pleading. As Renaissance's Motion explained, Plaintiffs used the phrase "Device Metadata" **once** in their 93-page FAC—to explain the basis for their pen register claim. The FAC did not link this phrase to any other allegations, let alone cross-reference the lists of data elements on which Plaintiffs now rely. *See* FAC ¶¶ 81, 86. Federal Rule of Civil Procedure 8 requires more—specifically, "sufficient allegations of underlying facts to give fair

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

notice and to enable [defendant] to defend itself effectively." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011). The FAC does not meet this standard, warranting dismissal of Plaintiffs' pen register claim.

### 2. Inconsistent Theories of Pen Register Violation

Even if Rule 8 did not compel dismissal (it does), Plaintiffs' two inconsistent, meritless theories still fail to state a pen register claim. ***First***, the FAC alleges Renaissance's products are pen registers because they collect user IP addresses and metadata. *See, e.g.*, FAC ¶ 399. ***Second***, Plaintiffs' Opposition asserts Renaissance collected substantive data from users which render Renaissance's products pen registers. *See* Opp. 19. Both theories fail to meet the elements of a pen register claim, and the second is not even adequately alleged in the FAC, so the Court cannot properly consider it.[6] Renaissance addresses it here in an abundance of caution.

Put plainly, Plaintiffs' two theories of pen register violation cannot co-exist and necessarily fail. On one hand, "If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff[s'] right to privacy is not invaded because [they] ha[ve] no expectation of privacy as to that type of data (e.g., [their] IP address or general geographic location)." *See Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing as to substantively identical CIPA "trap and trace" claim). On the other hand, "[i]f Defendant instead collects content information from communication between the parties," like the additional data elements described in Plaintiffs' Opposition, then Renaissance's products are not pen register devices and "[Section] 638.50 does not apply." *Id.*

IP Address & Metadata. As above, the FAC pleads that Renaissance's products are pen registers because they collect IP addresses and metadata from users.

---

[6] *See Schneider v. Cal. Dep't of Corr.*, 151 F. 3d 1194, 1197 n.1 (9th Cir. 1998) ("[C]ourt[s] ***may not*** look beyond the complaint" to plaintiff's opposition when assessing the adequacy of allegations on a dismissal motion (emphasis in original)).

However, Plaintiffs' lack of cognizable privacy interest in such information defeats standing.

As to Plaintiffs' allegations about collecting users' IP addresses and metadata, FAC ¶ 399, this data—even including "the connections between them"—is not the type of information over which web users have a cognizable privacy interest sufficient to confer standing.[7] *See Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no privacy interest in data "designed to be exchanged to facilitate communication," *i.e.*, username); *Mitchener*, 2025 WL 2272413, at *5 (no privacy interest in communications "metadata"); Mot. 10-11 (collecting cases finding no privacy interest in IP address information). Plaintiffs lack Article III standing to pursue a pen register claim based on the alleged collection of this information since its purported collection and disclosure would not have been actionable at common law as a privacy tort. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (affirming dismissal on Article III standing grounds where plaintiff did not explain how data collection caused a harm similar to those common law privacy torts were designed to remedy).[8]

---

[7] Plaintiffs argue the Ninth Circuit recognizes "an expectation of privacy in IP addresses and cookie identifiers" used to create "highly personalized profiles" about users, relying principally on *In re Facebook Inc. Internet Tracking Litigation* for this proposition. *See* Opp. at 19. But that case concerned the collection of general Internet browsing information—even when plaintiffs were signed out of Facebook—"no matter how sensitive" the information collected happened to be. *See In re Facebook Internet Tracking Litig.*, 956 F. 3d 589, 598-99 (9th Cir. 2020). By contrast, the data collection alleged here occurred only while Plaintiffs were using Renaissance's products and was not unbounded.

[8] Plaintiffs attempt to distinguish *Popa* on the grounds that Renaissance in fact collects sensitive information about users, like their "academic information" and their "social-behavioral characteristics," which could comprise a privacy tort. *See* Opp. 21. But if the Court credits these allegations, then Plaintiffs' pen register claim fails because it alleges collection of content information, as described *infra*.

