UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [44]**

In this putative class action, Plaintiffs Minor Child 1 and Minor Child 2, by and through their legal guardian Nicole Reisberg, and Minor Child 3 and Minor Child 4, by and through their legal guardian Amy Warren, bring claims against Defendant Renaissance Learning Inc. ("Renaissance") related to alleged invasions of privacy on Renaissance's software platforms used in schools. (*See generally* Dkt. 30 (First Amended Complaint, "FAC").) Before the court is Renaissance's Motion to Dismiss Plaintiffs' First Amended Complaint. (Dkt. 44 ("Motion" or "Mot.").) Plaintiffs oppose the Motion. (Dkt. 52 ("Opposition" or "Opp.").) Renaissance filed a reply in support of the Motion. (Dkt. 55 ("Reply").) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the **hearing** set for **March 5, 2026**, (*see* Dkt. 57) is **VACATED** and **OFF CALENDAR**. Based on the record, as applied to the relevant law, the Motion is **GRANTED**.

I.   **Background**

Plaintiffs' 93-page FAC alleges facts including the following. Renaissance "makes digital products that students in kindergarten through twelfth grade ('K–12') use for school" that "Plaintiffs were required to use . . . at school." (FAC ¶¶ 2, 20; *see id.* ¶¶ 25-26, 28-29, 39, 49-51, 61-62, 68-69, 77-78, 87, 92; *see also id.* ¶ 118 (listing products).) "Through these

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

Products, Renaissance creates and extracts personal information from K–12 students," which it uses "for commercial purposes, including developing, marketing, and delivering its own products," including "artificial intelligence technologies," and "also allows numerous third parties to access," including "schools and educators," law enforcement and legal proceedings, investors and affiliates, and service providers and vendors. (*Id.* ¶¶ 5-6; *see also id.* ¶¶ 32-33, 46, 108-112, 114-116, 120, 123, 125-37, 141.) "Renaissance also purports to reserve an unlimited license to use student data, which includes Plaintiffs' personal information, for its own benefit without compensation to students." (*Id.* ¶¶ 121-22.)

"Renaissance claims that it has consent to" collect this information "and that its activities are therefore authorized; Plaintiffs allege that Renaissance does not" because "any purported consent obtained by Renaissance is ineffective because (1) Renaissance fails to provide sufficient information to support informed consent; (2) student use of Renaissance's Products is not voluntary; and (3) such consent is not obtained from a person with authority to provide consent to Renaissance's collection and use of student information," and that Renaissance's "activities are therefore unlawful violations of [Plaintiffs'] privacy rights." (*Id.* ¶¶ 8, 12-14, 33, 223; *see id.* ¶¶ 87-88, 92-93, 138, 151, 224-263.) "Through this lawsuit, Plaintiffs," who allege they "are among the millions of school children" from "thousands" of school districts whose information Renaissance has unlawfully taken and used, "seek to hold Renaissance accountable for its surreptitious and unlawful data practices, obtain redress for the millions of school children whose personal information has been unfairly exploited, and restore to students and parents their basic right to be free from unwanted intrusion into their lives." (*Id.* ¶¶ 18, 21, 44.)

The information Plaintiffs argue Renaissance unlawfully obtains includes automatically-collected metadata such as:

   a. **Plaintiffs' usage information, including but not limited to:**
      i. how often a student accesses certain features;
      ii. the student's browser;
      iii. the student's operating system;
      iv. all of the areas within Renaissance's products that the student visits;
      v. the time of day the student used the product; and
      vi. "other information."

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

b. **Plaintiffs' device information, including but not limited to:**
    i. IP addresses;
    ii. Other unique device identifiers for any device used to access the products;
    iii. The student's physical location;
    iv. The student's internet service provider;
    v. The date and time of a student's visit;
    vi. The student's browser language;
    vii. The student's browser type;
    viii. Referring and exit pages of URLs;
    ix. The amount of time a student spends on particular pages;
    x. Which parts of the products the student uses;
    xi. Which links the student clicks;
    xii. The student's search terms;
    xiii. Traffic and related statistics;
    xiv. Keywords;
    xv. Other general browsing information; and
    xvi. Other general usage information.

c. **Information collected about Plaintiffs via cookies and other tracking technologies.**

(*Id.* ¶ 86.) "This data reveals intimate details about the process that students use to arrive at their responses, and includes information such as response time, error patterns, gaps in mastery, engagement and focus, work ethic, and test-taking strategies." (*Id.* ¶ 90.)

