COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
ERIK LAMPMANN-SHAVER (362460)
(elampmannshaver@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

NAOMI HARRALSON MAY (291462)
(nmay@cooley.com)
10265 Science Center Drive
San Diego, CA  92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

STEPHANIE SCHUYLER
(Admitted *Pro Hac Vice)*
(sschuyler@cooley.com)
ERIKA P. BRIGANTTI ABRAHAM
(Admitted *Pro Hac Vice*)
(ebrigantiabraham@cooley.com)
55 Hudson Yards
New York, NY10001-2157
Telephone:  +1 212 479 6000
Facsimile:   +1 212 479 6275

Attorneys for Defendant
RENAISSANCE LEARNING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION - SANTA ANA

| | |
|---|---|
| M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian AMY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RENAISSANCE LEARNING, INC.,<br><br>Defendant. | Case No. 8:25-cv-01379-FWS-JDE<br><br>**DEFENDANT RENAISSANCE LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>Date:         September 10, 2026<br>Time:         10:00 a.m.<br>Courtroom: 10D<br><br>Pretrial Conference:   March 9, 2028<br>Trial Date:              April 4, 2028 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2026 at 10:00 a.m., in Courtroom 10D of the U.S. Courthouse located at 411 West 4th Street in Santa Ana, California 92701, Defendant Renaissance Learning, Inc. ("Renaissance") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiffs' Second Amended Complaint ("SAC," Dkt. 60) without leave to amend.  For the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiffs fail to state any claim upon which relief can be granted, requiring dismissal in full of the SAC.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Stephanie Schuyler, the pleadings and papers on file in this action, and any further evidence or argument of counsel that the Court may receive, including at a hearing on this motion.

Dated: May 1, 2026                                    COOLEY LLP


                                                     By: /s/ Matthew D. Brown
                                                         Matthew D. Brown

                                                     Attorneys for Defendant
                                                     RENAISSANCE LEARNING, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................ 1

    A.  Renaissance Provides Valuable Tools to Aid Students' Learning ....... 1

    B.  Plaintiffs Allege Their Children Use Four Renaissance Products ........ 3

III.  LEGAL STANDARD ........................................................................... 3

IV.  ARGUMENT ........................................................................................ 4

    A.  The Party Exception Precludes Plaintiffs' Wiretapping Claims (Counts I and IX) ............................................................................. 4

    B.  Plaintiffs Fail to Allege VPPA Elements (Count XIV) ...................... 6

        1.  Not a "Video Tape Service Provider" ....................................... 7

        2.  No PII Disclosure ....................................................................... 8

        3.  No Knowing Transmission of PII ............................................ 10

    C.  Plaintiffs Fail to Plausibly Plead UCL Standing or Any Prong (Count II) ........................................................................................ 11

    D.  Plaintiffs Fail to State Claims for Invasion of Privacy (Count III) and Intrusion Upon Seclusion (Counts IV and XII) ........................ 14

    E.  Plaintiffs' Public-Disclosure-of-Private-Facts Claims Fail (Counts V, VI, and XIII) .................................................................. 19

    F.  Plaintiffs' Unjust Enrichment Claims Fail (Counts VII and XI) ........ 23

    G.  Plaintiffs' Negligence Claim Fails for Lack of Concrete Damages and Causation (Count VIII) ................................................ 25

    H.  Plaintiffs' WDTPA Claim Fails for Lack of an Alleged Commercial Transaction or Pecuniary Loss (Count X) ..................... 27

    I.  The SAC Should be Dismissed with Prejudice ................................. 29

V.  CONCLUSION .................................................................................. 29

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012)................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................4

*B.C. v. Plumas Unified Sch. Dist.*,
192 F.3d 1260 (9th Cir. 1999)................................................................7

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr.11, 2024)........................................6

*Bauer v. Fincantieri Marine Grp., LLC*,
31 N.W.3d 156 (Wis. App. 2025) ..........................................................26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................4

*Board. of Ed. v. Sinclair*,
222 N.W.2d 143 (1974)...........................................................................25

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013)..................................................................21

*Brame v. Gen. Motors LLC*,
535 F. Supp. 3d 832 (E.D. Wis. 2021)...................................................24

*Cafasso v. General Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011).................................................................29

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....................................................16

*Camm v. Reach Fin., LLC*,
2026 WL 861670 (S.D.N.Y. Mar. 30, 2026)..........................................5

*Cantu v. Tapestry, Inc.*,
2023 WL 4440662 (S.D. Cal. July 10, 2023)..........................................7

*Carmody v. Byline Bank*,
7 N.W.3d 714 (Wis. App. 2024) .............................................................28

*Caro v. Weintraub*,
618 F.3d 94 (2nd Cir. 2010) ...................................................................6

*Carroll v. Gen. Mills, Inc.*,
2023 WL 4361093 (C.D. Cal. June 26, 2023).........................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Chandra v. Prager Univ. Found.*,
   2026 WL 4344938 (C.D. Cal. Jan. 26, 2026)......................................................10

*Cole v. LinkedIn Corp.*,
   807 F. Supp. 3d 959 (N.D. Cal. 2025)..................................................................8

*D'Angelo v. FCA US, LLC*,
   726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........................................................16, 22

*Dawson v. Assocs. Fin. Servs. Co. of Kansas*,
   215 Kan. 814 (1974)...........................................................................................21

*Dawson v. Great Lakes Educ. Loan Servs., Inc.*,
   2022 WL 1500447 (W.D. Wis. May 12, 2022)...................................................27

*Desnick v. Am. Broad. Cos., Inc.*,
   44 F.3d 1345 (7th Cir. 1995)................................................................................4

*Dotson v. McLaughlin*,
   216 Kan. 201 (1975)...........................................................................................21

*Eichenberger v. ESPN, Inc.*,
   876 F. 3d 979 (9th Cir. 2017).....................................................................7, 9, 10

*In re Emporia Prop. Grp., LLC*,
   2022 WL 567727 (Bankr. D. Kan. Feb. 24, 2022)............................................23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)................................................................................4

*Figy v. Amy's Kitchen, Inc.*,
   2013 WL 6169503 (N.D. Cal. Nov. 25, 2013)...................................................13

*Frye v. IBP, Inc.*,
   15 F. Supp. 2d 1032 (D. Kan. 1998) ..................................................................14

*Garcia v. Bandai Namco Ent. Am., Inc.*,
   2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) ...................................................7, 8

*Giasson v. MRA - Mgmt. Ass'n, Inc.*,
   777 F. Supp. 3d 913 (E.D. Wis. 2025) ..........................................23, 24, 26, 29

*Gonzaga University v. Doe*,
   536 U.S. 273 (2002) ...........................................................................................12

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014)..................................................................18

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017)..............................................................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022)..................................................14, 17, 22

*Hassan v. Facebook, Inc.*,
   2019 WL 3302721 (N.D. Cal. July 23, 2019) ....................................................21

*Heather v. Healthline Media, Inc.*,
   2023 WL 8788760 (N.D. Cal. Dec. 19, 2023) .....................................................8

*Hernandez v. Chewy, Inc.*,
   2023 WL 9319236 (C.D. Cal. Dec. 13, 2023) .....................................................8

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009)........................................................................................14

*Hernandez-Silva v. Instructure, Inc.*,
   2025 WL 2233210 (C.D. Cal. Aug. 4, 2025).....................................................22

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994).......................................................................................14, 19

*Hogan v. Weymouth*,
   2020 WL 8028111 (C.D. Cal. Nov. 13, 2020)...................................................21

*Houck v. Corr. Corp. of Am.*,
   2017 WL 747847 (D. Kan. Feb. 27, 2017).............................................14, 15, 18

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015)...............................................................10

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................18

*J.W. Thompson Co. v. Welles Prods. Corp.*,
   243 Kan. 503 (1988)...........................................................................................23

*Joiner v. NHL Enters., Inc.*,
   2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) .....................................................5

*Jones v. Google LLC*,
   73 F. 4th 636 (9th Cir. 2023).............................................................................12

*Karimi v. Golden Gate Sch. of L.*,
   361 F. Supp. 3d 956 (N.D. Cal. 2019)...............................................................22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..............................................................................4

*Kiprilov v. National Bd. of Med. Examiners*,
   2016 WL 6900724 (C.D. Cal. Oct. 24, 2016).....................................................29

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025)...................................................... 6

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................. 18, 22

*Mikulsky v. Bloomingdale's, LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. 2024) ...................................................... 15

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  2013 WL 12114762 (C.D. Cal. Oct. 8, 2013) ........................................... 18

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ............................................................. 6, 10

*Morilha v. Alphabet Inc.*,
  2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ..................................... 18, 22

*Mueller v. Harry Kaufmann Motorcars, Inc.*,
  859 N.W.2d 451 (Wis. App. 2014) ........................................................... 28

*N.Z. v. Fenix Int'l Ltd.*,
  2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) ....................................... 9, 10

*Nabeel v. Taylor Swift Prods., Inc.*,
  2024 WL 4444483 (C.D. Cal. July 31, 2024) ..................................... 22, 23