Thus, Plaintiffs' IP address and metadata theory of pen register violation fails for lack of standing.

Contents of Communications. If, however, the Court construes Plaintiffs' pen register claim as described in their Opposition (but not the FAC), Plaintiffs' claim still fails because CIPA's pen register provisions do not apply to the challenged data.

CIPA Section 638.50 defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but *not the contents of a communication*." Cal. Penal Code § 638.50(b). In other words, pen register devices collect information that *identifies* a communication, not its *contents*.

To circumvent the Article III issue, Plaintiffs' Opposition construes, for the first time, unrelated allegations in the FAC as supporting their pen register claim. *See* Opp. 19-21. Among these are allegations that Renaissance collects data including "[k]eywords," "general browsing information," the "amount of time a student spends on particular pages," and "how often a student accesses certain features," FAC ¶ 86, as well as "grade level, attendance, [and] lunch balance." *Id.* ¶ 81. Such information about user behavior cannot be fairly characterized as non-content information intended only to identify the recipients of a communication. And "[a]ny [user] 'fingerprint'" derived from such information which "reveals biographical information" about Plaintiffs is similarly "the content" of Plaintiffs' communications and cannot form the basis of a pen register claim. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (concluding similarly as to a substantively identical CIPA "trap and trace" claim); *Mitchener*, 2025 WL 2272413 at *5 (same).

Thus, Plaintiffs' alternative theory of pen register violation fails because it asserts harm outside the scope of the statute.

### C.    Plaintiffs' CDAFA Claim Fails

The California legislature enacted the CDAFA as an "anti-hacking statute." *Custom Package Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). Yet, Plaintiffs' theory of CDAFA violation is inconsistent with the caselaw and untethered from this legislative purpose.

<u>No Statutory Standing.</u> Plaintiffs lack statutory standing to bring their CDAFA claim. CDAFA claims require a showing of "damage or loss," Cal. Penal Code § 502(e)(1), which the "majority of courts" interpret to mean "some damage to the computer system, network, program, or data contained on [plaintiff's] computer[.]" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023). The FAC pleads no such damage. *See* Mot. 15. This deficiency reveals the mismatch between the "computer crime[s]" the statute was meant to deter, Cal. Penal Code § 502(a), and the FAC, requiring dismissal.

Plaintiffs' three counter arguments are unavailing. ***First***, Plaintiffs cite *Cherkin* to argue that "the plain language of CDAFA's 'damage or loss' requirement contains no such limitation." Opp. 23. Plaintiffs do not articulate what limitation is supposedly at issue, but if they invoke *Cherkin* to argue they have CDAFA standing because their intangible privacy interests were invaded through the alleged misuse of their personal information, this represents the minority view. This Court should not endorse that view because it incorrectly assumes "that a loss of control over personal data" is a type of "injury . . . contemplated by the [statute]," which in fact "contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting*, 709 F. Supp. 3d at 1021.

***Second***, Plaintiffs contend they have standing because they did not "receive[] a share of the unjust profits generated from their data." Opp. 23. This argument is unavailing and conclusory. For instance, Plaintiffs do not (and cannot) allege that Renaissance sold their information to data brokers or used it to advertise.

*Third*, Plaintiffs assert they "plead economic loss" by alleging (i) Renaissance did not pay them for their data, (ii) Renaissance caused their data to diminish in value, or (iii) both. Opp. 23. Plaintiffs' first theory (of nonpayment) overlaps with their prior argument and fails for the same reason. And Plaintiffs' diminution of value theory is not cognizable because it is based on a harm CDAFA does not remedy. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (no CDAFA standing based on "loss of the value of [plaintiffs'] data"); *see also Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024) (where, as here, "plaintiffs allege that their privacy has been invaded because of the disclosure of" particularly sensitive information, "plaintiffs cannot base their CDAFA damages on a theory that they lost a benefit to sell that data themselves").