"In addition to metadata, Renaissance also states that certain information is 'required' to be generated and collected in order for students to access its Products, which includes:"

a. **Required data generated and collected by Renaissance through Renaissance DnA, including:**
    i. Student's first and/or last name;
    ii. Student identifiers – local (school district) ID number;
    iii. Student's date of birth;

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

  iv. Student's gender;
  v. Student school enrollment;
  vi. Student grade level;
  vii. Teacher names;
  viii. IP address of users, use of cookies, "etc.";
  ix. "Other application technology metadata"; and
  x. Metadata on user interaction with application;

b. **Required data generated and collected by Renaissance through Fastbridge, including:**
   i. Student app username;
   ii. Student identifier – student app passwords;
   iii. Student identifier – first and/or last name;
   iv. Student school enrollment;
   v. Student grade level;
   vi. Student in-app assessment performance;
   vii. Student's IP address, use of cookies, "etc.";
   viii. "Other application technology metadata"; and
   ix. Metadata on user interaction with application;

c. **Required data generated and collected by Renaissance through Nearpod.**
   i. Student's IP address, use of cookies, "etc.";
   ii. Student's teachers' names; and
   iii. Student's teachers' emails.

(*Id.* ¶ 91 (footnotes omitted).)

Renaissance also "makes false and misleading statements about its data practices and the law on which it intends school personnel and parents to rely," including "falsely stat[ing]" (1) "that it complies with COPPA and that schools may consent to its student data practices in lieu of parents" and (2) "that its products may be used in compliance with FERPA." (*Id.* ¶¶ 264-84 (including headings).)

Renaissance's practices cause harm to students, including "by invading their privacy," "compromising the security of their personal information," "affecting their access to

_____

_____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

information, opportunities, and other basic rights through algorithmic profiling," "prevent[ing] the development of a legitimate market for student data," and "forcing them to choose between their right to an education and other fundamental rights." (*Id.* ¶¶ 285-340 (including headings).)

Based on these and other allegations, Plaintiffs assert claims for (1) violation of the federal Wiretap Act, (2) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code Sections 631 and 632, (3) violation of CIPA, Section 638.51, (4) violation of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), (5) violation of California's Unfair Competition Law ("UCL"), (6) invasion of privacy—intrusion upon seclusion, (7) unjust enrichment, (8) negligence, (9) violation of the Wisconsin Electronic Surveillance Control Law ("WESCL"), and (10) violation of Wisconsin's Deceptive Trade Practices Act ("DTPA"). (*Id.* ¶¶ 365-517.)

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### III. Discussion

The court addresses Plaintiffs' claims for (A) invasion of privacy, (B) violation of federal and state wiretapping statutes, (C) violation of CIPA's pen register provisions, (D) violation of the UCL, (E) violation of the CDAFA, (F) negligence, (G) violation of the WDTPA, and (H) unjust enrichment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                                   Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

### A.   Invasion of Privacy—Intrusion Upon Seclusion (Claim 6)

Plaintiffs' sixth claim is for "invasion of privacy—intrusion upon seclusion." (FAC ¶¶ 433-45.) The FAC describes Wisconsin law on this claim, (*id.* ¶ 434), ostensibly because Renaissance is a Wisconsin corporation, (*id.* ¶ 31). Wisconsin law enumerates four types of invasion of privacy claims, two of which are relevant to the Motion. The first is an intrusion upon seclusion claim, which means "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private or in a manner that is actionable for trespass." Wis. Stat. Ann. § 995.50(2)(am)(1). The second is a public disclosure of private facts claim, which means "[p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed." Wis. Stat. Ann. § 995.50(2)(am)(3).