*Nabozny v. Optio Sols., LLC*,
  583 F. Supp. 3d 1209 (W.D. Wis. 2022).................................................. 20

*Naruto v. Slater*,
  888 F.3d 418 (9th Cir. 2018) ..................................................................... 4

*New Jersey v. T.L.O*,
  468 U.S. 325 (1985) .................................................................................. 7

*Orff v. City of Imperial*,
  2017 WL 5569843 (S.D. Cal. Nov. 17, 2017)..................................... 19, 20

*Osheske v. Silver Cinemas Acquisition Co.*,
  132 F. 4th 1110 (9th Cir. 2025)................................................................. 6

*Pachowitz v. LeDoux*,
  265 Wis. 2d 631 (2003) ............................................................. 19, 20, 23

*Paul v. Skemp*,
  625 N.W.2d 860 (Wis. 2001) ................................................................... 26

*Pelnar v. Rosen Sys., Inc.*,
  964 F. Supp. 1277 (E.D. Wis. 1997) ........................................................ 27

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Perry v. Cable News Network, Inc.*,
854 F. 3d 1336 (11th Cir. 2017)..................................................................................9

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)......................................................................................5

*In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC
Customer Sec. Breach Litig.*,
2026 WL 772329 (S.D. Cal. Mar. 18, 2026)..................................................17, 20

*Reade v. New York Times Co.*,
2022 WL 2396083 (E.D. Cal. July 1, 2022) .............................................................21

*Reetz v. Advoc. Aurora Health, Inc.*,
983 N.W.2d 669 (Wis. App. 2022) ........................................................................25, 26

*Riley v. California*,
573 U.S. 373 (2014) ....................................................................................................15

*Rowell v. King*,
2005 WL 2099718 (D. Kan. Aug. 30, 2005)......................................................17, 18, 19

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)............................................................5, 6, 16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012)......................................................................................13

*Schutte v. Ciox Health, LLC*,
574 F. Supp. 3d 618 (E.D. Wis. 2021).......................................................................23

*Settle v. Hendrix*,
1993 WL 13965689 (Kan. Ct. App. Mar. 12, 1993).................................................16

*Setzer v. Farmers Ins. Co.*,
185 F. App'x 748 (10th Cir. 2006).............................................................................19

*Shanahan v. IXL Learning, Inc.*,
2026 WL 982855 (9th Cir. Apr. 13, 2026).................................................................25

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022).....................................................................................20

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F. 3d 1035 (9th Cir. 2010)...................................................................................12

*Shutts v. Phillips Petroleum Co.*,
222 Kan. 527 (1977)....................................................................................................24

*Slane v. Emoto*,
582 F. Supp. 2d 1067 (W.D. Wis. 2008)....................................................................28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith-Utter v. Kroger Co.*,
2009 WL 790183 (D. Kan. Mar. 24, 2009).......................................................17

*Spinks v. Equity Residential Briarwood Apartments*,
171 Cal. App. 4th 1004 (2009)........................................................................21

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999).............................................................................5

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)...............................................................................4

*T.T. v. Cnty. of San Diego*,
2020 WL 6118781 (S.D. Cal. Oct. 16, 2020)...................................................18

*Taus v. Loftus*,
40 Cal. 4th 683 (2007)............................................................................... 19, 23

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002)............................................................................16

*Thermal Design, Inc. v. Am. Soc'y. of Heating, Refrigerating and Air-Conditioning Eng'rs, Inc.*,
755 F.3d 832 (7th Cir. 2014)......................................................................27, 28

*Tietsworth v. Harley-Davidson, Inc.*,
270 Wis. 2d 146 (2004).....................................................................................25

*U.S. v. Aguilera*,
287 F. Supp. 2d 1204 (E.D. Cal. 2003)..............................................................7

*United States v. Stratton*,
229 F. Supp. 3d 1230 (D. Kan. 2017)...............................................................15

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ...........................................................................................4

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)..............................................................7

*Weaver v. Champion Petfoods USA Inc.*,
2019 WL 2774139 (E.D. Wis. 2019) ...............................................................24

*Werner v. Kliewer*,
238 Kan. 289 (1985)...........................................................................17, 19, 23

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)............................................................15

*Zhu v. St. Francis Health Ctr.*,
150 P.3d 926 (Kan. Ct. App. 2007)..................................................................20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

18 U.S.C.
  § 2710(a)(3) ................................................................................................9
  § 2710(a)(4) .............................................................................................7, 8
  § 2710(b) ...................................................................................................10

Cal. Bus. & Prof. Code § 22584(b)(4) ...................................................2, 27

Cal. Educ. Code § 49076(a) ........................................................................2

Wis. Stat. Ann. § 100.18 ............................................................................27

**Other Authorities**

34 C.F.R.
  § 99.31(a)(1)(i)(A) ................................................................................2, 13
  § 99.33(b)(1) ...............................................................................................2

Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888 (Nov. 3, 1999) ..................................................................................................13

Fed. R. Civ. P.
  9(b) ........................................................................................................4, 13
  12(b)(1) .......................................................................................................3
  12(b)(6) .......................................................................................................4

FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#N20COPPA%20AND%20SCHOOLS (last visited Apr. 12, 2026) .................................................................................................13

Restatement (Second) of Torts
  § 46 cmt. d ................................................................................................19
  § 652B .......................................................................................................14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC," Dkt. 60) represents their third attempt to repackage ideologically-driven policy arguments about the role of technology in American schools into legal claims. As before, their claims fail.

The SAC reasserts many of the same claims, premised on the same factual allegations the Court found insufficient when dismissing the First Amended Complaint ("FAC"). *See* Dkt. 59. Plaintiffs' wiretapping claims remain barred by the party exception. Their UCL and Wisconsin statutory claims fail, again, for lack of standing. Plaintiffs' negligence theory continues to rely upon insufficient allegations of harm. The SAC fails to meaningfully engage with the Court's Order, underscoring that Plaintiffs' primary focus is advancing policy views about how the educational technology ("edtech") sector ought to function, not properly pleading their causes of action.

Insofar as Plaintiffs assert new claims in the SAC, these are also legally deficient. Their Video Privacy Protection Act ("VPPA") claim is a mismatch for the facts alleged—Plaintiffs do not allege transmission of any personally identifiable information about their video watching histories. Plaintiffs cannot salvage their common-law privacy tort claims by repackaging them as arising under Kansas or California law. Each fails because, among other reasons, Plaintiffs have not alleged disclosure of their information in a manner that would offend a reasonable person.

In sum, the SAC suffers from deficiencies similar to those the Court previously found fatal—and the new claims are similarly flawed. As Plaintiffs have had ample opportunity to plead their grievances, further amendment would be futile, and the Court should now dismiss all claims with prejudice.

## II. FACTUAL BACKGROUND

### A. Renaissance Provides Valuable Tools to Aid Students' Learning

Renaissance contracts with schools and school districts to provide educational

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

software and services. SAC ¶40. Schools and educators rely on Renaissance's tools to provide classroom instruction, administer student assessments, and analyze student learning. *See id*. Because these tools enhance learning, their use has become commonplace in students' lives. *See id*. ¶39 ("School districts access an average of nearly 3,000 EdTech tools during a school year. A single student accesses nearly fifty EdTech tools per year.").

Federal and state student data privacy laws recognize that schools need support from third-party service providers, including edtech companies, and thus contain exceptions to generally applicable consent requirements. Regulations implementing the federal Family Educational Rights and Privacy Act ("FERPA") and a similar California statute authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without parental consent. *See* 34 C.F.R. § 99.31(a)(1)(i)(A); Cal. Educ. Code § 49076(a). Both federal and California law also authorize service providers to disclose student data to third parties. *See* 34 C.F.R. § 99.33(b)(1) ("the party receiving the information may make further disclosures of the information" where doing so would, *inter alia*, further legitimate educational interests); Cal. Bus. & Prof. Code § 22584(b)(4) (allowing operator to "further disclose" information to, e.g., "allow or improve operability and functionality").

Schools, as well as Renaissance, comply with this well-established regulatory regime when schools utilize Renaissance's services to enhance students' learning experience.

Notably, although Plaintiffs attempt to plead around the Court's prior Order by adding allegations in the SAC that Renaissance's conduct was "in violation of federal law"—specifically, COPPA and FERPA, *see* SAC ¶¶70, 222–23, 255–56, 553–56, 563, 566, 591, 603, 623–24, 643, 647, 649, 657, 660–62, 666–67—Plaintiffs have not even attempted to plead a claim under those statutes. Nor could they; neither statute includes a private right of action, as Plaintiffs concede. *See id*. ¶555.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**B.      Plaintiffs Allege Their Children Use Four Renaissance Products**

Plaintiffs Nicole Reisberg and Amy Warren bring this action on behalf of their minor children: (1) Reisberg's children, M.C. 1 and M.C. 2, who attended school in Orange County, California; and (2) Warren's children, M.C. 3 and M.C. 4, who attended school in Kansas.  SAC ¶¶26–31.  Plaintiffs allege that, collectively, their children used four of Renaissance's edtech products (the "Products"): (1) DnA, "a student-assessment and data-analytics platform" (*id*. ¶¶5, 71–74); (2) Fastbridge, an "assessment tool for monitoring and screening student progress" (*id*. ¶¶5, 62–64); (3) Nearpod, "an interactive instructional platform" (*id*. ¶¶5, 55–60); and (4) SAEBRS, a "screening tool used to [] identify students who may be at risk" (*id*. ¶¶5, 65–69).