<u>Failure to Plead Required Elements.</u> Even if Plaintiffs had standing (they do not), they would still have failed to plead a claim under CDAFA section 502(c)(2), which proscribes "[k]nowingly access[ing] and without permission tak[ing], copy[ing], or mak[ing] use of any data from a computer, computer system, or computer network[.]"

To begin, Plaintiffs are mistaken that they "need *only* show that [defendants'] 'access' was knowing" to state their claim. Opp. 24. This reading ignores the rest of the statutory text and flouts Supreme Court and Ninth Circuit precedent counseling that "knowingly" in section 502(c)(2) also modifies "without permission." *Cf. United States v. Olson*, 856 F. 3d 1216, 1218 (9th Cir. 2017) ("Courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element") (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009)); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069-70 (9th Cir. 2016) (endorsing this view by finding a CDAFA violation where defendant accessed plaintiff's computers after receiving a cease-and-desist letter because only then did defendant "kn[o]w that it no longer had permission" to do so).

Plaintiffs do not (and cannot) refute this authority. Instead, they point to two federal district court cases for the proposition that "knowingly" modifies only "accessing" and not "without permission." *See* Opp. 24. But these cases conclude that "knowing access" is required to state a claim under section 502(c)(2) ***without*** addressing whether and how "knowingly" modifies "without permission." *See Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024), *appeal docketed* No. 25-2408 (9th Cir. Apr. 15, 2025); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1086-87 (N.D. Cal. 2018).

In sum, Plaintiffs do not (and cannot) plead that Renaissance acted "knowingly" "without permission" in processing their data. This is unsurprising. Any attempt to allege this required element would fail because of Plaintiffs' admission that Renaissance "relie[d] on the consent of school personnel" in processing student data. FAC ¶ 14.

Plaintiffs finally argue that Renaissance improperly suggests overcoming technical barriers is required to show a CDAFA violation. *See* Opp. 24-25. This misstates Renaissance's argument—which is that Plaintiffs have not adequately alleged "access" under the statute because they do not claim "Renaissance collected data from or accessed parts of their children's computers ***outside*** of Renaissance's products." Mot. 16 (emphasis in original); *see, e.g.*, *Heiting*, 709 F. Supp. 3d at 1020 (dismissing CDAFA claim for failure to plead "access" because plaintiff did not allege "that [d]efendant implanted anything on her computer" or otherwise "make clear how any 'access' took place"); *see also* Cal. Penal Code § 502(b)(1) (defining "[a]ccess" as "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, ***the logical, arithmetical, or memory function resources of*** a computer, computer system, or computer network").

### D. Plaintiffs Fail to Plausibly Plead UCL Standing or Any of the Prongs

Plaintiffs' Opposition scarcely defends their UCL claim and does not rebut Renaissance's arguments that they lack statutory standing and fail to state a claim.[9]

No statutory standing. Plaintiffs' Opposition argues they have UCL standing because of alleged "unauthorized disclosure and taking of their [children's] personal information" and resulting "diminution" in its value. FAC ¶ 428. Not so. Neither theory satisfies the UCL's statutory standing requirement that Plaintiffs have "lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F. 3d 955, 959 (9th Cir. 2009).

Plaintiffs acknowledge that myriad courts have rejected their "unauthorized taking" theory because "disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing[.]" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021); Opp. 25; *see also* Mot. 17 (collecting cases). And Plaintiffs' cases rely on two distinguishable decisions by the same judge, *Calhoun* and *Brown*. *Calhoun*'s UCL standing analysis relied exclusively on data breach cases which bear no resemblance to the allegations in the FAC. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021). *Brown* found statutory standing existed where plaintiffs presented detailed factual allegations regarding the commercial value of their personal information, including that defendant Google itself had "previously . . . paid individuals for browsing histories." *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021). Allegations like these which facilitate the quantification of data's value are absent here.