The FAC plainly labels Plaintiffs' sixth claim as "Invasion of Privacy—Intrusion Upon Seclusion." (FAC at 1 (caption), 76 (heading).) Renaissance moves to dismiss this claim on the basis that "[c]ourts consistently hold that the word 'place' in" Section 995.50(2)(am)(1) "is 'geographical,' requiring an actual physical incursion," and Plaintiffs' allegations that Renaissance misused and wrongfully disclosed students' personal information "does not constitute a violation of any geographical or physical 'space' and therefore cannot be the subject of an intrusion claim under Wisconsin law." (Mot. at 19.) The court agrees.[1] *See, e.g.*, *Hillman v. Columbia Cnty.*, 164 Wis. 2d 376, 392 (Ct. App. 1991) ("We believe the plain meaning of 'a place' is geographical. It does not include a file of medical records."); *Doe v. Saftig*, 2011 WL 1792967, at *14 (E.D. Wis. May 11, 2011) (granting summary judgment on intrusion upon seclusion claim where court agreed "that section (2)(a) does not apply to this action because this case involves no intrusion into any place") (citation modified).

---

[1] Even if the intrusion upon seclusion claim did not fail on this basis, the court would find it fails on another: "[b]ecause one cannot logically intrude into communications to which they are a party." *Saedi*, 2025 WL 1141168, at *8 (finding on this basis that the plaintiff "failed to sufficiently plead a claim for intrusion upon seclusion") (collecting cases).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                                   Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

Plaintiffs do not meaningfully argue otherwise.  (*See* Opp. at 26; Reply at 15-16.)  Rather, Plaintiffs maintain Renaissance construes their invasion of privacy claim too "narrowly" by construing it only as an intrusion upon seclusion claim.  (*Id.*)  Plaintiffs instead maintain the FAC provides adequate notice of a public disclosure of private facts claim by pointing to a single paragraph on page 86 of the FAC, (Opp. at 27), in which Plaintiffs allege:

> Renaissance's misconduct falls within the ambit of Wisconsin's wiretapping statute because the disclosure of Plaintiffs and Nationwide Class members' communications to third parties—without consent or proper authorization—is an illegal or tortious act that violates multiple laws, including, but not limited to, invasion of privacy by intrusion upon seclusion **and by public disclosure of private facts** (codified at Wis. Stat. section 995.50).  Further, as set forth *supra*, Renaissance's interception and disclosure of Plaintiffs' and Nationwide Class members' electronic communication commits, under Wisconsin law, the torts of invasion of privacy, negligence, and negligence *per se*.

(FAC ¶ 492 (bold added).)

Setting aside whether the FAC contains sufficient notice of this theory, the court finds the theory fails.  A public disclosure of private facts claim requires adequate allegations supporting the following elements: "(1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed."  *Pachowitz v. Ledoux*, 265 Wis. 2d 631, 643 (2003).

On the first element, Plaintiffs are not wrong that "Wisconsin courts have held that disclosure to a limited audience may constitute public disclosure of private facts."  (Opp. at 27 (citing *Pachowitz* and one other case)); *Pachowitz*, 265 Wis. 2d at 645 ("[W]e reject the appellants' assertion that a disclosure of private information to one person can never constitute 'publicity.'").  But that is not enough to save Plaintiffs' purported public disclosure of private

_____

**CIVIL MINUTES – GENERAL**                                                                                                  8

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

facts claim. *Pachowitz* makes clear that what is important is not simply the number of people to which the information was disclosed, but rather "the particular facts of the case together with the nature of the disclosure and the relationships of the individuals involved in assessing whether the publicity element of an invasion of privacy claim was satisfied." *Id.* at 646. For example, "[w]hen a special relationship exists, the public can include one person or small groups such as fellow employees, club members, church members, family or neighbors. An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff." *Id.* at 648 (internal quotation omitted).