Plaintiffs allege that the Products collect various student data:  that DnA collected M.C. 1's and M.C. 2's names, student IDs, grade levels, enrollment information, and teacher names, *id*. ¶81, and that M.C. 3 and M.C. 4 allegedly completed surveys ranking and describing their social and emotional well-being through SAEBRS.  *Id.* ¶¶65–70.  For the first time in the SAC, Plaintiffs also purport to have conducted forensic testing of Renaissance's Nearpod and FastBridge products (not DnA or SAEBRS), which they contend revealed the data collected about M.C. 3 and M.C. 4.[1]  *See id.* ¶¶99, 118.  It also allegedly indicated some information about M.C.3 and M.C. 4's interaction with the Products was disclosed to third parties, including Google, Mixpanel, and Microsoft.[2]  *Id.* ¶¶125–226.

**III.   LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to

---

[1] As M.C.1 and M.C.2 used only DnA, the forensic testing is irrelevant to them.  *See* SAC ¶¶26-27.

[2] Tellingly, although Plaintiffs allege M.C.3 and M.C.4 provided "social-emotional" information through SAEBRS (SAC ¶¶65-70), and that forensic testing was conducted as to those Plaintiffs (*id*. ¶118), they make no non-conclusory allegations that any such data was actually disclosed to any third party.  *See*, e.*g*., *id*.  ¶19 (disclosure of social-emotional data "to any third parties" was embarrassing); ¶ 334 (Renaissance "collects, uses, and discloses" categories of data, including "social-emotional" information).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

dismiss for lack of subject matter jurisdiction, including for lack of Article III standing. *Naruto v. Slater*, 888 F.3d 418, 425 n.7 (9th Cir. 2018). To establish standing, plaintiffs must show "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019).

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "enough facts" to state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations must create "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Fraud-related factual allegations must satisfy Rule 9(b)'s heightened pleading requirements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiffs must allege the "time, place, and specific content of the false representations" and "the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## IV.   ARGUMENT

### A.   The Party Exception Precludes Plaintiffs' Wiretapping Claims (Counts I and IX)

Plaintiffs' wiretapping claims under the federal Electronic Communications Privacy Act ("ECPA") and the Wisconsin Electronic Surveillance Control Law ("WESCL") fail for the same reasons they were dismissed in the FAC: because the party exception bars liability for parties to a communication, and the crime-tort exception does not apply. *See* Dkt. 59 at 10–11; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (ECPA exempts parties to communications from liability); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) ("[t]he federal and [Wisconsin] wiretapping statutes . . . allow one party to a conversation to record the conversation" unless the interception is done

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

primarily for a criminal or tortious purpose).[3]  Plaintiffs cannot invoke the crime-tort exception for multiple reasons.

**First**, as the Court held in dismissing the FAC, Plaintiffs cannot predicate the crime-tort exception on torts that they fail to plausibly plead.  Dkt. 59 at 11.  As in the FAC, Plaintiffs' only basis for the exception is their state privacy torts.[4]  *Compare* SAC ¶¶432–36, 593, *with* FAC ¶¶378, 490–92. As explained *infra*, Plaintiffs fail to plausibly plead those claims.  *Infra*, §§IV.D-F; *see Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (crime-tort exception does not apply where plaintiff failed to plead privacy torts).

**Second**, even if those tort claims survived (and they should not), the mere fact that Plaintiffs have pleaded separate tort claims would not be sufficient because, in analyzing the crime-tort exception, "the focus is not upon whether the interception itself violated another law; it is upon whether the **purpose** for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc*., 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted).  "This criminal or tortious purpose must be separate and independent from the act of the recording."  *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).  Here, the only torts Plaintiffs allege Renaissance intended to commit are privacy torts

---

[3] Plaintiffs have abandoned their California state wiretapping claims. *Compare* Dkt. 30, *with* Dkt. 60.  In so doing, they abandoned any third-party "aiding-and-abetting" theory of liability, because ECPA (and the substantively identical WESCL) does not provide for civil aiding-and-abetting liability.  *See Joiner v. NHL Enters., Inc*., 2025 WL 2846431, at *7 n.6 (S.D.N.Y. Aug. 29, 2025).

[4] To the extent Plaintiffs may argue that their allegations that Renaissance's disclosure violates COPPA and FERPA, *see e.g.*, SAC ¶¶433–34, constitute a separate "tortious intent" for purposes of the crime-tort exception, that argument is unavailing.  Violations of COPPA and FERPA—which contain no private right of action—are neither a "crime" nor a "tort."  *See Camm v. Reach Fin., LLC*, 2026 WL 861670, at *5 (S.D.N.Y. Mar. 30, 2026) (crime-tort exception does not apply to disclosure of information in violation of "statute [that] does not contemplate any private right of action").  Plaintiffs also do not allege Renaissance's "primary purpose" was to violate these statutes.  Nor could they: Plaintiffs concede that Renaissance's position has been, consistent with regulatory guidance, that those statutes permit schools to consent to student data collection, SAC ¶¶296-97, 311–18, 321–30; Renaissance had no basis to believe it violated them—let alone that it collected data with the **primary purpose** to violate them.

inseparable from the act of interception. *See Caro v. Weintraub*, 618 F.3d 94, 101 (2nd Cir. 2010) ("Invasion of privacy through intrusion upon seclusion . . . is a tort that occurs through the act of interception itself.").

*Third*, Plaintiffs fail to allege that "injur[ing] Plaintiffs tortiously" was Renaissance's "*primary* motivation." *Saedi*, 2025 WL 1141168, at *12 (emphasis added) (quotation omitted). Indeed, the only actual "motivation" Plaintiffs point to is Renaissance's business motive to improve its own products. *See* SAC ¶¶432 (alleging, for ECPA claim, disclosure "for [Renaissance's] own purposes, including analyzing user behavior and developing insights regarding how students interact with its Products"), 591 (same, for WESCL). But courts in this Circuit have repeatedly rejected the defendant's profit motive as insufficient. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (holding collection of data for defendant's own "economic benefit" insufficient to invoke crime-tort exception); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *3 (C.D. Cal. Apr.11, 2024) (same, as to "commercial advantage").

As this is Plaintiffs' *third* meritless attempt to plead those claims, they should be dismissed with prejudice. *See infra*, § IV.I.

### B.   Plaintiffs Fail to Allege VPPA Elements (Count XIV)

The VPPA prohibits "video tape service provider[s]" ("VTSPs") from disclosing consumers' "personally identifiable information" where the "disclosure was made knowingly" and was not otherwise authorized. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Congress passed the statute as a "direct response" to the disclosure of Judge Bork's rental history from a video rental store during his 1987 Supreme Court nomination. *Osheske v. Silver Cinemas Acquisition Co.*, 132 F. 4th 1110, 1112 (9th Cir. 2025). Here, though, Plaintiffs seek to apply the VPPA to the purported collection of student data in the school context—a necessarily

Cooley LLP
Attorneys at Law
San Francisco

6

Renaissance's Not. of Mot. and Memo.
of P&A ISO Mot. to Dismiss SAC
No. 8:25-cv-01379-FWS-JDE

public setting in which students have a diminished expectation of privacy.[5] The divergence between these allegations and "the historical context surrounding the VPPA" supports dismissal. *See id.* ("publicly accessible sites of shared synchronous viewing" are distinct from the private video viewing contexts on which the VPPA's drafters focused); *see also Eichenberger v. ESPN, Inc.*, 876 F. 3d 979, 985 (9th Cir. 2017) ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage."). Context aside, Plaintiffs also fail to adequately allege the required VPPA elements, so their claim should be dismissed.

### 1.    Not a "Video Tape Service Provider"

A business is a VTSP within the meaning of the VPPA only if it is "engaged in the business" of conveying "prerecorded video cassette tapes or similar audio visual materials[.]"  18 U.S.C. § 2710(a)(4).

Preliminarily, Plaintiffs nowhere allege Renaissance delivered "prerecorded" content, which "[c]ourts across jurisdictions" treat as dispositive. *See Garcia v. Bandai Namco Ent. Am., Inc.*, 2025 WL 2451033, at *5 (C.D. Cal. Aug. 7, 2025) (collecting cases); *see Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (purportedly violative "content [must be] pre-recorded, rather than live" to trigger VPPA liability).

Further, courts—including in this District—interpret Section 2710(a)(4) to require that "defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D.