Nor do Plaintiffs credibly defend their "diminution of value" theory. They do not respond to Renaissance's cited authority holding that plaintiffs lack UCL

---

[9] Plaintiffs ignore Renaissance's argument that the FAC fails to plead a fraudulent prong claim, Mot. 18 n.8, waiving that argument.

standing where, as here, Plaintiffs do not "allege they ever attempted or intended to participate in [an existing] market [for their personal information], or otherwise to derive economic value from [it]." *See* Mot. 17-18; *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022). The sole case they do cite, *Jones*, found **no** UCL standing and supports Defendant's position. *See* Opp. 25. There, the Court dismissed plaintiff's UCL claim for lack of statutory standing where, as here, she failed to "demonstrate[] that her data [was] economically profitable to her," such as by alleging participation in an existing market for her information. *Jones*, 720 F. Supp. 3d at 950. Plaintiffs' final argument contends, without caselaw support, that there is no difference between "diminishing the value" of personal information and "preventing the development of a legitimate student-data market." Opp. 26. This is incorrect. The proper inquiry, as set out in *Moore*, is whether Plaintiffs attempted to "derive economic value from their [personally identifiable information]" through an existing market. *See* 83 Cal. App. 5th at 538-39. As above, Plaintiffs' allegations do not (and cannot) satisfy this standard.

      <u>No claim under any UCL prong.</u> Even if Plaintiffs could establish statutory standing (they cannot), their UCL claim would fail because they do not plausibly plead violation of the unlawful or unfair prongs. *See* Mot. 18. The many deficiencies with Plaintiffs' statutory claims doom any derivative UCL unlawful prong claim, *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012), and Plaintiffs cannot state an unlawful prong claim based on their common law causes of action—which they effectively concede in their Opposition. *See* Opp. 26. Meanwhile, Plaintiffs' unfair prong claim "cannot survive" where, as here, "the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017).

### E.    Plaintiffs Fail to Plead Invasion of Privacy

      The Opposition fails to address—and therefore concedes—Plaintiffs' failure to plead their intrusion upon seclusion claim and instead attempts (and fails) to amend

their claim in the Opposition to one of public disclosure of private facts.

Plaintiffs concede by failing to address that their intrusion upon seclusion claim must be dismissed for failure to allege intrusion of a physical "place." *See* Mot. 19; Opp. 26; *Jones v. Dollar Tree Stores, Inc.*, 2021 WL 6496822, at *7 (C.D. Cal., 2021) (stating failure to address an argument raised in dismissal motion waives that argument).

In apparent recognition that their intrusion upon seclusion claim is fatally flawed, Plaintiffs' Opposition improperly proposes a ***brand-new claim*** for public disclosure of private facts under Wis. Stat. § 995.50(2)(am)(3). *Compare* FAC ¶¶ 433-445 (pleading only "Intrusion Upon Seclusion") *with* Opp. 26-28. In fact, the FAC only makes passing mention of the concept of public disclosure of private facts when alleging a violation of the Wisconsin wiretapping statute, not as a standalone claim. FAC ¶ 492 (alleging wiretapping through violation of "multiple laws, including, but not limited to, invasion of privacy by intrusion upon seclusion and by public disclosure of private facts (codified at Wis. Stat. § 995.50)"). But Plaintiffs cannot state new claims in an opposition brief. *Roe #1 v. United States,* 2021 WL 1122441, at *3 (E.D. Cal., 2021) ("Of course, plaintiffs may not amend their complaint by way of their opposition to the pending motion to dismiss"). The Court should not entertain this improper amendment and should dismiss Plaintiffs' invasion of privacy claim for the reasons stated in the Motion.

Even if the Court were to examine this new claim, it should be dismissed because the FAC does not allege (1) Renaissance publicized Plaintiffs' private information "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," *Hillman v. Columbia Cnty.*, 474 N.W.2d 913, 920 (Wis. 1991); or (2) that the ubiquitous practice of sharing user data with third-party service providers can be understood to defy "social convention and expectation[]" so as to be "highly offensive to a reasonable person[,]" *Bogie v. Rosenberg*, 705 F.3d 603, 612 (7th Cir. 2013) (affirming

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

dismissal of invasion of privacy claim for failure to allege "highly offensive" intrusion), where the FAC concedes Renaissance acted with consent from schools, *see* FAC ¶ 14, and that Plaintiffs were on notice, s*ee* FAC ¶¶ 116, 137, 147.