Here, combining the limited number of third parties to which Renaissance allegedly disclosed Plaintiffs' allegedly private information, and the lack of any alleged special relationship or other facts that would support a particular level of embarrassment due to the disclosure to these particular third-parties, the court finds the currently-pled allegations do not adequately support the first element of a public disclosure of private facts claim, even if such a claim is adequately disclosed in the FAC. *See id.*

In addition, on the third element, the court finds Plaintiffs have not adequately alleged "that the alleged intrusion into [their] privacy would be highly offensive to a reasonable person." *Bogie v. Rosenberg*, 705 F.3d 603, 612 (7th Cir. 2013) (analyzing Wisconsin law); (*see* Reply at 16-17). "The question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations." *Bogie*, 705 F.3d at 612 (internal quotation omitted). "In conducting this evaluation, [courts] consider the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* "The intrusion must be the "result of conduct to which the reasonable man would strongly object." *Id.* (internal quotation omitted). Here, the court agrees with Renaissance that Plaintiffs have not alleged in the FAC adequate facts to support the notion that "the ubiquitous practice of sharing user data with third-party service providers" under the facts of this case "can be understood to defy 'social convention and expectation[]' so as to be 'highly offensive to a reasonable person[.]'" (Reply at 16-17 (quoting *Bogie*, 705 F.3d at 612 (affirming dismissal without leave to amend of invasion of privacy claim for failure to adequately allege "highly offensive" element))); *cf. Hammerling v. Google LLC*, 615 F. Supp.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

3d 1069, 1089 (N.D. Cal. 2022) ("[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation.").

Accordingly, the Motion is **GRANTED** as to Plaintiffs' invasion of privacy claim.

B.     **Federal and State Wiretapping Claims (Claims 1, 2, and 9)**

The court turns to Plaintiffs' federal and state wiretapping claims—claims 1, 2, and 9 for violations of the federal Wiretap Act, CIPA Sections 631 and 632, and the WESCL. "The Wiretap Act prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) (quoting 18 U.S.C. § 2511(1)(a)–(e)). "Similarly, CIPA prohibits any person from using electronic means to 'learn the contents or meaning' of any 'communication' 'without consent' or in an 'unauthorized manner.'" *Id.* (quoting Cal. Pen. Code § 631(a)). Likewise, the WESCL makes liable "whoever . . . [i]ntentionally intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire, electronic or oral communication." Wis. Stat. Ann. § 968.31.

These "statutes contain an exemption from liability for a person who is a 'party' to the communication." *In re Facebook*, 956 F.3d at 606-07; *see Tanner v. Acushnet Co.*, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023) ("When a party to a conversation records it, that party is not eavesdropping, but rather is acting as a 'tape-recorder.'"); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518-19 (C.D. Cal. 2021) (CIPA Section 631(a) "exempts from liability a person who is a 'party' to a communication."). Renaissance argues that "Plaintiffs fail to articulate a cognizable theory of 'interception'" because Renaissance, as the intended recipient of the information Plaintiffs transmit, "cannot legally intercept" the communications. (Mot. at 5.) On this point, the court agrees, and Plaintiffs' claim that Renaissance violated wiretapping statutes by recording its own interactions with Plaintiffs on its own platforms therefore fails unless some exception to the exemption applies. *Saleh*, 562 F. Supp. 3d at 518–19 ("[T]o the extent Plaintiff alleges Nike recorded its own communications with Plaintiff, the court finds the § 631 exemption applies."); *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) ("Plaintiff's claim for violation of Section 631 fails, because this section applies only to eavesdropping by a third party and not to recording by a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE    Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

participant to a conversation."); *Javier v. Assurance .IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) ("[A] party to a conversation can record it without the other party's knowledge without incurring Section 631 liability."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) ("Courts agree that § 631(a)[i] and [ii] apply only to third parties and not to participants.").

"[W]hile a party to a communication may be exempt (the 'Party Exemption'), there is an exception applied if the interception was carried out for the purpose of committing a criminal or tortious act in violation of the law (the 'Crime-Tort Exception')." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025). Plaintiffs argue "the crime-tort exception precludes invocation of the party [exemption to the ECPA and WESCL] at this stage because Plaintiffs allege that Renaissance intercepted their communications to tortiously invade their privacy." (Opp. at 13.) Specifically, Plaintiffs allege "Renaissance disclosed the contents of those communications with third parties for the purpose of committing a crime or tort, including but not limited to, the tort of intrusion upon seclusion." (FAC ¶ 378.) But as the court explained, *see* Section III.A., *supra*, the court finds that Plaintiffs fail to adequately allege an invasion of privacy claim, including on an intrusion upon seclusion theory. "This, therefore, cannot serve as the basis for the Crime-Tort Exception to apply." *Saedi*, 2025 WL 1141168, at *13. "Where the Party Exemption is applicable and the plaintiff has failed to sufficiently invoke the Crime-Tort Exception, the defendant is exempt." *Id.* at *14. The court therefore **GRANTS** the Motion as to Plaintiffs' wiretapping claims and does not address at this time Renaissance's other arguments regarding additional ways those claims fail. (*See* Mot. at 5-9.)