---

[5] *See New Jersey v. T.L.O*, 468 U.S. 325, 348 (1985) ("In any realistic sense, students within the school environment have a lesser expectation of privacy than members of the population generally. They spend the school hours in close association with each other, both in the classroom and during recreation periods. The students in a particular class often know each other and their teachers quite well.") (Powell, J., concurring); *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1267 (9th Cir. 1999) ("Students have a lesser expectation of privacy than members of the population generally[.]"); *U.S. v. Aguilera*, 287 F. Supp. 2d 1204, 1208 (E.D. Cal. 2003) (noting that the Supreme Court "treats the public school setting as an enclave of lowered expectations of privacy").

Cooley LLP
Attorneys at Law
San Francisco

7

Renaissance's Not. of Mot. and Memo.
of P&A ISO Mot. to Dismiss SAC
No. 8:25-cv-01379-FWS-JDE

Cal. 2017); *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (dismissing claim where plaintiffs failed to plausibly plead "delivery of audiovisual material is [defendant's] particular field of endeavor" or that "[defendant's] products are specifically tailored to serve audiovisual material"). But Plaintiffs do not allege hosting video content is "central to [Renaissance's] business or product" and therefore fail to plead Renaissance's products, including Nearpod, are VTSPs. *Hernandez v. Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023). Plaintiffs instead rely on barebones allegations that they viewed instructional videos through Nearpod. *See* SAC ¶¶674–75. Far from establishing that video hosting is core to Renaissance's business, the SAC confirms the opposite. It alleges Renaissance "markets and sells Products and services to K-12 schools and school districts," which are "primarily focused on assessment, practice, instruction, and student-data analytics." *Id.* ¶40. It would strain credulity for Plaintiffs to assert that the "focus" of Nearpod—a product they assert "allows teachers to create lessons with built-in activities, polls, quizzes, and immersive content like virtual reality field trips,"[6] *id.* ¶41—is video delivery. These deficiencies doom Plaintiffs' claim.[7]

### 2.     No PII Disclosure

To state a VPPA claim in this Circuit, Plaintiffs must plead that Renaissance

---

[6] The Court should disregard any attempt by Plaintiffs to suggest "virtual reality field trips" are "prerecorded video cassette tapes or similar audio visual materials[.]" 18 U.S.C. § 2710(a)(4). Such content is more akin to a video game than a film, and multiple courts have dismissed VPPA claims on similar grounds. *See, e.g.*, *Garcia*, 2025 WL 2451033, at *5-*7 (collecting cases).

[7] This deficiency has additional consequences for Plaintiffs' claim. To be a VPPA "consumer," one must be a "subscriber of goods or services from a video tape service provider," defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Because Renaissance is not a VTSP, Plaintiffs cannot have "signed up for 'goods or services' within the meaning of the VPPA" and are not "consumers." *Heather v. Healthline Media, Inc.*, 2023 WL 8788760, at *1 (N.D. Cal. Dec. 19, 2023). Even if Renaissance were a VTSP (it is not), Plaintiffs do not allege that they themselves signed up for Nearpod, which their schools made available to them. SAC ¶57. This undermines any supposed nexus between the purported subscription—which, here, would be held by their schools—and the videos allegedly viewed. *Cf. Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959, 966 (N.D. Cal. 2025) (finding plaintiff herself paid for a subscription to defendant's service, where she viewed the videos in question). This provides another, independent basis for dismissal.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

disclosed information which "readily permits an *ordinary person* to identify a particular individual as having watched certain videos." *Eichenberger*, 876 F. 3d at 985 (citation modified); *see also* 18 U.S.C. § 2710(a)(3) (defining "personally identifiable information" ("PII") under the VPPA). They have not done so.

Courts routinely assess the technical context of the allegedly disclosed data when considering whether this standard has been met. A device serial number cannot be PII under the VPPA because an ordinary person could not use the number to identify the individual who watched particular videos. *Eichenberger*, 876 F. 3d at 986. Nor are identifiers consisting of "unique string[s] of numbers[.]" *Perry v. Cable News Network, Inc.*, 854 F. 3d 1336, 1339 (11th Cir. 2017). And, as this Court previously held, platform usernames not linked to users' real names, mailing addresses, or other identifiers are also not PII. *See N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *12 (C.D. Cal. Dec. 12, 2025) (Slaughter, J.) (dismissing claim where plaintiffs alleged only that their username was disclosed to a third party because such information is insufficient to identify plaintiffs).

Here, as in the cases above, Plaintiffs fail to plead disclosure of information an ordinary person could use to identify them. The SAC asserts only that Renaissance "generates event transmissions" when students watch instructional videos using Nearpod and "send[s] these communications to Mixpanel along with a student's unique identifier." SAC ¶152. Plaintiffs contend these "event transmissions" include four undefined data points: (i) "Join Session," (ii) "Student Activity Submission," (iii) "Interactive Video Play," and (iv) "Drawit Socket Connection." *Id*. But Plaintiffs nowhere allege that the "event transmissions" actually identify the title of any video watched by a particular student, or that they include students' names or other identifying information like their address, email, or phone number.

The only "unique identifier" allegedly "associated" with the "event transmissions" is the "Mixpanel Distinct ID." The "Distinct ID" allegedly links a student's Nearpod activity to other actions they may have taken, but Plaintiffs do not

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

allege it contains PII or could permit an ordinary person to identify an individual student. *Id.* ¶¶156, 161. To the contrary, the SAC concedes the "Distinct ID" can only identify a student "***[i]f Mixpanel has collected additional information about the student from other sources***," in which case "the Mixpanel Distinct ID is also associated with additional attributes, including the student's name . . . ," *id.* ¶164 (emphasis added), or when Renaissance's internal "integration associates" the Distinct ID "with identifying student information including the student's first and last name and other profile attributes," *id*. ¶680. Plaintiffs do not allege that ***Renaissance provides*** Mixpanel information sufficient to "associate" the Distinct ID with an individual student's PII (only that Mixpanel may separately know such information from other sources), let alone that any information Renaissance provides would allow an "ordinary person" to identify a student. *Eichenberger*, 876 F. 3d at 985. These deficiencies doom Plaintiffs' VPPA claim and distinguish this case from those where disclosed data was capable of identifying specific individuals. *Cf., e.g.*, *Chandra v. Prager Univ. Found.*, 2026 WL 4344938, at *2–*3 (C.D. Cal. Jan. 26, 2026) (concluding unique, numerical identifiers "coupled with video viewing histories are PII under the VPPA" when the identifiers enable "an ordinary person" to access the user's Facebook profile).

### 3.    No Knowing Transmission of PII

The VPPA is not "a strict liability statute." *Mollett*, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012). Plaintiffs must also plead scienter—*i.e.*, that Renaissance "***actually knew*** that it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—*i.e.*, that given the user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (emphasis added). Under *Eichenberger,* this means Plaintiffs must allege facts showing Renaissance knew it was disclosing information an ordinary person could use to identify them and their video watching history.

Plaintiffs do not satisfy this requirement. The SAC never comes close to

Cooley LLP
Attorneys at Law
San Francisco

10

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

asserting that Renaissance actually knew the information it allegedly disclosed could permit an ordinary person to identify Plaintiffs and the videos they supposedly watched. Assertions Renaissance allegedly acted intentionally or knowingly in other contexts cannot cure this deficiency. *See, e.g.*, SAC ¶¶106, 116, 428, 497, 587, 683. Plaintiffs therefore fail to plead the requisite scienter.

### C.     Plaintiffs Fail to Plausibly Plead UCL Standing or Any Prong (Count II)

***Standing.*** Plaintiffs' UCL claim must be dismissed, again, because Plaintiffs have not adequately alleged lost money or property sufficient to confer UCL standing. The SAC has not cured the deficiencies the Court identified in its prior Order, s*ee* Dkt. 59 at 12–14, and Plaintiffs have not modified ***any*** of the specific paragraphs in the FAC which the Court found insufficient to establish economic harm. *Compare* FAC ¶¶428, 330–31 & 55 *with* SAC ¶¶449, 375–76 & 60.

Plaintiffs' new allegations also do not meaningfully address the Court's concern that the FAC's "theory [of UCL standing] requires making multiple logical leaps—including that a market for student data collected pursuant to corporate contracts with schools would exist and that Plaintiffs could and would have participated in such a market if it existed[.]"[8] Dkt. 59 at 13. Plaintiffs now claim they "would consider participating in a market for their information" if certain preconditions were met. *See* SAC ¶¶361–65. But their examples are untethered to the Court's analysis (*i.e.*, whether "a market for student data collected pursuant to corporate contracts with schools" exists). Plaintiffs instead point to: (i) a consumer research service focused on monitoring consumers' search activity, (ii) a media ratings organization, and (iii) the notion that "certain scientific research involving human subjects is federally regulated." *Id.* ¶¶362–70. These amendments are unresponsive to the Court's well-founded concern that the notion these Plaintiffs

---

[8] To start, paragraphs 35–38 and 48 advance no allegations as to how Plaintiffs specifically were supposedly harmed by Renaissance and should be disregarded.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

would commercialize their purportedly sensitive educational data "is rife with speculation," and insufficient for UCL standing. Dkt. 59 at 13 (collecting cases). The UCL claim must therefore be dismissed, again, on the same grounds—and given the futility of further amendment, with prejudice.