### F.   Plaintiffs Fail to Plead Unjust Enrichment

Plaintiffs do not rebut Renaissance's arguments why the FAC does not state a claim for unjust enrichment. ***First***, Renaissance explained that Plaintiffs fail to allege it tangibly benefits from students' disclosure of personal information through its products. Mot. 20 (citing *Giasson v. MRA Mgmt. Ass'n*, 777 F. Supp. 3d 913, 940-41 (E.D. Wis. 2025)). The *Gaisson* court found that plaintiffs' allegations that "Defendant used [their] PII/PHI to facilitate its business[,]" was too vague to plead the tangible benefit element of an unjust enrichment claim. 777 F. Supp. at 939. Plaintiffs' refrain that Renaissance benefits from "monetizing" student data because that data is its "core business model"—without identifying (because it cannot) any mechanism of monetization—goes no farther than the pleading in *Giasson*. *See* Opp. 29. Thus, the Opposition fails to demonstrate that Renaissance obtained a tangible benefit as required for unjust enrichment.

***Second***, Plaintiffs fail to respond to Renaissance's argument that they have no intellectual property right in the disputed data, effectively conceding that they cannot plead an unjust enrichment claim under Wisconsin law. *See* Mot. 20. Even if student data were somehow "unwillingly" provided, Opp. 29, it still would not support an unjust enrichment claim where Plaintiffs have no property right at stake.

***Third***, Plaintiffs do not (and cannot) plead that their children provided information to Renaissance while receiving nothing in return—as required to state an unjust enrichment claim. *See T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 769 (E.D. Wis. 2020). Instead, the FAC plainly alleges that Plaintiffs' children received the benefit of using Renaissance's educational products. *See* Mot. 21. Thus, Plaintiffs are limited only to their available legal remedies. *See T&M Farms*, 488 F. Supp. 3d at 769 ("It is not unjust to limit disappointed product purchasers to their

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

legal remedies."). Plaintiffs contend (without supporting authority) that students' constitutional right to a public-school education means that they do not receive benefit from educational products their schools provide. *See* Opp. 30. However, Plaintiffs' own authority illustrates that right does extend so far. *See Bd. of Ed. v. Sinclair*, 222 N.W.2d 143, 145 (Wis. 1974) (concluding that some educational tools fall outside the "free" public education provision of the Wisconsin constitution). The FAC's allegations demonstrate that Renaissance's products are optional instructional tools which benefit Plaintiffs' children—defeating Plaintiffs' unjust enrichment claim.

### G.    Plaintiffs Fail to State a Negligence Claim

Plaintiffs' Opposition does not meaningfully refute Renaissance's showing that Plaintiffs have not stated a classic negligence or a negligence *per se* claim.

Classic Negligence. Plaintiffs' classic negligence theory fails because there is (1) no foreseeable harm, (2) a public policy against imposing liability here, (3) intervening causation, and (4) no damages. Mot. 21-23. ***First***, Plaintiffs misconstrue Renaissance's argument regarding foreseeability, arguing that "Wisconsin law does not require foreseeability of a lawsuit." Opp. 31. But Renaissance's argument is not that Plaintiffs' ***lawsuit*** was unforeseeable. Rather, the Motion argues when a rule that exists to prevent harm—here, longstanding FTC guidance—is followed, risk of ***harm*** is not reasonably foreseeable. *See Mitchell v. Hess*, 2010 WL 1212080, at *5 (E.D. Wis. Mar. 23, 2010).