### C.   CIPA Pen Register Claim (Claim 3)

CIPA provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                    Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

___

Plaintiffs allege Renaissance's products "are 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—the IP address and other device identifier information such as device type, browser type, unique cookie identifiers, session identifiers, referrer URLs, user-agent strings, clickstream paths, and timestamped navigation or submission data ('Device Metadata')—from the electronic communications transmitted by California Plaintiffs' and the California Subclass members' computers, tablets or smartphones," and also "because they are 'device[s] or process[es]' that 'capture[d]' the unique user identifiers associated with each Product from the electronic communications transmitted by California Plaintiffs' and the California Subclass members' computers, tablets or smartphones," which "unique IDs are 'addressing' information because they are used to tie a Product's user to third parties' databases and repositories of information about the user and ascertain the user's identity."  (FAC ¶¶ 399-400.)  1

Renaissance moves to dismiss Plaintiffs' CIPA pen register claim on the basis that (1) Plaintiffs lack standing to raise it because they have suffered no injury in fact, and (2) "because CIPA's pen register prohibition does not apply to IP address information."  (Mot. at 10-14.)  Plaintiffs' response to both of these arguments centers on its contention that "Plaintiffs allege that Renaissance collected far more data than just IP addresses and shared that data with third parties, including companies engaged in advertising, marketing, and identity-resolution."  (Opp. at 19; *see generally id.* at 18-23.)  But Plaintiffs expressly allege that their pen register claim "is based solely on Renaissance's capture of non-content signaling data, such as IP addresses and routing metadata."  (FAC ¶ 395.)  The fact that Renaissance *also* collects other data does not persuade the court that Plaintiffs' pen register claim is adequately alleged; at the very least, further clarification regarding Plaintiffs' allegations is necessary to state a "claim of relief that is plausible on its face.'"  *Harris*, 682 F.3d at 1131 (quoting *Iqbal*, 556 U.S. at 678).  Accordingly, the Motion is **GRANTED** as to Plaintiffs' CIPA pen register claim.

### D.     UCL (Claim 5)

Renaissance moves to dismiss Plaintiffs' UCL claim on the basis that Plaintiffs fail to sufficiently allege standing to assert the claim.  (*See* Mot. at 16-18.)  In 2004, California voters passed Proposition 64, which changed who may sue to enforce the UCL from any person "acting for the interests of itself, its members or the general public" to any person "who has

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                                Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

suffered injury in fact and has lost money or property as a result of such unfair competition.'" *In re Tobacco II Cases*, 207 P.3d 20, 31 (Cal. 2009). To have standing under the UCL, then, plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim." *Id.* at 885. "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885-86 (Cal. 2011).

In this case, Plaintiffs allege they have lost "money or property, as a result of Renaissance's unfair and unlawful practices, which include the unauthorized disclosure and taking of their personal information that has value as demonstrated by its use and sale by Renaissance," and "have suffered harm in the form of diminution of the value of their private and personally identifiable data and content." (FAC ¶ 428; *see also id.* ¶¶ 330-31 & 55 ("Renaissance has diminished the value of Plaintiffs' personal information, without compensation or other legally sufficient consideration," "deprived students of their choice of whether to participate in the data market at all," and that "Renaissance's nonconsensual data practices have prevented the development of a legitimate market for student data.").)