Even if Plaintiffs adequately alleged UCL standing (they did not), their claim would still fail because they have not plausibly pled the unlawful, unfair, or fraudulent prongs.

***Unlawful Prong***. The deficiencies identified herein with respect to Plaintiffs' other statutory claims preclude liability under the UCL's unlawful prong. *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). Plaintiffs' common-law claims, meanwhile, cannot form the basis of an unlawful-prong claim. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F. 3d 1035, 1043–44 (9th Cir. 2010) (common-law violations are insufficient for UCL unlawful-prong claims). This leaves Plaintiffs' remaining theory: that Renaissance's supposed violations of COPPA and FERPA provide a basis for a UCL unlawful-prong claim. *See* SAC ¶¶452–53.

That theory fails for two reasons. ***First***, this pleading strategy reflects a deliberate attempt to circumvent both statutes, neither of which contains a private right of action. *See Jones v. Google LLC*, 73 F. 4th 636, 641 (9th Cir. 2023) ("COPPA does not authorize a private right of action."); *Gonzaga University v. Doe*, 536 U.S. 273, 279–80 (2002) (FERPA does not create a private right of action or an enforceable right for purposes of 42 U.S.C. § 1983). ***Second***, Plaintiffs do not adequately allege a violation of either statute. Their theory that Renaissance collects student information without requisite consent is belied by the applicable regulatory framework. For over two decades, Federal Trade Commission guidance has confirmed that, under COPPA, schools can consent on behalf of parents to the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

collection of personal information for educational purposes,[9] and FERPA regulations authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without express parental consent. *See* 34 C.F.R. § 99.31(a)(1)(i)(A). Plaintiffs acknowledge Renaissance adheres to this guidance. *See* SAC ¶10.

***Unfair Prong***. As best Renaissance can discern, Plaintiffs' unfairness-prong claim derives from the same underlying conduct they contend creates liability under their other causes of action, including the unlawful prong, *see, e.g.*, *id.* ¶447, and therefore fails. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (where an unfair-prong claim "overlap[s] entirely with . . . the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive").

***Fraudulent Prong***. The SAC does not explicitly invoke the UCL's fraudulent prong. *See* SAC ¶¶439–55. If it had, the claim would fail because Plaintiffs do not plead exposure to any of Renaissance's alleged misrepresentations before their children used Renaissance's products, let alone plead with Rule 9(b) particularity that they relied on those misrepresentations to their detriment. *See Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (collecting cases); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) ("actual reliance on the allegedly deceptive or misleading statements," along with causation, required for UCL claim).

In sum, Plaintiffs provide no basis to depart from the Court's prior finding that they fail to adequately allege UCL standing. The Court should dismiss with prejudice, as further amendment would be futile.

---

[9] *See* Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59903 (Nov. 3, 1999) (online operators can rely on school authorization); Complying with COPPA: Frequently Asked Questions, n. N, FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#N20COPPA%20AND%20SCHOOLS (last visited Apr. 12, 2026) ("schools may act as the parent's agent and can consent under [the Children's Online Privacy Protection Act ('COPPA')] to the collection of kids' information on the parent's behalf").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

**D.    Plaintiffs Fail to State Claims for Invasion of Privacy (Count III) and Intrusion Upon Seclusion (Counts IV and XII)**

Plaintiffs' claims for invasion of privacy under the California Constitution (Count III) and intrusion upon seclusion under California and Kansas law (Counts IV and XII) fail as a matter of law and should be dismissed. California and Kansas both adopted the Restatement (Second) of Torts approach to such claims, which requires (1) a reasonable expectation of privacy, and (2) an intrusion on that privacy (3) that would be highly offensive to a reasonable person. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (courts often analyze constitutional invasion of privacy and common-law intrusion claims together); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (adopting Restatement (Second) of Torts § 652B formulation of intrusion upon seclusion).[10]  Plaintiffs cannot establish any of these elements.

***No Reasonable Expectation of Privacy.***    Plaintiffs cannot establish a reasonable expectation of privacy ("REP") in any data described in the SAC. A REP must be "founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 42 (1994); *see Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1040 (D. Kan. 1998) (an intrusion must constitute "conduct to which the reasonable person would strongly object").

***First***, any invasion of privacy must be covert. *Hernandez*, 47 Cal. 4th at 286; *Houck v. Corr. Corp., of Am.*, 2017 WL 747847, at *1 (D. Kan. Feb. 27, 2017) (intrusion claim requires "***prying*** into his private affairs," e.g., by "looking into his upstairs windows with binoculars or tapping his telephone wires") (emphasis

---

[10] Kansas courts do not use the term "reasonable expectation of privacy" in analyzing intrusion claims, but they apply a substantively equivalent standard, requiring that the defendant have intruded upon the plaintiff's "zone of privacy," *Houck v. Corr. Corp. of Am.*, 2017 WL 747847, at *2 (D. Kan. Feb. 27, 2017), through conduct "to which the reasonable person would strongly object." *Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1040 (D. Kan. 1998).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

added).[11]   Here, every piece of at-issue data was submitted through Renaissance's platforms.[12]  Courts "have been unwilling" to recognize a cognizable privacy interest in such data.  *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021)); *see also Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (dismissing claims where defendant used third-party software to transmit visitor data, because plaintiff failed to allege tracking of "her data outside the [defendant's] website"); *see United States v. Stratton*, 229 F. Supp. 3d 1230, 1241 (D. Kan. 2017) ("Defendant lost any reasonable expectation of privacy in his messages once they were delivered to the recipient.").  This failure alone requires dismissal.[13]

***Second***, Plaintiffs concede that community norms do not support a REP in data collected through edtech platforms.  The SAC alleges that an average school district accesses nearly 3,000 edtech tools per year, an average student accesses nearly 50, and 75% of K-12 public schools use Nearpod alone.  SAC ¶¶39, 41.  Plaintiffs further assert that students are required to "participate in surveys . . . at least twice a year" through SAEBRS.  *Id.* ¶69.  These allegations confirm that the collection of student data through third-party edtech tools is not a secret or novel practice—it is ubiquitous and institutionally sanctioned.[14]

---

[11] A claim can also be stated under Kansas law by alleging physical "interference…of a person's physical being," *see Houck*, 2017 WL 747847 at *1, but the SAC only asserts a "prying" theory, SAC ¶642.

[12] And except for certain elementary school students, whose teachers input responses to SAEBRS surveys "on their behalf," *id.* ¶67, all data originates from students' ***direct*** inputs.  *See, e.g.*, *id.* ¶¶55–60 (students submitted responses through Nearpod lessons), 62–63 (students participated in FastBridge assessments), 71–72 (students accessed DnA through their browsers).

[13] Plaintiffs make a passing reference to the Fourth Amendment in an effort to substantiate their purported privacy interests.  SAC ¶463 (citing *Riley v. California*, 573 U.S. 373 (2014)).  But that is a red herring.  The Fourth Amendment constrains government actors, not private companies like Renaissance.  And *Riley* is inapposite on its own terms: the SAC does not allege that Renaissance accessed any data stored on Plaintiffs' devices.

[14] Because FERPA and COPPA—either expressly or as interpreted by relevant regulatory authorities—permit  schools to hire service providers to maintain and process student records, *see*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

Further, where, as here, challenged conduct reflects broadly accepted community norms, no REP exists. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 629 (N.D. Cal. 2021) ("[T]he relevant question here is whether a user would reasonably expect that [defendant] would have access to the data."). That Plaintiffs accessed Renaissance's services exclusively on school-issued devices underscores the absence of any REP. *See* SAC ¶¶26–27, 29–30. *See TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 452 (2002) (social norms surrounding workplace computer use "effectively diminish the … reasonable expectation of privacy"). Particularly given courts' recognition that students in public schools have "significantly diminished expectations of privacy," *see supra* n.5, community norms do not support a REP in the data students provided to Renaissance.[15]

***No Intrusion.*** Plaintiffs' privacy claims independently fail because the SAC does not allege any cognizable intrusion. As this Court already recognized, "one cannot logically intrude into communications to which they are a party." Dkt. 59 at 7 n.1 (quotation omitted). Because the SAC's allegations pertain only to data Renaissance received through the Products, *see supra*, n.12, it cannot have "intruded upon [Plaintiffs'] seclusion or private affairs," *Settle v. Hendrix*, 1993 WL 13965689, at *2 (Kan. Ct. App. Mar. 12, 1993)*; see Saedi*, 2025 WL 1141168, at *12 (plaintiff "fail[s] to sufficiently plead a claim for intrusion upon seclusion" where information was provided directly to defendant).

Plaintiffs' theory that Renaissance's alleged disclosure of data to third parties constitutes an actionable intrusion likewise fails as a matter of law. *See* SAC ¶¶468(e), 476, 642. "[I]ntrusion upon seclusion is based upon the manner in which

*supra* at 12–13, it would strain credulity for Plaintiffs to assert in Opposition that such conduct violates community norms.