***Second***, Plaintiffs fail to rebut Renaissance's argument that allowing their claim to proceed "would open up the possibility that no sensible or just stopping point exists." *See* Mot. 22 (citing *Pelnar v. Rosen Sys., Inc.*, 964 F. Supp. 1277, 1284 (E.D. Wis. 1997). Despite Plaintiffs' insistence to the contrary, Opp. 31-32, the policy ideals articulated in *Pelnar* are equally applicable to Plaintiffs' negligence claim against Renaissance. The FAC itself, ¶¶ 46, 240, underscores that their requested relief would disrupt the edtech industry and create immediate and lasting impacts on

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

the education system—precisely the limitless liability Wisconsin law seeks to avoid.

**Third**, the Opposition contends that there is no intervening causation because Plaintiffs complain of **Renaissance's** collection of data, not downstream misusers of the data. *See* Opp. 32. But Plaintiffs do not (and cannot) allege any actionable harm from Renaissance's receipt of data they voluntarily input into its products. The supposed harm, then, depends on the intervening actions of putative third parties, severing any causal link between Renaissance's supposed negligence and Plaintiffs' alleged damages.

**Fourth**, unable to substantiate any legitimate negligence damages, Plaintiffs instead muddle state law claims, distort the pleading standard, and fabricate an unfounded basis for recovery. To state a negligence claim under Wisconsin law, Plaintiffs must allege a "harm that has already occurred or is 'reasonably certain' to occur in the future." *Reetz v. Advoc. Aurora Health, Inc.*, 983 N.W.2d 669, 677 (Wis. Ct. App. 2022). Plaintiffs argue they plead "harms" of "privacy violations, diminution of the value of their personal information, and forced participation in the data market," Opp. 33, but those are not cognizable negligence damages under Wisconsin law.

In support of their claim for "privacy violations" as negligence damages, Plaintiffs conflate state law torts, citing only the statute for the **intentional** tort of invasion of privacy. *See* Wis. Stat. § 995.50; Wis. Stat. § 893.57 (categorizing invasion of privacy as an intentional tort); *see also Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 796-67 (W.D. Wis. 2019) (dismissing invasion of privacy claim based on alleged negligent or reckless disclosures). A separate intentional tort is not a category of negligence damages.

Wisconsin law also forecloses Plaintiffs' baseless diminution of value theory. *See Giasson*, 777 F. Supp. 3d at 929 (diminution not cognizable because plaintiff did not explain how dark web exposure reduced her data's value or that she intended to sell it). Here too, Plaintiffs fail to allege how their data's value was diminished, or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

how they were excluded from a data market. Mot. 22. Without a different non-speculative injury, Plaintiffs' allegations fall short.

Plaintiffs' reliance on *Fox*—which they cite out of context to assert that pleading negligence requires only an injury sufficient for Article III standing—is unavailing. *See* Opp. 32-33. There, the court found the plaintiff had indeed alleged "***measurable, pecuniary damages*** that they suffered as a result of the data breaches." *Fox*, 399 F. Supp. 3d at 795. The same cannot be said for Plaintiffs.

Finally, contrary to Plaintiffs' assertion, Opp. 33, Wisconsin law does not permit recovery for unjust enrichment on a negligence claim, and the only authority Plaintiffs cite for their proposition is the invasion of privacy statute, which does not apply. *See id.* (citing Wis. Stat. § 995.50(4)). Ultimately, Plaintiffs' alleged harms do not meet the standard to state a claim for negligence damages.

Negligence Per Se. Plaintiffs offer no meaningful response on negligence *per se*. Although they argue that COPPA can provide a basis for recovery despite its lack of a private right of action, Plaintiffs present supporting authority. *See* Opp. 33. Neither does *Dusterhoft* aid Plaintiffs, as that court never resolved whether HIPAA violations could substantiate a claim for negligence *per se*. *See Dusterhoft v. OneTouchPoint Corp.*, 2024 WL 4263762, at *12 (E.D. Wis. Sep. 23, 2024) (finding that neither party had adequately briefed this issue). The Opposition also ignores Renaissance's argument that COPPA is a general regulatory statute, which cannot support negligence *per se* under Wisconsin law. *See Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 460 (7th Cir. 2001).