The court is not persuaded that the FAC alleges a loss of money or property sufficient to support UCL standing. In particular, Plaintiffs' theory requires making multiple logical leaps—including that a market for student data collected pursuant to corporate contracts with schools would exist and that Plaintiffs could and would have participated in such a market if it existed—each of which is rife with speculation and not an adequate foundation for the "los[s of] money or property as a result of [Renaissance's alleged] unfair competition" that is required to bring a UCL claim. *In re Tobacco II Cases*, 207 P.3d at 31; *Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023) (finding the plaintiffs' "conclusory assertion" supporting UCL standing was "speculative" and failed to "plausibly allege[] that Defendants' use of the TikTok SDK to collect information about their browsing history caused them to lose money or property within the meaning of the UCL") (citing *Schwartz v. Provident Life &*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                      Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

*Accident Ins. Co.*, 216 Cal. App. 4th 607, 613 (2013) (concluding that the plaintiffs' "claimed injury was purely speculative and insufficient to confer standing") (internal quotation omitted); *see also Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (finding the plaintiffs' "lost-value-of-PII theory, as pleaded, is insufficient to support UCL standing," because they "did not allege they ever attempted or intended to participate in [a] market [for their PII], or otherwise to derive economic value from their PII," or "that any prospective purchaser of their PII might learn that their PII had been" taken and used by the defendant "and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms"); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *5 (N.D. Cal. Mar. 17, 2025) ("First, even if plaintiffs adequately alleged a market for the student data PowerSchool is allegedly appropriating, there is no non-speculative basis in the complaint for thinking plaintiffs can or would transact with the personal information at issue, such as their exam scores or behavioral assessments, in that market.") (record citation omitted); (*see also* Reply at 14-15 (collecting cases)).[2]  Accordingly, the Motion is **GRANTED** as to Plaintiffs' UCL claim.

    **E.**    **CDAFA (Claim 4)**

The CDAFA "is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).  It prohibits, among other conduct, "[k]nowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). Plaintiffs allege "Renaissance violated Cal. Penal Code section 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using California Plaintiffs' and California Subclass members' data as described herein." (FAC ¶ 411.)

---

[2] Because the court finds Plaintiffs fail to adequately allege standing, the court does not address Renaissance's argument that the claim is inadequately pled.  (*See* Mot. at 16-18.)  Separately, the court notes that Renaissance's argument that several of Plaintiffs' claims fail on several bases required the parties to address numerous arguments in a single paragraph each.  (*See generally* Mot., Opp., Reply.)  If the parties believe the court would benefit from additional pages of briefing in any future motion practice in this case, the parties should seek leave to provide such additional pages.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

Renaissance moves to dismiss Plaintiffs' CDAFA claim on the basis that Plaintiffs lack standing to sue under the statute. (Mot. at 14-16.) The CDAFA provides that "the owner or lessee of the computer, computer system[3], computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1). The CDAFA does not define "damage" or "loss." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021).

In addition to re-asserting their economic loss argument regarding the loss of their ability to participate in a market for their data, which market cannot exist because of alleged bad actors like Renaissance, (*see* Opp. at 23-24), Plaintiffs allege that "Renaissance was unjustly enriched by acquiring the valuable personal information of California Plaintiffs and California Subclass members without permission and using it for Renaissance's own financial benefit to advance its business interests," and that "California Plaintiffs and California Subclass members retain a stake in the profits that Renaissance earned from the misuse of their activity and personally identifiable information because, under the circumstances, it is unjust for Renaissance to retain those profits." (FAC ¶¶ 412-13.) The court finds that Plaintiffs' allegations are too attenuated, conclusory, and speculative to support standing to assert a CDAFA claim. *See Cottle*, 536 F. Supp. 3d at 488 (dismissing CDAFA claims where alleged standing was premised on "the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data"); *cf. Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (analyzing federal CFAA and finding that the plaintiff's "theory of loss[—]that he and his fellow class members were denied the profits they might have received from commodifying the personal information that Sirius XM allegedly obtained through unlawful means"—was not sufficient to support "damage or loss" standing under the CFAA).[4] Accordingly, the Motion is **GRANTED** as to Plaintiffs' CDAFA claim.