[15] The SAC alleges a REP based on the purported absence of consent to Renaissance's "tracking and collection practices." SAC ¶¶478, 645. Even if that were true (it is not), "allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

an individual ***obtains*** information," not what the defendant does with it.  *Werner v. Kliewer*, 238 Kan. 289, 294 (1985) (emphasis added); *Smith-Utter v. Kroger Co.*, 2009 WL 790183, at *5 (D. Kan. Mar. 24, 2009).  And to state a claim, a plaintiff must allege that the defendant itself was "the actor that invaded" their REP.  *In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*, 2026 WL 772329, at *12 (S.D. Cal. Mar. 18, 2026).  Plaintiffs' third-party disclosure theory cannot sustain a privacy claim against Renaissance.

> ***No Highly Offensive Conduct.***  Even if a cognizable intrusion could be established (it cannot), Plaintiffs independently fail to satisfy the "highly offensive" element of their privacy claims.

Conduct qualifies as "highly offensive" only if it is "so outrageous in character, and so extreme in degree, as to go ***beyond all possible bounds of decency***."  *Rowell v. King*, 2005 WL 2099718, at *2 (D. Kan. Aug. 30, 2005) (emphasis added).  Plaintiffs' allegations come nowhere near clearing that "high bar."  *Hammerling*, 615 F. Supp. 3d at 1088.

This Court already resolved this question on materially identical allegations.[16]  In dismissing the FAC's public-disclosure-of-private-facts claim, the Court held that "the ubiquitous practice of sharing user data with third-party service providers" here "can be understood to defy social convention and expectation so as to be highly offensive to a reasonable person."  Dkt. 59 at 9 (citation modified).  If the disclosure of that data is not highly offensive, then Renaissance's collection of it through its own platforms  cannot be either.[17]  *See* SAC ¶484.  The Court's holding accords with

---

[16] Plaintiffs scarcely amended their allegations regarding Renaissance's data-collection. *Compare* FAC ¶¶18, 75–83, 141–144 (alleging that Renaissance automatically collects and uses student data without effective consent and monetizes that information) *with* SAC ¶¶6–12, 19–21, 75–83, 97–98, 141–144 (same).

[17] Plaintiffs' third-party data-sharing allegations are likewise unchanged. *Compare* FAC ¶¶137, 141–147, 152–153 (alleging based on forensic analysis that Renaissance discloses student information to third parties for commercial purposes in real-time) *with* SAC ¶¶8, 33, 99–103, 118–120 (repeating the same allegations, adding only the names of specific third-party recipients and the assertion that Renaissance does not disclose those recipients in its terms and policies).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

the overwhelming weight of authority in this Circuit confirming that routine, non-consensual commercial data-collection practices, including sharing data with third parties, is not highly offensive. *See* SAC ¶483; *see*, *e.g., Morilha v. Alphabet Inc.*, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (collecting and disclosing user data to third parties is "routine commercial behavior"; even disclosing social security number is not "egregious"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (same); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (collecting data was not an egregious breach of social norms, "[e]ven assuming [it] was transmitted [to third-parties] without Plaintiffs' knowledge and consent"); *T.T. v. Cnty. of San Diego*, 2020 WL 6118781, at *5 (S.D. Cal. Oct. 16, 2020) ("vague and conclusory statements" alleging "acts of concealment" and "suppression of true facts" lacked the "factual enhancement" necessary under plausibility standard, warranting dismissal).

Nothing in the SAC warrants a different result. Plaintiffs' allegations remain substantively identical to those in the FAC: Renaissance allegedly collected student data through its own platforms and shared it with third-party analytics providers. The practice of classroom data collection is, by the SAC's own account, consistent with the ubiquitous edtech practices pervading K-12 education, *see supra*, 15–16, and therefore cannot plausibly "go beyond all possible bounds of decency." *Rowell*, 2005 WL 2099718, at *2; *see Mireskandari v. Daily Mail & Gen. Tr. PLC,* 2013 WL 12114762, at *24 (C.D. Cal. Oct. 8, 2013) ("disclosure of [educational and academic] information is not a serious invasion of privacy . . . under the California Constitution"); *Houck*, 2017 WL 747847, at *2 ("both the manner of intrusion as well as the nature of the information acquired" must be highly offensive).

Plaintiffs' invocation of COPPA and FERPA does not salvage their claims— it undermines them. *See* SAC ¶483. As a threshold matter, "legally flawed" conduct is not necessarily "highly offensive." *Rowell*, 2005 WL 2099718, at *2 (quoting

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

Restatement (Second) of Torts § 46 cmt. d); *see Setzer v. Farmers Ins. Co.*, 185 F. App'x 748, 755 (10th Cir. 2006) (affirming dismissal of intrusion claim notwithstanding defendant's unlawful conduct).  More fundamentally, Renaissance's good-faith adherence to longstanding FTC guidance expressly authorizing the school-consent framework Plaintiffs challenge, *see supra* n.9, forecloses any finding of highly offensive conduct.  Conduct conforming to regulatory directives cannot, as a matter of law, be characterized as "beyond all possible bounds of decency."  *Rowell*, 2005 WL 2099718, at *2.

Because Plaintiffs fail to plead any of the requisite elements under any asserted state's law, their invasion of privacy claims must be dismissed.

### E.    Plaintiffs' Public-Disclosure-of-Private-Facts Claims Fail (Counts V, VI, and XIII)

A claim for public disclosure of private facts requires (1) publicity; (2) that is highly offensive to a reasonable person; and (3) of no public interest. *See Werner*, 238 Kan. at 296; *Pachowitz v. LeDoux*, 265 Wis. 2d 631, 643 (2003); *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007).  The SAC still fails to allege these elements under Wisconsin, California, or Kansas law.

***No publicity***.  California, Kansas, and Wisconsin courts look to the Restatement (Second) of Torts for publicity, defined as communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Werner*, 238 Kan. at 296; *see also Hill*, 7 Cal. 4th at 27; *Pachowitz*, 265 Wis. 2d at 643; *Orff v. City of Imperial*, 2017 WL 5569843, at *11 (S.D. Cal. Nov. 17, 2017).

Plaintiffs allege disclosure only to certain third-party companies for specific commercial purposes, SAC ¶¶99–112, 238, but plead no facts to support that such limited disclosure renders the information substantially certain to become public knowledge.  To the contrary, given Plaintiffs' repeated emphasis on the value of their personal information to the third parties, *id.* ¶¶353, 379, 382, 390, 450, 454, it is not

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

plausible that third parties, incentivized to keep this information private, *see id.* ¶245, would instead disseminate it widely. Plaintiffs' speculation that, because cybercrime rates "are steadily increasing" and ***a different*** edtech company has been hacked, Plaintiffs' information is "vulnerable to a host of data security risks" falls far short of "publicity" for purposes of this tort. *Id.* ¶¶338–41. Even if such a disclosure had occurred (it has not), that "invasion" would be attributable to third-party bad actors, not Renaissance. *See In re PowerSchool Holdings*, 2026 WL 772329, at *12 (failure to allege defendant was "the actor that invaded Plaintiffs' reasonable expectation of privacy" was "fatal to Plaintiffs' invasion of privacy claims"). Nor can Plaintiffs explain how the mere ***risk*** of cybercrime creates substantial certainty that their information will become public.

Finally, as this Court already ruled, although Wisconsin permits a finding of publicity from disclosure to a limited audience with whom there is a special relationship and to whom disclosure would be "embarrassing," *Pachowitz*, 265 Wis. 2d at 648, that exception does not apply in this case, because no such relationship exists between the Plaintiffs and the party receiving the information, Dkt. 59 at 8–9. Plaintiffs' conclusory allegation that the alleged disclosures were "embarrassing," SAC ¶¶19, 224, 257, cannot manufacture a special relationship with Renaissance— let alone with the third parties at issue. *See Nabozny v. Optio Sols., LLC*, 583 F. Supp. 3d 1209, 1213 (W.D. Wis. 2022) (explaining "[t]he harm of the tort . . . is that private facts will become widely known, or at least known by people with a ***close relationship to the plaintiff***" (emphasis added)).

Plaintiffs' failure to allege publicity is fatal to their California, Kansas, and Wisconsin public-disclosure-of-private-facts claims. *See Zhu v. St. Francis Health Ctr.*, 150 P.3d 926 (Kan. Ct. App. 2007) (affirming dismissal of public-disclosure-of-private-facts claim because plaintiff failed to prove publicity); *Orff*, 2017 WL 5569843, at *11 (dismissing on same grounds); *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 829 (10th Cir. 2022) (finding failure "to allege

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

anything close to the required publicity element" where Plaintiff alleged "private—not public—disclosure").

**Disclosure Not Highly Offensive**.   California, Kansas, and Wisconsin all require that the alleged disclosure be "highly offensive to a reasonable person." *See Dotson v. McLaughlin*, 216 Kan. 201, 207–08 (1975); *Hogan v. Weymouth*, 2020 WL 8028111, at *10 (C.D. Cal. Nov. 13, 2020); *Bogie v. Rosenberg*, 705 F.3d 603, 612 (7th Cir. 2013).