## H.    Plaintiffs Fail to Plead a WDTPA Claim

Plaintiffs' Opposition does nothing to save their WDTPA claim, requiring dismissal. *See* Mot. 24-25. ***First***, Plaintiffs fail to address authority limiting the WDTPA to Wisconsin residents. *See* Opp. 34 (failing to address *Hydraulics International, Inc. v. Amalga Composites, Inc.*, 2022 WL 4273475, at *10 (E.D. Wis. Sep. 15, 2022)). Finding the statute's relevant language ambiguous, the *Hydraulics*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

court closely examined its legislative purpose: to "protect[] its own residents and not with subjecting its citizens and businesses to liability for the sake of protecting residents of other states." *Id.* at *8. To read it otherwise, the court stated, "would dramatically expand the scope of the statute beyond what courts have said is its primary purpose—protecting Wisconsin consumers." *Id*; *see also id.* at 9 (explicitly rejecting the contrary finding in *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1115 (E.D. Wis. 2016), cited by Plaintiffs). The only other case Plaintiffs cite is distinguishable from *Hydraulics*, where, as here, ***only out-of-state plaintiffs*** brought suit against an in-state business. *Cf. State v. Talyansky*, 995 N.W.2d 277, 283 (Wis. Ct. App. 2023) (reversing ruling that prohibited state from introducing evidence regarding out-of-state (as well as in-state) consumers).

**Second**, Plaintiffs argue the WDTPA does not require them to have entered into a commercial transaction, yet the cases they cite all involve one. *See* Opp. 34 (citing *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008); *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014)). The case law is clear that "section 100.18 applies by its terms to *commercial transactions.*" *Thermal Design*, 755 F.3d at 838 (emphasis in original).

**Third**, the claim must be dismissed because Plaintiffs fail to plead they relied on Renaissance's statements. A WDTPA claim requires that "defendants made the representation with intent to defraud and to ***induce plaintiff** to act* upon it; and . . . **plaintiff** believed the statement to be true and ***relied on it*** to his detriment." *Slane*, 582 F. Supp. 2d at 1079. Plaintiffs do not allege that ***they*** (as opposed to schools) relied on Renaissance's statements. FAC ¶ 513 (alleging only that "Plaintiffs' . . . school districts" relied on Renaissance's representations in purchasing products). This failure to plead a causal link between Renaissance's alleged misrepresentations and any pecuniary loss to Plaintiffs is fatal to their claim. *See Dusterhoft*, 2024 WL 4263762, at *16.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE

1    ***Finally***, Plaintiffs have not alleged a pecuniary loss from Renaissance's

2    alleged conduct. *See supra* § II.C.

3    **I.      The Court Should Dismiss Without Leave to Amend**

4        Dismissal should be with prejudice, as Plaintiffs had two opportunities to plead

5    their claims, which remain deficient.  *See Cervantes v. Countrywide Home Loans,*

6    *Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) (affirming dismissal without leave to amend

7    where "none of the new allegations cure[d] . . . deficiencies").

8    **III.  CONCLUSION**

9        For the foregoing reasons, the Court should dismiss the FAC with prejudice.

10

11   Dated: December 22, 2025                COOLEY LLP

12
                                             By:    */s/ Matthew D. Brown*
13                                                  Matthew D. Brown

14                                           *Attorneys for Defendant*
                                             *RENAISSANCE LEARNING, INC.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

**RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE**

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

Pursuant to Local Rule 11-6.2, I hereby certify the foregoing Reply in Further Support of Defendant's Motion to Dismiss First Amended Complaint, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and text of this certification, comprises 6,985 words, in compliance with Local Civil Rule 11-6.2.


Dated: December 22, 2025                    COOLEY LLP

                                            By:    */s/ Matthew D. Brown*
                                                   Matthew D. Brown

                                            *Attorneys for Defendant*
                                            *RENAISSANCE LEARNING, INC.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

RENAISSANCE'S REPLY ISO MOTION TO
DISMISS FAC
8:25-CV-01379-FWS-JDE