___

[3] The parties do not address whether Plaintiffs could reasonably be construed as "the owner or lessee of the computer[s]" they used at school. Cal. Penal Code § 502(e)(1).
[4] Because the court finds Plaintiffs fail to adequately allege standing, the court does not address Renaissance's argument that the CDAFA claim is inadequately pled. (*See* Mot. at 14-16.)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

### F. Negligence (Claim 8)

In their negligence claim, Plaintiffs allege "Renaissance owed a duty to children who use its products . . . to exercise reasonable care in the collection, handling, retention, and use of their personal and behavioral data," and breached that duty by sharing Plaintiffs' information "with third-party 'subprocessors,' 'service providers,' and 'vendors' and using it to improve or train its own proprietary systems. (FAC ¶¶ 465-460.) Renaissance moves to dismiss Plaintiffs' negligence claim on the basis that "Plaintiffs' classic negligence theory fails because there is (1) no foreseeable harm, (2) a public policy against imposing liability here, (3) intervening causation, and (4) no damages," (Reply at 18), and "Plaintiffs' attempt to plead a negligence per se claim based on Renaissance's alleged COPPA violations is nonviable because that theory only applies under Wisconsin law to claims based on the defendant's violation of a 'safety statute'—which does not exist here," (Mot. at 23). At this stage, the court addresses only the damages issue, and agrees that dismissal is warranted.

"[A] tort claim is not capable of present enforcement (and therefore does not accrue) unless the plaintiff has suffered actual damage. Actual damage is harm that has already occurred or is 'reasonably certain' to occur in the future." *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 158 (2004). For reasons including those already described in this Order, *see* Sections III.D.-III.E, and in Renaissance's Motion and Reply, the court finds that Plaintiffs' allegations regarding damages they have suffered are too attenuated, speculative, and conclusory to support a negligence claim. *See Tietsworth*, 270 Wis. 2d at 158. Accordingly, the Motion is **GRANTED** as to Plaintiffs' negligence claim.

### G. WDTPA (Claim 10)

Renaissance moves to dismiss Plaintiffs' WDTPA claim on the basis that (1) Plaintiffs are not protected under the statute because they are not Wisconsin citizens, and (2) the claim is insufficiently pled. (Mot. at 24-25.)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                    Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

### 1. Wisconsin Consumers

Renaissance first moves to dismiss Plaintiffs' WDTPA claim on the basis that Plaintiffs, who are California and Kansas citizens, (FAC ¶¶ 25-30), cannot pursue a WDTPA claim even though Renaissance is a Wisconsin corporation, (*id.* ¶ 31), because the WDTPA only provides relief for Wisconsin consumers. (Mot. at 24.) But it appears a Washington appellate court has interpreted the WDTPA otherwise:

> The plain language of the statute prohibits anyone from "mak[ing]," "publish[ing]," or "caus[ing] ... to be made ... in this state" an advertisement or other representation that contains an "untrue, deceptive or misleading" assertion, representation, or statement. The verbs, which include "make," "publish," and "cause," focus on the advertiser's conduct or actions, not the recipient or the consumer. After a comma, the statute provides that these actions may not take place "in this state." The statute does not proscribe where the recipient or consumer must be or reside. Thus, based on the plain language of the statute, we conclude that the State can enforce Wis. Stat. § 100.18(1) against Wisconsin businesses that reach consumers outside of the state. We will not add words to a statute that are not present.

*State v. Talyansky*, 409 Wis. 2d 57, 68-69 (2023). Although analysis in the case Renaissance cites, *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, 2022 WL 4273475, at *10 (E.D. Wis. Sep. 15, 2022), is not unpersuasive, the court observes that the analysis focused on legislative history—an approach the Washington appellate court (in an opinion issued after the Washington district court's decision) discouraged. *Talyansky*, 409 Wis. 2d at 71 ("As the State observes, the district court's interpretation in *T&M Farms* skipped a plain language reading of the statute and focused instead on the purpose of the statute. However, Wisconsin law requires courts to first examine the plain language of the statute, and if the plain language of the statute is clear, we stop the inquiry. We only go beyond the language of the statute when the plain language is ambiguous. Thus, we do not find *T&M Farms* persuasive.") (citations and footnote

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDEDate: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

omitted).

  **2.**  **Sufficiency of Allegations**

  Renaissance next moves to dismiss Plaintiffs' WDTPA claim on two interrelated bases: that "[p]er its plain language, the WDTPA applies only to 'commercial transactions,'" and that "Plaintiffs fail to allege a 'pecuniary loss,' which requires 'a causal connection' between Renaissance's statements and any alleged pecuniary loss Plaintiffs experienced" or "that their children or they were 'materially induced' to transact with Renaissance by the challenged statements." (Mot. at 24-25.)