Plaintiffs argue Renaissance's failure to obtain Plaintiffs' consent to disclose their data—paired with Renaissance's profit motive—render the disclosure highly offensive.   SAC ¶¶497, 502, 512, 667.   Plaintiffs misstate the law.   Consent may preclude a public-disclosure-of-private-facts claim, but **lack** of consent does not, by itself, make a disclosure highly offensive.   *See supra,* n.15; *Bogie*, 705 F.3d at 612 (lack of consent "does not add to a conclusion that the intrusion could have been highly offensive"); *Hassan v. Facebook, Inc.*, 2019 WL 3302721, at *2 (N.D. Cal. July 23, 2019) (dismissing claim where defendant alleged plaintiff disclosed "personal information, personal messages, and personal activities to known and unknown companies without consent").   A defendant's profit motive also does not render a disclosure "highly offensive." *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1043 (2009) ("[t]he motives of a person charged with invading the right are not material with respect to the determination whether there is a right of action"); *Dawson v. Assocs. Fin. Servs. Co. of Kansas*, 215 Kan. 814, 822 (1974) ("the precise motives for invasion of privacy are unimportant").

Instead, courts look to whether the facts disclosed reflect "intimate details of [a] plaintiff's private life." *See Reade v. New York Times Co.*, 2022 WL 2396083, at *7 (E.D. Cal. July 1, 2022) (dismissing claim regarding allegedly disclosed Social Security number because "it discloses nothing about the individual's conduct or personal life").   Neither technical metadata[18]—including browser language, response

---

[18] *See* SAC ¶¶76, 158–159, 163, 177, 198, 205, 208, 265, 351.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

time, and participation and time spent in lessons—nor academic data and metadata[19] are intimate facts of private life, and Plaintiffs' conclusory allegations that such data are "highly sensitive" and "personal" in nature, SAC ¶¶497, 502, 512, 667, do not make them so. *See Morilha*, 2024 WL 5205542, at *4 (disclosure of "IP addresses and geolocation data is not sufficiently 'egregious' to support an invasion of privacy claim"); *D'Angelo* 726 F. Supp. 3d at 1206; *Karimi v. Golden Gate Sch. of L.*, 361 F. Supp. 3d 956, 980 (N.D. Cal. 2019) (same, for law student's suspension in alleged violation of FERPA); *Nabeel v. Taylor Swift Prods., Inc.*, 2024 WL 4444483, at *3 (C.D. Cal. July 31, 2024) (same, for "mental illness" and "family issues").

And while Plaintiffs assert (implausibly, given Renaissance's substantial disclosures about service providers) that they could not reasonably expect Renaissance's alleged data collection and disclosure, courts have held that data collection and disclosure to third parties constituting "routine commercial behavior" is not highly offensive. *Low*, 900 F. Supp. 2d at 1025; *accord Hammerling*, 615 F. Supp. 3d at 1090. As discussed *supra*, students do not have a REP in electronically transmitted information or the classroom. *Supra*, 15–16. And this Court has already held that Plaintiffs' FAC failed to plausibly plead that "the ubiquitous practice of sharing user data with third-party service providers . . . def[ies] social convention and expectation so as to be highly offensive to a reasonable person." Dkt. 59 at 9 (citation modified). Plaintiffs' SAC contains no new allegations justifying a different conclusion.[20]

---

[19] *See* SAC ¶¶4, 19, 53, 61, 69, 78–79, 81, 154, 161.

[20] To the extent Plaintiffs may point to alleged "social-emotional" data collected in SAEBRS as the "highly offensive" disclosure, the SAC is devoid of factual allegations that such data was disclosed to any third party. *See*, *supra*, n.2. Instead, Plaintiffs merely **speculate** about the offensiveness if such a disclosure of SAEBRS data were to occur. *See* SAC ¶70 ("[a] person of ordinary sensibilities **would be** highly offended" if disclosed). Such allegations are too conclusory to state a claim. *See Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *8 (C.D. Cal. Aug. 4, 2025) ("alleg[ation]s that Defendant, through its myriad of products, collects certain data from student users and discloses that data to 'third parties'" are insufficient to state a claim where the complaint failed to allege "what type of data" was provided "to whom"). The data also does not arise to the level of "highly intimate" facts. *Nabeel*, 2024 WL 4444483, at *3.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

***Failure to Plead No Public Concern***.  Plaintiffs also fail to plead that the facts disclosed were of no "legitimate concern to the public," *Werner*, 238 Kan. at 296; *see also Taus*, 40 Cal. 4th at 717 (2007) (same), or that Renaissance acted "unreasonably or recklessly" as to whether there is a "legitimate public interest" or with "actual knowledge" that none existed, *Pachowitz*, 265 Wis. 2d at 643.

Plaintiffs' bare recitation that there is no "legitimate public interest," SAC ¶¶336–337, 498, 513, 663, is insufficient.  *See Schutte v. Ciox Health, LLC*, 574 F. Supp. 3d 618, 624 (E.D. Wis. 2021).  The SAC offers no basis to discount the public interest in the availability of educational software in schools.

Plaintiffs' conclusory statements and threadbare recitals of the elements are fatal to their claims.

## F.   Plaintiffs' Unjust Enrichment Claims Fail (Counts VII and XI)

Plaintiffs' Kansas and Wisconsin unjust enrichment claims must be dismissed for the same reason the Court dismissed the Wisconsin claim in the FAC (Dkt. 59 at 19): failure to plead (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  *See J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512 (1988); *Giasson v. MRA - Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 939 (E.D. Wis. 2025)

***No tangible benefit***.  Kansas and Wisconsin courts require particularized allegations about ***what*** the benefit was and ***how*** it was received.  *See In re Emporia Prop. Grp., LLC*, 2022 WL 567727, at *7 (Bankr. D. Kan. Feb. 24, 2022) (dismissing unjust enrichment claim that "contain[ed] nothing but a conclusory allegation of benefit" and "fail[ed] to allege what was received, from whom the benefit was received, and how the benefit was received"); *Giasson*, 777 F. Supp. 3d at 940–41 (dismissing PII-related unjust enrichment claim for lack of "any contextualizing information as to what role Plaintiff's PII played in Defendant's business operation

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

and how Defendant's retention of her PII benefitted Defendant in some measurable, economic sense").

Plaintiffs' allegations fail to establish this "what" and "how." Plaintiffs appear to allege that the provision of their personal information to Renaissance, without more, constitutes a benefit. SAC ¶¶524, 618. Notably absent is any allegation as to how that information benefitted Renaissance "in some measurable economic sense." *Giasson*, 777 F. Supp. at 941. Plaintiffs' mere speculation that Renaissance's success "could not have" occurred without Plaintiffs' information, SAC ¶¶535, 630, is insufficient.

***Not inequitable***. Even if this Court were to find Plaintiffs adequately alleged a benefit, the SAC cannot plead that Renaissance's collection and use of Plaintiffs' information is inequitable because Plaintiffs receive Renaissance's sophisticated educational products ***in exchange for*** this benefit, for free. SAC ¶¶537, 633 (alleging Plaintiffs receive educational services "[i]n exchange" for the benefit). Furthermore, Plaintiffs concede that they receive "improved" educational products ***because of*** Renaissance's use of their personal information. SAC ¶¶534, 629. Using Plaintiffs' information to provide Plaintiffs "improved" educational products hardly approaches the level of enrichment "at the expense of another contrary to equity" required for unjust enrichment. *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 558–59 (1977). Courts reject unjust enrichment claims where, as here, Plaintiffs received something in exchange for the benefit. *See Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *6 (E.D. Wis. 2019); *Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 843 (E.D. Wis. 2021).

Should Plaintiffs argue they were legally entitled to use Renaissance's products as part of their public education, SAC ¶¶537, 633, they are incorrect, *see Board. of Ed. v. Sinclair*, 222 N.W.2d 143, 146–48 (1974) (holding certain tools fall outside Wisconsin constitutional "free" education); *Shanahan v. IXL Learning, Inc.*, 2026 WL 982855 (9th Cir. Apr. 13, 2026) (requirement to attend school does not

Cooley LLP
Attorneys at Law
San Francisco

24

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

extend to use of in-school ed-tech software).  Where Plaintiffs receive free access to optional educational tools, which are further improved by Renaissance's use of Plaintiffs' information, there are no facts to support a finding of inequitable benefit.

### G.  Plaintiffs' Negligence Claim Fails for Lack of Concrete Damages and Causation (Count VIII)

A Wisconsin negligence claim requires "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." *Reetz v. Advoc. Aurora Health, Inc.*, 983 N.W.2d 669, 677 (Wis. App. 2022).  Plaintiffs' claim fails for the same reasons as in the FAC: they have not pleaded actual, concrete damages or causation, and Wisconsin public policy compels dismissal.