  Claims arising under the WDTPA, which "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements," "have three required elements: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (internal quotations omitted). Plaintiffs allege Renaissance violated the WDTPA by "ma[king] false and misleading statements on which it intended schools and parents to rely, namely, that it complies with COPPA, that it may be used in compliance with FERPA, and that schools may consent to its student-data practices in lieu of parents," and "[b]ut for those misrepresentations, Renaissance would not have obtained vast troves of student data without parental consent, including Plaintiffs' and Nationwide Class members' personal information." (FAC ¶¶ 507-08.)

  The court finds Plaintiffs fail to adequately allege a WDTPA claim. "[T]he purpose of [WDTPA] is to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to *promote the sale of a product*." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (quoting *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.,* 720 N.W.2d 507, 516 (2006) (emphasis added); citing *Novell,* 749 N.W.2d at 550 ("This court and the court of appeals have made clear that the purpose of § 100.18 is to deter sellers from making false and misleading representations in order to protect the public.")). "More simply put, [the WDTPA] applies by its terms to *commercial transactions*." *Id.* (internal quotation omitted).

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-01379-FWS-JDE | Date: February 17, 2026 |
| Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc. | |

Plaintiffs are not in a position to "choose one product over another" and the allegedly misleading statements "were not part of a commercial transaction." *Id.* For similar reasons, in addition to reasons already discussed in this Order, *see* Sections III.D-III.F., *supra*, the court finds Plaintiffs do not adequately allege that they sustained a "pecuniary loss." *Weaver*, 3 F.4th at 934. Accordingly, the Motion is **GRANTED** as to the WDTPA claim.

### H. Unjust Enrichment (Claim 7)

Renaissance next moves to dismiss Plaintiffs' unjust enrichment claim, which Plaintiffs bring "pursuant to Wisconsin Law," (FAC at 79). (Mot. at 20-21.) "The elements of an unjust enrichment claim under Wisconsin law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such benefit under such circumstances that it would be inequitable for [the defendant] to retain it without paying the value thereof." *Giasson v. MRA - Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 939 (E.D. Wis. 2025). At this stage, the court finds Plaintiffs fail to adequately allege the third element, including that the circumstances are such that it would be inequitable for Renaissance to retain the benefit of Plaintiffs' personal information without paying for it. *See id.* For the reasons explained throughout this Order, Plaintiffs have not adequately articulated any theory in the FAC that would make Renaissance's taking of student data wrongful, and "where there is no 'actionable wrong,' as currently alleged here, there can be 'no basis for relief'" in an unjust enrichment claim. *Saedi*, 2025 WL 1141168, at *14. Accordingly, the Motion is **GRANTED** as to the unjust enrichment claim.

### IV. Disposition

For the reasons set forth above, the Motion is **GRANTED.** Plaintiffs' FAC is **DISMISSED WITH LEAVE TO AMEND**. If Plaintiffs believe they can amend the FAC to remedy the deficiencies identified in this Order (and any others identified in the Motion and Reply that the court did not specifically address in this Order), Plaintiffs shall file an amended complaint on or before **March 17, 2026. Failure to file an amended complaint on or before the deadline set by the court will result in the dismissal of this action without prejudice without further notice for failure to prosecute and/or comply with a court order.** *See* Fed.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01379-FWS-JDE                                    Date: February 17, 2026
Title: Nicole Reisberg *et al.* v. Renaissance Learning, Inc.

R. Civ. P. 41(b); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Rule 41(b) permits dismissal for failure of the plaintiff to prosecute or to comply with any order of court."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (courts may "act sua sponte to dismiss a suit for failure to prosecute") (cleaned up); *Link v. Wabash R.R.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of [their] failure to prosecute cannot seriously be doubted."); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) ("[C]ourts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances."); *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002) (affirming *sua sponte* dismissal with prejudice "for failure to prosecute and for failure to comply with a court order"); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) ("District courts have inherent power to control their dockets" and "[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal.").