*No Actual Damages.*  Speculative or hypothetical harms alone cannot sustain a negligence claim under Wisconsin law.  A plaintiff must allege "actual damages . . ., which is harm that has already occurred or is reasonably certain to occur in the future." *Reetz*, 983 N.W. 2d at 677 (citing *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 158 (2004)) (internal quotations omitted).  As they did in the FAC, Plaintiffs assert only two categories of purported damages: "privacy harms" and "diminution in value" in their personal data, SAC ¶¶548, 566, neither of which constitutes actual, concrete harm.  And the conclusory additional allegations pleaded in the SAC do not justify diverging from the Court's prior ruling.

*First*, Plaintiffs' conclusory allegations that Renaissance's data collection and sharing practices resulted in "privacy harms," SAC ¶548, fall far short of the requisite concrete harm.  Plaintiffs identify five purported privacy harms: invasions of privacy, compromised data security, algorithmic profiling, wrongful data monetization, and forced trade-offs between education and other rights.  SAC ¶¶332–89.  Yet they do not allege Renaissance's data security systems are deficient, nor that algorithmic profiling has resulted in any adverse educational decisions against their children.  The

SAC is devoid of **any** concrete adverse effects flowing from the alleged privacy violations. *Cf. Reetz*, 983 N.W. 2d at 677 (finding overdraft fees actually incurred and time lost mitigating fraud were concrete harms); *Bauer v. Fincantieri Marine Grp., LLC*, 31 N.W.3d 156, ¶16 (Wis. App. 2025), *review dismissed*, 2026 WI 7 (finding no injury for "entirely prospective and hypothetical risk of identity theft").

*Second*, as explained *supra*, the SAC alleges no new facts to save Plaintiffs' theory that Renaissance "diminished the value of Plaintiffs' personal information," SAC ¶375, and "deprived students of their choice of whether to participate in the data market at all," *id.* ¶376. *See supra*, §IV.C; *Giasson*, 777 F. Supp. 3d at 929.

*No Causation.* Insofar as Plaintiffs allege the "privacy harm" they suffered is the invasion of privacy itself, *see* SAC ¶¶332–37, 548, that claim collapses the alleged breach and harm, and thus necessarily fails for lack of a causal connection between Renaissance's alleged breach of the duty and the Plaintiffs' injury. *Cf. Paul v. Skemp*, 625 N.W.2d 860, 870 (Wis. 2001) ("[T]he negligence and its result—an injury—should be considered separately. The negligence must cause an injury before there is an accrual of a claim."). Plaintiffs' diminution of value theory fares no better, as there are no allegations as to how Renaissance hampered their participation in any data market. *See supra*, §IV.C.[21]

Plaintiffs also cannot plead causation because their alleged damages rest largely on an intervening cause: potential misuse by third parties outside Renaissance's control. "Wisconsin courts haven't hesitated to preclude [negligence] liability when . . . there was an intervening cause with a more direct causal relationship to the harm." *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, 2022 WL 1500447, at *6 n.4 (W.D. Wis. May 12, 2022) (collecting cases), *aff'd*, 2025 WL

---

[21] Plaintiffs appear to abandon their negligence *per se* claim, which was deficient, since they cannot establish violation of a "safety statute" as required. Instead, they attempt to shoehorn Renaissance's alleged COPPA violations into a general negligence framework where the purported violation "serve[s] as support for the existence of a standard of care owed to Plaintiffs and Nationwide Class members by Renaissance." SAC ¶556. Nonetheless, Plaintiffs' negligence claim fails for lack of actual damages caused by Renaissance's conduct.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

800237 (7th Cir. Mar. 13, 2025). Plaintiffs' allegations depend on the speculative premise that **third parties** might misuse shared data. *See, e.g.,* SAC ¶¶99–224. Renaissance may lawfully disclose certain student data to third parties, including to "allow or improve operability and functionality." Cal. Bus. & Prof. Code § 22584(b)(4). Thus, any subsequent third-party misuse is an intervening act that severs the causal link between Renaissance's alleged conduct and Plaintiffs' claimed damages.

**Public Policy Compels Dismissal.** Allowing Plaintiffs' negligence claim to proceed is against Wisconsin public policy because it "would open up the possibility that no sensible or just stopping point exists." *Pelnar v. Rosen Sys., Inc.*, 964 F. Supp. 1277, 1284 (E.D. Wis. 1997). The SAC's requested relief would disrupt the edtech industry, imposing sweeping consequences on the education system—precisely the limitless liability Wisconsin law seeks to prevent.

### H.  Plaintiffs' WDTPA Claim Fails for Lack of an Alleged Commercial Transaction or Pecuniary Loss (Count X)

Wisconsin's Deceptive Trade Practices Act (WDTPA) requires that "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss." *Thermal Design, Inc. v. Am. Soc'y. of Heating, Refrigerating and Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014); Wis. Stat. Ann. § 100.18. Plaintiffs fail to plead their WDTPA claim for the same reasons as in the FAC: they cannot point to a relevant commercial transaction which materially induced any cognizable pecuniary loss.

**No Commercial Transaction.** As the Court held in dismissing the FAC's WDTPA claim, Plaintiffs' failure to plead a commercial transaction is dispositive. "The purpose of WDTPA is to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." Dkt. 59 at 18 (citing *Thermal Design*, 755 F.3d at 837) (citation modified). In other words,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

"the WDTPA applies by its terms to *commercial transactions*." *Id.* (emphasis in original) (citation modified) (affirming dismissal of WDTPA claim because misrepresentations were unrelated to a commercial transaction); *see also Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008) (finding noncommercial misrepresentations insufficient to support WDTPA claim). Because Plaintiffs use the at-issue products as part of their compulsory education, *see* SAC ¶223, they "are not in a position to 'choose one product over another,'" and thus "the allegedly misleading statements 'were not part of a commercial transaction.'" Dkt. No. 59 at 19 (quoting *Thermal Design*, 755 F.3d at 837). To the extent any commercial transaction existed, it was between Renaissance and Plaintiffs' *school districts*, not *Plaintiffs*. *See*, *e.g.*, SAC ¶¶330, 60–09.

*No Pecuniary Loss.* The WDTPA claim also fails for lack of alleged pecuniary loss. *See Mueller v. Harry Kaufmann Motorcars, Inc.*, 859 N.W.2d 451, 459 (Wis. App. 2014) (clarifying that "pecuniary loss" under the statute "encompass[es] any *monetary* loss. . . subject to the claimant's proof" (emphasis in original)). As in the FAC, Plaintiffs' only alleged monetary loss is the diminution of value in their data. *See* SAC ¶611. But as discussed *supra*, § IV.C., this theory is wholly speculative and factually unsupported by the SAC. It cannot support a WDTPA claim.

*No Material Inducement.* Plaintiffs have not pleaded the required "causal connection between the untrue, deceptive, or misleading representation and the pecuniary loss, which requires a showing of material inducement." *Carmody v. Byline Bank*, 7 N.W.3d 714 (Wis. App. 2024). This requires the misleading representation was a "significant factor contributing to" the decision which led to pecuniary loss. *See* Wis. JI—Civil 2418A.[22] The SAC alleges the contrary: that

---

[22] *See also* Wis. JI—Civil 2418A (2/2025) ("In determining whether (plaintiff)'s loss was caused by the (assertion) (representation) (statement), the test is whether (plaintiff) would have acted in its absence.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

Renaissance "did not provide notice of its data practices to Plaintiffs or their parents before Plaintiffs began using their Renaissance accounts." SAC ¶279. *See Giasson*, 777 F. Supp. 3d at 944 (dismissing claim where "[t]here is no factual allegation in the complaint that suggests that Defendant's representations in its privacy policy played any role in Plaintiff's decision to disclose her PII"). Plaintiffs have not alleged Renaissance "materially induced" them to provide their personal information.

## I.   The SAC Should be Dismissed with Prejudice

Although leave to amend is ordinarily freely given, "liberality in granting leave to amend is subject to several limitations," including "prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.*

Plaintiffs have had three opportunities, yet still fail to plead their claims. Further amendment would be futile. *See Kiprilov v. National Bd. of Med. Examiners*, 2016 WL 6900724, at *2 (C.D. Cal. Oct. 24, 2016) (dismissing second amended complaint where, "[d]espite multiple opportunities, Plaintiff has failed to assert actionable claims or to correct the deficiencies identified in the Court's earlier order, and it appears that any further attempt to amend would be futile"). The Court should deny leave to amend.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

Dated:  May 1, 2026                    COOLEY LLP


                                       By: */s/ Matthew D. Brown*
                                           Matthew D. Brown

                                       Attorneys for Defendant
                                       RENAISSANCE LEARNING, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

Pursuant to Local Rule 11-6.2, I hereby certify the foregoing Motion to Dismiss Plaintiffs' Second Amended Complaint, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and text of this certification, comprises 9,938 words, in compliance with Local Civil Rule 11-6.2.

Dated: May 1, 2026                          COOLEY LLP

                                            By:    */s/ Matthew D. Brown*
                                                   Matthew D. Brown

                                            *Attorneys for Defendant*
                                            *RENAISSANCE LEARNING, INC.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30

RENAISSANCE'S NOT. OF MOT. AND MEMO.
OF P&A ISO MOT. TO DISMISS SAC
NO. 8:25-CV-01379-FWS-JDE