Melisa A. Rosadini-Knott
mrosadini@peifferwolf.com
(California Bar No. 316369)
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
323-982-4109

*Counsel for Plaintiffs and the Proposed Class*

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian AMY WARREN, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> RENAISSANCE LEARNING, INC. <br><br> *Defendant*. | Case No.: 8:25-cv-01379-FWS-JDE <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RENAISSANCE LEARNING, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Date:  September 10, 2026 <br> Time:  10:00 a.m. <br> Courtroom: 10D <br><br> Pretrial Conference: March 9, 2028 <br> Trial Date: April 4, 2028 |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ...................................................................................................... 8

ARGUMENT ............................................................................................................. 9

A. Privacy laws do not absolve Renaissance of its duty to obtain parental consent ............................................................................................................ 9

FERPA does not provide a private defense ............................................. 10

KOPIPA does not obviate parental-consent requirements ..................... 11

COPPA does not permit schools to provide consent in lieu of parents ... 12

B. The party exception does not foreclose Plaintiffs' wiretapping claims ......... 15

C. Plaintiffs plausibly allege a claim of invasion of privacy under the California Constitution and claims of intrusion upon seclusion under California and Kansas common law ...................................................................................... 18

1. Plaintiffs plausibly allege a reasonable expectation of privacy ............... 18

2. Plaintiffs plausibly allege an intrusion ................................................... 24

3. Plaintiffs plausibly allege highly offensive conduct .............................. 25

D. Plaintiffs plausibly allege claims for public disclosure of private facts ........ 27

1. Plaintiffs plausibly allege public disclosure ........................................... 28

2. Plaintiffs plausibly allege highly offensive conduct .............................. 30

3. Plaintiffs plausibly allege that their data is of no legitimate concern to the public ................................................................................................... 34

E. Plaintiffs plausibly allege facts supporting their unjust enrichment claims ... 34

1. Plaintiffs plausibly allege a benefit conferred on Renaissance ............... 35

2. Plaintiffs plausibly allege that it is inequitable for Renaissance to retain the benefit .............................................................................................. 36

CONCLUSION ........................................................................................................ 38

# TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*A.B. by and through Turner v. Google LLC,*
    737 F. Supp. 3d 869 (N.D. Cal. 2024)...............................................................26, 31, 34

*B.C. v. Plumas Unified School District,*
    192 F.3d 1260 (9th Cir. 1999) .........................................................................22-23

*Board of Educ. v. Sinclair,*
    222 N.W.2d 143 (Wis. 1974) ................................................................................37

*Brahm v. Hosp. Sisters Health Sys.,*
    2024 WL 3226135 (W.D. Wis. June 28, 2024) .....................................................16-17

*Brame v. Gen. Motors LLC,*
    535 F. Supp. 3d 832 (E.D. Wis. 2021) ....................................................................36

*BRV, Inc. v. Superior Ct.,*
    143 Cal. App. 4th 742 (2006)...........................................................................10, 19

*Carcieri v. Salazar,*
    555 U.S. 379 (2009) .......................................................................................12, 15

*Cherkin v. PowerSchool Holdings, Inc.,*
    2025 WL 844378 (N.D. Cal. Mar. 17, 2025)................................................10, 26, 34

*Cottle v. Plaid Inc.,*
    536 F. Supp. 3d 461 (N.D. Cal. 2021)....................................................................33

*Desnick v. Am. Broad. Corp.,*
    44 F.3d 1345 (7th Cir. 1995) ...............................................................................17

*Doe v. Meta Platforms, Inc.,*
    690 F. Supp. 3d 1064 (N.D. Cal. 2023)...................................................................18

*Doe v. Tenet Healthcare Corp.,*
    789 F. Supp. 3d 814 (E.D. Cal. 2025) ....................................................................18

*Frazier v. Fairhaven Sch. Comm.,*
    276 F.3d 52 (1st Cir. 2002) .................................................................................10

*Gassman v. Guardian Credit Union,*
    2026 WL 884211 (E.D. Wis. Mar. 31, 2026)........................................................17-18

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

*Giasson v. MRA Mgmt. Ass'n, Inc.*,
   777 F. Supp. 3d 913 (E.D. Wis. 2025) ........................................................ 35

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ................................................................................... 10

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
   598 U.S. 39 (2023) ....................................................................................... 9

*Hill v. Nat'l. Collegiate Athletic Ass'n*,
   865 P.2d 633 (Cal. 1994) ............................................................................ 23

*Hillman v. Columbia Cnty.*,
   474 N.W.2d 913 (Wis. App. 1991) .............................................................. 29

*In re Emporia Prop. Grp., LLC*,
   2022 WL 567727 (Bankr. D. Kan. Feb. 24, 2022) ...................................... 36

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ...................................................................... 23

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................................................... 27

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................................ 29

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................... 27

*In re Tiktok, Inc., Minor Priv. Litig.*,
   2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) .................................. 19-20, 31

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .................................................................... 38

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... 27

*McKenzie v. Foley*,
   1995 WL 18253130 (Kan. App. Aug. 11, 1995) ......................................... 29

*Mikulsky v. Bloomingdale's, LLC*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024) ......................................................... 20

*Mirabelli v. Olson*,
   691 F. Supp. 3d 1197 (S.D. Cal. 2023) ....................................................... 19

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ................................................ 27

*Nabozny v. Optio Sols., LLC*,
583 F. Supp. 3d 1209 (W.D. Wis. 2022) ..................................................... 30

*Nabozny v. Optio Sols.*,
84 F.4th 731 (7th Cir. 2023) .................................................................... 30

*New Jersey v. TLO*,
469 U.S. 325 (1985) ............................................................................. 22

*Orff v. City of Imperial*,
2017 WL 5569843 (S.D. Cal. Nov. 17, 2017) ............................................. 30

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*,
534 U.S. 426 (2002) ............................................................................. 20

*Pachowitz v. LeDoux*,
265 Wis. 2d 631 (2003) ......................................................................... 29

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................. 16, 18

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ............................................... 17

*Ragusa v. Malverne Union Free Sch. Dist.*,
549 F. Supp. 2d 288 (E.D.N.Y. 2008) ...................................................... 10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......................................... 18, 23, 33

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ............................................. 24

*Salisbury v. City of Santa Monica*,
998 F.3d 852 (9th Cir. 2021) ............................................................. 12, 15

*Settle v. Hendrix*,
1993 WL 13965689 (Kan. App. Mar. 12, 1993) .......................................... 24

*Shanahan v. IXL Learning, Inc.*,
2024 WL 4658276 (N.D. Cal. Nov. 1, 2024) .............................................. 12

*Shanahan v. IXL Learning, Inc.*,
2026 WL 982855 (9th Cir. Apr. 13, 2026) ...................................... 12-13, 38

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

*Shields v. Prof. Bureau of Collections of Maryland, Inc.*,
   55 F.4th 823 (10th Cir. 2022) ...................................................................... 30

*Smith v. Rack Room Shoes, Inc.*,
   2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ................................................ 16

*Thomas v. Papa Johns Int'l, Inc.*,
   2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................. 21

*Tinker v. Des Moines Independent Community School District*,
   393 U.S. 503 (1969) ...................................................................................... 22

*T.T. v. Cnty. of San Diego*,
   2020 WL 6118781 (S.D. Cal. Oct. 16, 2020).............................................. 27

*U.S. v. Stratton*,
   229 F. Supp. 3d 1230 (D. Kan. 2017) .......................................................... 21

*Waetzig v. Halliburton Energy Servs., Inc.*,
   604 U.S. 305 (2025) ........................................................................................ 9

*Weaver v. Champion Petfoods USA Inc.*,
   2019 WL 2774139 (E.D. Wis. July 1, 2019).............................................. 36

*Woods v. City of Hayward*,
   2020 WL 1233841 (N.D. Cal. Mar. 13, 2020) ............................................ 20

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal 2021)......................................................... 20

*Zhu v. St. Francis Health Ctr.*,
   150 P.3d 926 (Kan. App. 2007)..................................................................... 30

**STATUTES**

5 U.S.C. § 601.................................................................................................. 14

15 U.S.C. § 6501.............................................................................................. 19

15 U.S.C. § 6502.............................................................................................. 15

18 U.S.C. § 2511.........................................................................................16-17

20 U.S.C. § 1232g.......................................................................................10-11

Cal. Bus. & Prof. Code § 22584 ..................................................................... 11

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

Cal. Educ. Code § 49076 ...................................................................................... 10

Children's Online Privacy Protection Act ........................................................ *passim*

Family Educational Rights and Privacy Act ..................................................... *passim*

**REGULATIONS**

16 C.F.R. § 312 ......................................................................................... 13, 19

34 C.F.R. § 99 ............................................................................................. 10-11

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 20

Fed. R. Civ. P. 41(a)(1)(B) .................................................................................. 7

**ADMINISTRATIVE MATERIALS**

64 Fed. Reg. 59,888, 59,903 (Nov. 3, 1999) ....................................................... 15

**OTHER**

120 Cong. Rec. 39 (1974).................................................................................. 19

*Complying with COPPA: Frequently Asked Questions,* FTC................................. 14

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

## INTRODUCTION

As in its previous briefing, Defendant Renaissance Learning, Inc. ("Renaissance") mischaracterizes Plaintiffs' legal arguments as "ideologically-driven policy arguments," but it again fails to identify a single policy argument advanced by Plaintiffs. *See* Mot.[1] at 11. But it is Renaissance that relies on policy arguments in its Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion"). *See, e.g., id.* at 37 (arguing that allowing one of Plaintiffs' claims to proceed "would disrupt the edtech industry, imposing sweeping consequences on the education system"), *id.* at 25-26 (contending that the prevalence of educational-technology companies in schools confirms that Renaissance's data practices are lawful).

By these and other such arguments, Renaissance attempts to distract from the fundamental problem with its position and its practices: Renaissance is required—and fails—to obtain parental consent for *any* of its data practices, much less for its surreptitious and commercially beneficial disclosure of the personal information of schoolchildren who are required to use its products. The absence of effective consent is the throughline of every claim in this case: it works against Renaissance's invocation of the wiretap party exception; renders its data practices unauthorized, unjust, and unfair under state law; and confirms the highly offensive nature of Renaissance's intrusion into Plaintiffs' privacy.

And despite that this case involves schoolchildren required to use education technology ("EdTech") products as part of their compulsory education without their parents' consent, Renaissance attempts to treat this case like those in which adult consumers voluntarily choose to enter into a commercial transaction, such as by

---

[1] Throughout Plaintiffs' Opposition, "Mot." citations refer to Renaissance's Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. 63], and page citations refer to ECF pagination.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

registering for or visiting a website. As explained herein, each of those cases is inapposite.

Further, if Renaissance's alleged conduct is typical of the EdTech industry, as Renaissance contends, then such widespread misconduct is deserving of greater scrutiny, not less.[2] Mot. at 12, 25-26. The prevalence of an unlawful practice does not render it lawful. Renaissance's Motion should be denied.

## ARGUMENT

### A.   Privacy laws do not absolve Renaissance of its duty to obtain parental consent.

Renaissance contends that a "well-established regulatory regime" purportedly absolves companies from obtaining parental consent in the context of K-12 education, citing statutes enacted to *protect* children's informational privacy and parents' rights over their children's information. Mot. at 12. Renaissance argues that exceptions to these statutes' parental-consent requirements actually *eliminate* all such requirements. In support, it advances another policy argument—that schools "need support" from service providers like Renaissance. *Id*.

But Plaintiffs allege that Renaissance's student-data practices far exceed that contemplated by the narrow exceptions to FERPA's broad, express parental-consent requirements. Construing the statutes as Renaissance suggests would impermissibly turn these privacy statutes on their heads. The Supreme Court has made clear that "even the most formidable policy arguments cannot overcome a clear textual directive." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 59 (2023) (cleaned

---

[2] To narrow the issues, Plaintiffs seek to withdraw without prejudice four of the claims advanced in their Second Amended Complaint ("SAC"): (1) Count II, violation of California's Unfair Competition Law, (2) Count VIII, negligence, (3) Count X, violation of Wisconsin's Deceptive Trade Practices Act, and (4) Count XIV, violation of the Video Privacy Protection Act. *See Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 308 (2025) (plaintiffs' voluntary dismissal of claims before defendant serves answer or summary-judgment motion is presumptively without prejudice) (citing Fed. R. Civ. P. 41(a)(1)(B)).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

up).

***FERPA does not provide a private defense***. Renaissance first contends that the Family Educational Rights and Privacy Act ("FERPA") and analogous California state law absolve it of its duty to obtain parental consent before harvesting student data. Mot. at 12 (citing 34 C.F.R. § 99.31(a)(1)(i)(A); Cal. Educ. Code § 49076(a)).[3] It argues that these laws "authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without parental consent." *Id*. But FERPA regulates schools, not private companies. 20 U.S.C. § 1232g(a). It is a funding statute that "seeks to deter schools from adopting policies of releasing student records." *Ragusa v. Malverne Union Free Sch. Dist*., 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008). Accordingly, the U.S. Supreme Court has held that FERPA creates no private rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

Further, construing FERPA as Renaissance advocates would produce the absurd result of creating rights for private companies but not for students and their parents—those for whom the statute was enacted to protect—leaving them *less* protected than if the statute had not been enacted. *Frazier v. Fairhaven Sch. Comm*., 276 F.3d 52, 67-68 (1st Cir. 2002) (FERPA enacted to assure student privacy by requiring parental consent). It would insulate companies against liability without providing a mechanism for holding them accountable. An interpretation so fundamentally at odds with the statute's express purpose is impermissible. *Cherkin v. PowerSchool Holdings, Inc*., 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025) (rejecting similar arguments).

Even if FERPA could be construed as creating a private defense, analysis of whether an EdTech company like Renaissance handles student information in

---

[3] For brevity, this Opposition refers to FERPA, which does not materially differ from California's law, and Renaissance does not appear to argue otherwise. *See BRV, Inc. v. Superior Ct*., 143 Cal. App. 4th 742, 751-52 (2006) (law adopted "to eliminate potential conflicts between FERPA and state law").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

compliance with the so-called "school official" exception is fact intensive. *See* 20 U.S.C. § 1232g(b)(1)(A); 34 C.F.R. § 99.33(a). Plaintiffs have plausibly alleged that Renaissance does not. SAC ¶¶ 84-87, 304, 327[4] (data taken by Renaissance exceeds "education records"); ¶¶ 302, 325 (schools do not control Renaissance's data practices); ¶¶ 305-06, 328-29 (Renaissance uses student data in excess of "legitimate educational interests," and impermissibly rediscloses it without parental consent).

***KOPIPA does not obviate parental-consent requirements***. Renaissance cites another student privacy law it contends obviates all parental-consent requirements, California's K-12 Online Personal Information Protection Act ("KOPIPA"). Mot. at 12 (citing Cal. Bus. & Prof. Code § 22584(b)(4)). This argument fails because Plaintiffs allege that Renaissance's data practices do not comport with that narrow exception. Rather, Plaintiffs allege that Renaissance takes, uses, and shares student information, not only to allow or improve operability and functionality, but also to create invasive, persistent digital student profiles, ¶¶ 61, 79, 83, 265, 338, 347-52; for marketing, ¶¶ 7, 33, 252, 260-62, 269; to secure commercially valuable third-party data-sharing agreements, ¶¶ 245-52; to obtain valuable analytics and other services from third-party advertising and identity-resolution companies, ¶¶ 99-225; to conduct "general research" and for "any other legitimate business purpose," ¶ 262; and to test and build new products, including AI technologies, ¶¶ 260, 262, 266, 269.

Nothing in these student-privacy laws imbues schools or their vendors with virtually unlimited authority to exploit student information for nebulously defined or wholly undefined "educational purposes," "general research," or "legitimate business purpose[s]," much less in exchange for valuable analytics and other commercially beneficial services. Renaissance's interpretation of these statutes would subvert their legislative intent, transforming limited exceptions to parental

---

[4] Throughout Plaintiffs' Opposition, "¶" citations refer to the Second Amended Complaint [Dkt. 60].

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

consent into gaping pathways for the undisclosed, nonconsensual, mass transfer of student information to the private sector. Basic canons of statutory construction preclude Renaissance's ends-driven interpretation of these privacy laws. *See Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (referencing the "settled principle[] of statutory construction" that if statutory text is plain and unambiguous, courts must apply the statute according to its terms); *Salisbury v. City of Santa Monica*, 998 F.3d 852, 858 (9th Cir. 2021) (same).

***COPPA does not permit schools to provide consent in lieu of parents.*** Renaissance further argues that the Federal Trade Commission ("FTC")—the agency tasked with enforcing the Children's Online Privacy Protection Act ("COPPA")—has absolved companies of their duty to obtain parental consent in the context of K-12 education. Mot. at 22-23 & 23 n.9. It misleadingly states that, "[f]or over two decades, [FTC] guidance has confirmed that, under COPPA, schools can consent on behalf of parents to the collection of personal information for educational purposes[.]" *Id*. at 22-23. In support, it cites FTC guidance to COPPA. *Id*. at 23 n.9.

However, Renaissance's argument is refuted by the plain language of COPPA, a recent opinion from the Ninth Circuit Court of Appeals, and unanimous statements by FTC Commissioners. Specifically, the Ninth Circuit recently rejected a similar argument brought by another EdTech company. *See Shanahan v. IXL Learning, Inc*., No. 24-6985, 2026 WL 982855 (9th Cir. Apr. 13, 2026). In that case, IXL Learning, Inc. ("IXL") argued in the district court that schools can bind parents to its terms of service, which described its student-data practices and contained an arbitration provision. *Shanahan v. IXL Learning, Inc*., No. 24-cv-02724-RFL, 2024 WL 4658276, at *1-2 (N.D. Cal. Nov. 1, 2024). In support, IXL cited the same non-binding COPPA guidance issued by FTC staff that Renaissance cites here. *Id*. at *3. The district court denied its motion, and IXL appealed. *Id*. at *7.

At the district court and again on appeal, FTC Commissioners filed amicus curiae briefs stating that operators may not rely on schools to provide consent in lieu

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

of parents. *Id*. at *3.[5] The FTC Commissioners unequivocally refuted IXL's argument as not "remotely support[ed]" by the COPPA statute, Rule, or agency guidance. Brief for Amicus Curiae FTC, No. 24-6985, at 18-19. Explaining that the purpose of COPPA was to enhance parental rights and children's privacy, *id*. at 11, the FTC Commissioners stated that EdTech companies may not rely exclusively on the consent of schools to any "contractual terms of educational technology service agreements between schools and service providers like IXL," *id*. at 8, which would include those governing the provider's collection, use, and disclosure of student information.

The Ninth Circuit affirmed the district court's order on that ground. *Shanahan*, 2026 WL 982855, at *3. The Court quoted the text of COPPA and the Rule requiring that operators undertake reasonable efforts to obtain verifiable parental consent for the collection, use, or disclosure of personal information from children. *Id*. at *2. The Court observed that "[t]he COPPA Rule lists the '[e]xisting methods to obtain verifiable parental consent that satisfy the requirements of this paragraph,' *id*. § 312.5(b)(2), and it sets out an exhaustive set of exceptions to the requirement of prior parental consent, *id*. § 312.5(c)." *Id*. The methods of obtaining parental consent do not include unilaterally shifting the burden of obtaining consent to schools, and the exceptions to parental consent do not include providing technology services to schools. *See id*. at *2-3. The Court concluded that "[n]othing in the text of COPPA or of the COPPA Rule even suggests (much less establishes) that operators may treat schools as parents' agents for the purpose of obtaining verifiable parental consent to arbitrate." *Id*. at *3.

---

[5] *Shanahan v. IXL Learning, Inc*., No. 24-6985, 2026 WL 982855, at *3 & n.1 (9th Cir. Apr. 13, 2026); Brief for Amicus Curiae Federal Trade Commission, *Shanahan v. IXL Learning, Inc*., No. 3:24-cv-02724-RFL (N.D. Cal. Nov. 1, 2024), https://www.ftc.gov/system/files/ftc_gov/pdf/p163500shanahanamicus.pdf (last visited June 14, 2026); Brief for Amicus Curiae Federal Trade Commission in Support of Appellees, *Shanahan v. IXL Learning, Inc*., No. 24-6985 (9th Cir. Apr. 13, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/ShanahanAmicusBrief Filed.pdf (last visited June 14, 2026).

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

Despite the plain language of COPPA, the FTC Commissioners' briefs, and the Ninth Circuit's recent opinion, Renaissance argues that COPPA guidance "confirm[s] that, under COPPA, schools can consent on behalf of parents to the collection of personal information for educational purposes[.]" Mot. at 22-23. The guidance cited by Renaissance in support of its argument is an FTC "Frequently Asked Questions" business guide created by FTC staff and posted on the FTC's website ("FAQ"). *Id*. at 23 n.9.[6] The FAQ is subtitled "A GUIDE FOR BUSINESS AND PARENTS AND SMALL ENTITY COMPLIANCE GUIDE." *See id*. The FAQ opens by stating that it is not binding on the FTC, is distinct from the Rule and compliance materials, and pertains only to small entities:

> **This document represents the views of FTC staff and is not binding on the Commission.** To view the Rule and compliance materials, go to the FTC's Children's Privacy page for businesses. This document serves as a small entity compliance guide pursuant to the Small Business Regulatory Enforcement Fairness Act.

*See id*. (emphasis in original). A non-binding guide for small businesses—which would not include multibillion-dollar businesses like Renaissance [7]—does not support Renaissance's contention that it is permitted to rely on school consent alone in lieu of parental consent.

The FAQ also does not support Renaissance purporting to shift the burden of obtaining parental consent to schools. Even if the FAQ had any persuasive authority (which, given recent case law and statements by FTC Commissioners, it does not), it expressly prohibits a company from charging schools with COPPA compliance: "Importantly, operators should not state in Terms of Service or anywhere else that the school is responsible for complying with COPPA, as it is the responsibility of the operator to comply with the Rule." *See id*. Thus, the guidance on which

---

[6] Citing to *Complying with COPPA: Frequently Asked Questions*, FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-askedquestions#N20COPPA%20AND%20SCHOOLS.
[7] *See* Small Business Regulatory Enforcement Fairness Act of 1996, 1996 HR 3136, Public Law No. 104-121 (Mar. 29, 1996); 5 U.S.C. § 601.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

Renaissance relies makes clear that Renaissance must obtain parental consent under COPPA, not schools. COPPA thus does not absolve Renaissance of its duty to obtain parental consent.

Renaissance also cites the Statement of Basis and Purpose that accompanied COPPA's implementing rule when first promulgated for the proposition that "online operators can rely on school authorization." *Id*. (citing 64 Fed. Reg. 59888, 59903 (Nov. 3, 1999)). First, Renaissance materially misrepresents the language of those comments, which state only that, under certain circumstances, companies "can presume" that schools have obtained parental consent—not that companies may rely on school authorization in lieu of parental consent. 64 Fed. Reg. at 59903. Second, Renaissance cites no authority that would allow this Court to even consider extratextual comments in the absence of statutory ambiguity. *See Carcieri*, 555 U.S. at 387; *Salisbury*, 998 F.3d at 858. And the COPPA statute expressly and unambiguously identifies the exceptions to parental consent, none of which includes school technology. 15 U.S.C. § 6502(b)(2).

The absence of valid consent is at the heart of all of Plaintiffs' claims: it supports preclusion of Renaissance's invocation of the wiretap party exception; renders its data practices unauthorized, unjust, and unfair under state law; and confirms the highly offensive nature of its intrusion into Plaintiffs' privacy. Because Plaintiffs plausibly allege that Renaissance did not obtain effective consent before taking, using, and sharing Plaintiffs' personal information, dismissal is unsupported.

## B.    The party exception does not foreclose Plaintiffs' wiretapping claims.

Renaissance contends that Plaintiffs' federal and Wisconsin wiretapping claims fail because the "party exception bars liability for parties to a communication, and the crime-tort exception does not apply." Mot. at 14. But Plaintiffs plausibly allege the applicability of the crime-tort exception.

The party exception applies only if a defendant, in intercepting

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

communications, did not intend to commit a crime or tort. *See* 18 U.S.C. § 2511(2)(d) (The party exception may apply "unless such communication is intercepted for the purpose of committing any criminal or tortious act"); *Brahm v. Hosp. Sisters Health Sys.*, No. 23-CV-444-WMC, 2024 WL 3226135, at *5 (W.D. Wis. June 28, 2024) (party exception under Wisconsin statute not applicable if "the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act").

Renaissance first argues that Plaintiffs' claims fail because their state privacy tort claims fail. Mot. at 15. But Plaintiffs plausibly allege facts supporting their privacy claims as explained in section C, *infra*.

Renaissance also argues that the claims fail because the alleged criminal or tortious purpose must be but is not separate and independent from the act of interception. Mot. at 15-16. However, Plaintiffs adequately allege that the crime-tort exception applies by alleging that Renaissance intercepted their communications for the independent purposes of tortiously invading their privacy; disclosing and using their data for advertising, marketing, analytics and other services, and generating profit without their express consent; and procuring unjust enrichment. *See* Sections C-E, *infra*; ¶¶ 473-519, 640-71 (invasion of privacy); ¶¶ 7-8, 33, 104-05, 235-37, 390 (procuring valuable services and generating profit); ¶¶ 520-43, 614-39 (unjust enrichment); *see also Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (retaining ECPA claim where invasion of privacy alleged); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (party exception did not support dismissal where plaintiffs alleged that defendant intercepted their website communications in violation of their privacy rights); *Brahm*, 2024 WL 3226135, at *6 (retaining Wisconsin wiretap claim where plaintiff alleged that "defendants' primary motivation in intercepting and disclosing [their data] was to commit wrongful and tortious acts—namely, the disclosure and use of patient data

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

for advertising, marketing, and revenue generation without their express written consent.").

The Wisconsin statute is broad, not only proscribing interception for the purpose of committing a criminal or tortious act, but also "for the purpose of committing any other injurious act." *Gassman v. Guardian Credit Union*, No. 25-CV-0176-BHL, 2026 WL 884211, at *10 (E.D. Wis. Mar. 31, 2026) (citing Wis. Stat. § 968.31(2)(c) and *Desnick v. Am. Broad. Corp.*, 44 F.3d 1345, 1353 (7th Cir. 1995)).

Wisconsin courts make clear that the act of disclosing Plaintiffs' personal information is separate from the act of intercepting the data and that allegations of disclosure for wrongful or tortious purposes are sufficient to survive dismissal. *See Brahm*, 2024 WL 3226135, at *5 ("[P]laintiff plausibly alleges that defendants committed a criminal or tortious act by *disclosing*—versus merely *intercepting*—patients' [data]."); *Gassman*, 2026 WL 884211, at *10 (same). Courts further note that "the issue would be 'more appropriately addressed at summary judgment' with a more fully developed record." *Gassman*, 2026 WL 884211, at *10 (quoting *Brahm*, 2024 WL 3226135, at *6).

Renaissance further argues that Plaintiffs' claims fail because allegations of Renaissance's "profit motive" are insufficient. Mot. at 16. But Plaintiffs extensively allege that Renaissance's primary motivation was much broader than that. They allege that Renaissance was motivated to commit wrongful and tortious acts, including invading Plaintiffs' privacy; disclosing and using their data without their consent for advertising, marketing, analytics and other services (in addition to profit generation); and unjustly benefiting at Plaintiffs' expense. Specifically, Plaintiffs allege that Renaissance intercepted, used, and disclosed their data to develop, market, deliver, and improve its products; obtain valuable analytics and behavioral-insight services; and generate profit. ¶¶ 7-8, 33, 104-05, 231-58, 390. Plaintiffs further allege that Renaissance installed tracking technologies to intercept students'

communications for the purpose of disclosing them to third-party advertising and identity-resolution companies without effective notice or consent in violation of COPPA.[8] ¶¶ 99-225. And Plaintiffs additionally allege that Renaissance concealed its data sharing with these advertising and identity-resolution companies (despite disclosing its data sharing with third-party vendors), thus alleging further evidence of tortious intent. ¶¶ 33, 120, 127, 150-51, 173, 176, 181, 189-90, 210, 223, 379. Ultimately, the question of Renaissance's primary motive is fact-intensive and should not be resolved at this stage. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 n.2 (N.D. Cal. 2023).

However, even if the only motivation alleged was a profit motive, courts in Wisconsin and a growing number of courts in California (where there is a split in authority) have held that allegations of profit motive are sufficient to survive dismissal. *See Gassman*, 2026 WL 884211, at *10; *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090-91 (N.D. Cal. 2025); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025); *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025); *Brahm*, 2024 WL 3226135, at *5-6; *Walgreen*, 733 F. Supp. 3d at 901.

### C. Plaintiffs plausibly allege a claim of invasion of privacy under the California Constitution and claims of intrusion upon seclusion under California and Kansas common law.

Renaissance contends that Plaintiffs do not adequately allege: (1) a reasonable expectation of privacy, (2) an intrusion, and (3) highly offensive conduct. Mot. at 24-29. But Plaintiffs plausibly allege each element.

#### 1. Plaintiffs plausibly allege a reasonable expectation of privacy.

Renaissance contends that "Plaintiffs cannot establish a reasonable

---

[8] Plaintiffs do not contend that Renaissance's violation of COPPA constitutes a crime or tort. Rather, Plaintiffs contend that the violation—taking, using, and disclosing Plaintiffs' personal information without obtaining the required parental consent—supports the allegation that Renaissance acted with a tortious or criminal intent.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

expectation of privacy[,]" Mot. at 24, but the very existence of COPPA and FERPA refutes that argument. COPPA—which requires companies like Renaissance to obtain verifiable parental consent before taking, using, or disclosing the personal information of children under 13—codifies a child's right to privacy in her or his own personal information online, which the statute and rule expansively define. 15 U.S.C. § 6501(8); 16 C.F.R. § 312.2. COPPA can be used "in setting Plaintiffs' reasonable expectations of privacy as to how their data w[ill] be collected and used." *In re Tiktok, Inc., Minor Priv. Litig.*, No. MDL 3144-GW-RAOX, 2025 WL 3628598, at *14 (C.D. Cal. Nov. 5, 2025).

Similarly, FERPA codifies students' expectation of privacy in their educational records. As one California court explained,

> Congress enacted FERPA to assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent. Under its terms, educational institutions, with a few exceptions not material here, must obtain written parental consent prior to releasing students' records or information derived therefrom.

*BRV, Inc. v. Superior Ct.*, 143 Cal. App. 4th 742, 751-52 (cleaned up); *see also* 120 Cong. Rec. 39, 862 (1974) (joint statement of Sens. Pell and Buckley explaining major amendments to FERPA).

FERPA explicitly safeguards children's privacy in their own information in education records, as well as parents' rights over those records. Indeed, "[t]he constitutional right of parents to direct their child's education is [] protected through Congressional policy, as exemplified by [FERPA]." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023). Accordingly, schools are broadly prohibited from disclosing that information to third parties, including private companies like Renaissance and its sprawling network of vendors and advertising and identity-resolution companies described in the complaint. ¶¶ 99-222, 231, 238-41. Because

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

not all the student information collected by Renaissance can reasonably be construed as education records, *see Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 436 (2002), and Renaissance fails to distinguish education records from other forms of personal data it takes from students and their parents, Renaissance fails to show that students and their parents have no expectation of privacy in other forms of personal data, as is its burden. *Woods v. City of Hayward*, No. 19-CV-01350-JCS, 2020 WL 1233841, at *10 (N.D. Cal. Mar. 13, 2020) (moving party has burden of persuasion that claims warrant dismissal under Rule 12(b)(6)).

In arguing that Plaintiffs fail to allege a reasonable expectation of privacy, Renaissance first contends that Plaintiffs fail to allege that an intrusion into their privacy was "covert" because "every piece of at-issue data was submitted through Renaissance's platforms." Mot. at 24-25. But the cases Renaissance cites as support for its argument are entirely distinguishable from this case. *Id*. at 25. The first two, *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1086 (C.D. Cal 2021), and *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024), both address adult consumers whose data was tracked by retailers when the consumers voluntarily visited the retailers' websites.

An adult voluntarily choosing to use websites is key in these cases. As the *Mikulsky* court stated, "[we] decline[] to find a privacy interest in Plaintiffs' interactions with Defendants' own website *when they choose to use that website*." 713 F. Supp. 3d at 846 (emphasis added). Here, Plaintiffs allege that Renaissance tracked, collected, and shared their personal information without consent while Plaintiffs—minor schoolchildren—were engaged in compulsory schoolwork as part of their required education. The heart of this lawsuit is that Plaintiffs' use of Renaissance's products was involuntary and without their parents' consent. ¶¶ 226, 259, 272-309. "Online platforms directed at children, and the data they collect, are distinguishable from the general principle that 'the internet is not a place where users have a reasonable expectation of privacy.'" *In re Tiktok*, 2025 WL 3628598, at *14

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

(citing *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024)). Cases like *Yoon* and *Mikulsky* are inapposite.

The Kansas case cited by Renaissance, *U.S. v. Stratton*, 229 F. Supp. 3d 1230, 1241 (D. Kan. 2017), Mot. at 25, is also distinguishable as a Fourth Amendment, criminal case involving an adult user of the PlayStation Network and emails he sent to other network users. *Id*. at 1233, 1241. The court held that the defendant did not have an expectation of privacy in the emails once they were delivered to the recipients. *Id*. at 1241. This case, by contrast, is not a criminal case, does not involve the Fourth Amendment, and does not involve an adult voluntarily sending messages within an online network. Again, Plaintiffs are schoolchildren who must use Renaissance's products as part of their compulsory education without their parents' consent. ¶¶ 226, 259, 272-309.

Further, Plaintiffs extensively allege a covert intrusion in alleging that all of Renaissance's data collection and sharing is conducted without notice to or consent from Plaintiffs' parents, *see* ¶¶ 233, 272-309, 313-14, 335, 379, and that Renaissance engages in additional surreptitious tracking and sharing of their data, ¶¶ 99-226.

Renaissance further argues that "accepted community norms" of EdTech products in schools preclude the existence of an expectation of privacy in student data. Mot. at 26. It contends that Plaintiffs concede this point by alleging the prevalence of EdTech tools in schools. *Id*. at 25. Not so. Plaintiffs extensively allege that schoolchildren have an expectation (and retain that expectation) of privacy in their personal information. ¶¶ 464, 467, 478, 480, 483, 496, 499, 501, 514, 516, 563, 588, 623, 643, 645, 647, 662, 664, 666.

Further, that Renaissance data mines students across thousands of school districts without parental knowledge or consent does not mean parents and students have no reasonable expectation of privacy in students' information. This is particularly true when, as here, Plaintiffs allege that their parents received neither notice of Renaissance's data practices nor an opportunity to refuse them, ¶¶ 233,

272-309, 313-14, 335, 379, and that much of Renaissance's data sharing is done secretly and is discoverable only through forensic analysis, ¶¶ 33, 120, 127, 150-51, 173, 176, 181, 189-90, 210, 223, 379. As Plaintiffs allege: "There is no adverse possession of the law: that Renaissance has been collecting and using student information for years without effective consent does not confer legality on its business practices." ¶ 16.

Renaissance also argues that there can be no expectation of privacy in student data because students in public schools have a diminished expectation of privacy. Mot. at 26. But Renaissance's authorities involve Fourth Amendment claims; do not address private EdTech companies' data practices in schools; and give more weight to student privacy than Renaissance acknowledges. Specifically, in both the concurring opinion in *New Jersey v. TLO*, 469 U.S. 325 (1985), and the opinion in *B.C. v. Plumas Unified School District*, 192 F.3d 1260 (9th Cir. 1999), the Courts reinforced the U.S. Supreme Court's statement in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969) that students do not "shed their constitutional rights . . . at the schoolhouse gate." *TLO*, 469 U.S. at 348; *B.C.*, 192 F.3d at 1267.

Further, the *TLO* concurrence explained that students had a diminished expectation of privacy in school because "[t]hey spend the school hours in close association with each other," they "often know each other and their teachers quite well[,]" and "[o]f necessity, teachers have a degree of familiarity with, and authority over, their students[.]" 469 U.S. at 348. The expectation of privacy described in *TLO* makes sense: children and parents could reasonably expect somewhat diminished privacy among students' teachers and fellow students—in other words, within their school community. *TLO* did not address private companies operating in schools that collect, use, and share highly detailed, personal information about children for commercial purposes without effective consent, as alleged here. Further, as the *TLO* concurrence stated: "[C]hildren in school—no less than adults—have privacy

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

interests that society is prepared to recognize as legitimate" and "properly are afforded some constitutional protections." *Id*. Likewise, the *B.C.* court stated that "[w]hile students have a lesser expectation of privacy than members of the population generally[,] . . . they nonetheless retain an expectation of privacy when they enter the school grounds." 192 F.3d at 1267 (cleaned up).

Further, whether Plaintiffs have a reasonable expectation of privacy in their personal information is not a question of whether an invasion is "institutionally sanctioned," as Renaissance argues. Mot. at 25. Rather, the question is whether parents reasonably expect their children to be subjected to Renaissance's invasive data practices while doing required schoolwork. Given the allegations of extensive collection, use, and sharing of Plaintiffs' personal information for commercial gain, much of which is surreptitious and all without parental notice and consent, Plaintiffs plausibly allege a reasonable expectation of privacy. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) ("In light of the privacy interests and Facebook's allegedly surreptitious and unseen data collection, Plaintiffs have adequately alleged a reasonable expectation of privacy.").

At minimum, the issue must be addressed in discovery and resolved by a jury, as whether parents reasonably expect private companies like Renaissance to be engaged in the data mining, psychographic profiling, and commercial use and disclosure of children's data as alleged here rather than limited collection of education records only for the purpose of delivering the services is a fact-intensive question. *See Riganian*, 791 F. Supp. 3d at 1088 ("Only if the allegations show no reasonable expectation of privacy . . . can the question of a serious or highly offensive invasion be adjudicated as a matter of law.") (cleaned up); *Hill v. Nat'l. Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (Cal. 1994) ("Whether plaintiff has a reasonable expectation of privacy in the circumstances . . . [is a] mixed question[] of law and fact.").

**2. Plaintiffs plausibly allege an intrusion.**

Renaissance contends that Plaintiffs do not allege a cognizable intrusion because Plaintiffs allege that Renaissance received Plaintiffs' personal information through Plaintiffs' use of Renaissance's products. Mot. at 26. But again, Renaissance cites a case in which adult plaintiffs voluntarily visited and provided personal information to a website. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025). Here, Plaintiffs allege that their use of Renaissance's products is not voluntary and that their parents were not provided with notice of Renaissance's data practices or given an opportunity to consent to or reject those practices. ¶¶ 233, 272-309, 313-14, 335, 379. Indeed, this Court noted the lack of voluntariness in Plaintiffs' use of Renaissance's products, stating in its Order Granting Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Order") that "Plaintiffs are not in a position to 'choose one product over another[.]'" Order [Dkt. 59] at 19. *Saedi* is thus distinguishable.

Renaissance also cites a Kansas case that is distinguishable: in *Settle v. Hendrix*, the court held that the plaintiff failed to allege an intrusion because he alleged that defendants obtained his private information from a non-moving defendant and not that they "sought out th[e] information or intruded upon his private life to obtain it." No. 68,002, 1993 WL 13965689, at *2 (Kan. App. Mar. 12, 1993). Here, Plaintiffs allege that Renaissance itself took their personal information, not that a third party gave their personal information to Renaissance without any prompting from Renaissance. ¶¶ 75-83, 99-101, 111-16.

Renaissance also argues that "Plaintiffs' theory that Renaissance's alleged disclosure of data to third parties constitutes an actionable intrusion likewise fails[.]" Mot. at 26. But Plaintiffs allege that Renaissance's collection and use of their personal information constitutes the intrusion. ¶ 465, 467, 476, 642, *see Saedi*, 2025 WL 1141168, at *6 ("Under California law, a claim for intrusion upon seclusion

does not require a publication, but instead the intrusion itself makes the defendant subject to liability.") (cleaned up).

### 3. Plaintiffs plausibly allege highly offensive conduct.

Renaissance contends that Plaintiffs fail to sufficiently allege highly offensive conduct because Plaintiffs allege only that Renaissance "shar[es] user data with third-party service providers," and courts hold that "routine, non-consensual commercial data-collection practices . . . [are] not highly offensive." Mot. at 27-28. Renaissance's argument echoes the conclusion this Court previously reached that, in their First Amended Complaint, Plaintiffs did not allege facts "to support the notion that the ubiquitous practice of sharing user data with third-party service providers" would be highly offensive to a reasonable person. Order [Dkt. 59] at 9. But Plaintiffs allege far more than that: they extensively allege that Renaissance also secretly shares their data with several advertising and identity-resolution companies. ¶¶ 99-258, and violates COPPA and FERPA, as detailed in this section and in section D.2., *infra*. Further, the intrusion alleged by Plaintiffs is Renaissance's expansive collection and commercial use of students' data. That Plaintiffs also allege that Renaissance shares their data with numerous vendors and advertising and identity-resolution companies is relevant to the offensiveness of Renaissance's conduct, not to the alleged intrusion itself.

Plaintiffs extensively and plausibly allege that Renaissance's collection and commercial exploitation of their personal information would be highly offensive to a reasonable person because they allege that (1) Renaissance is required under COPPA to provide notice to parents and obtain parental consent before collecting, using, or disclosing the personal information of children under 13, ¶ 294; (2) Renaissance does not provide notice or obtain parental consent as required, ¶ 269, 272-309, 314; (3) Renaissance refuses to grant parents access to their children's information in violation of COPPA, ¶¶ 88-96; (4) Renaissance falsely states that it complies with COPPA, ¶¶ 311-20; (5) Plaintiffs were required to use Renaissance's

products as part of their compulsory education, ¶¶ 14, 21, 26-27, 29-30, 289; (6) Renaissance collected their highly sensitive and personal information, including deeply intimate mental-health and behavioral data while they performed schoolwork and commercially exploited that information for its own benefit, including for developing, marketing, and delivering its products, ¶¶ 4, 6-7, 53, 69-70, 75-83, 235-37, 334-35, 357, 390; (7) Renaissance generated further highly sensitive and personal information about them by creating inferences and predictions about them based on their data, ¶ 61, and (8) Renaissance shared their data with myriad third parties. ¶¶ 99-259.

In a case with similar allegations, another court in this Circuit found that the plaintiffs plausibly alleged a highly offensive intrusion, stating:

> The complaint amply alleges that PowerSchool collects, for its own commercial benefit, data about public-school kids from information that the students share as part of their legally required education. Doing so without parental notice or consent, as is alleged, plausibly describes conduct that is 'highly offensive to a reasonable person and . . . constitutes an egregious breach of the social norms.'

*Cherkin*, 2025 WL 844378, at *3 (cleaned up). Further, alleging a violation of COPPA and false statements by Renaissance, as Plaintiffs do, is sufficient to adequately plead highly offensive conduct. In *A.B. by and through Turner v. Google LLC*, the court held that:

> By surreptitiously collecting data from minors under the age of 13 after representing that [the relevant] apps were child-directed, defendants allegedly engaged in the specific conduct proscribed by COPPA. A violation of federal law is generally considered egregious, and because COPPA prohibits such data collection from minors to protect their privacy, plaintiffs have adequately pleaded an egregious intrusion into the minors' expectation of privacy.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE

737 F. Supp. 3d 869, 884 (N.D. Cal. 2024). Given Plaintiffs' allegations and relevant authority, Plaintiffs have plausibly alleged highly offensive conduct.

The authorities cited by Renaissance are inapposite, as they once again involve the collection of data from adults who voluntarily chose to visit websites or register for online services. Mot. at 28 (citing *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *1 (N.D. Cal. Dec. 23, 2024) (plaintiff was adult using Google and Facebook); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016 (N.D. Cal. 2012) (plaintiff was adult registered user of LinkedIn); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973 (N.D. Cal. 2014) (plaintiffs were adult Google users); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1048 (N.D. Cal. 2012) (plaintiffs were adult users of Apple devices)).[9] As extensively alleged in the SAC, Plaintiffs were minor schoolchildren required to use Renaissance's products as part of their compulsory education, and Renaissance failed to obtain parental consent before data mining them. As this Court stated in its Order, "Plaintiffs are not in a position to 'choose one product over another[.]'" Order [Dkt. 59] at 19. Cases involving adults voluntarily registering and visiting websites are inapposite.

### D. Plaintiffs plausibly allege claims for public disclosure of private facts.

Renaissance contends that Plaintiffs fail to state a claim for public disclosure of private facts under Wisconsin, California, and Kansas law because Plaintiffs do not plausibly allege (1) publicity, (2) that the disclosure was highly offensive, and (3) that the disclosed information was not of public interest or concern. Mot. at 29-33. Plaintiffs plausibly allege each of these elements under the laws of all three states.

---

[9] The final case cited by Renaissance, *T.T. v. Cnty. of San Diego*, 2020 WL 6118781, at *5 (S.D. Cal. Oct. 16, 2020), is entirely unrelated to this case or the subject matter of this claim.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**8:25-CV-01379-FWS-JDE**

**1.  Plaintiffs plausibly allege public disclosure.**

Renaissance characterizes its disclosure of Plaintiffs' personal information as "limited" and "only to certain third-party companies for specific commercial purposes[.]" *Id*. at 29. That grossly mischaracterizes Plaintiffs' allegations. Plaintiffs allege that Renaissance transmits student data not only to third-party vendors valued in the millions, billions, and trillions of dollars—seven of which operate global advertising and marketing platforms along with their other operations, ¶¶ 33, 231, 238-41, 245-51—but also to third-party advertising, marketing, and identity-resolution companies, ¶ 118.

Plaintiffs further allege that those advertising, marketing, and identity-resolution companies include **Google**, the largest digital advertiser in the U.S., which uses the data in connection with its broader analytics, advertising, and identity-resolution systems, ¶¶ 125-47, 187-206; **Mixpanel**, a marketing, analytics, and identity-resolution company, which uses the data in connection with its broader analytics, advertising, and identity-resolution systems, ¶¶ 148-66; **Microsoft's** advertising systems, including Microsoft Advertising, MSN, and LinkedIn, which use the data in connection with Microsoft's broader advertising and identity-resolution ecosystem, ¶¶ 167-69, 216-19; **Xandr**, a premium digital-advertising company, which uses the data to deliver personalized advertising, ¶¶ 170-73; **Comscore**, an advertising measurement, marketing data, and analytics platform that sells audience data to third parties, ¶¶ 174-78; **Taboola**, an online advertising platform that sells audience data and creates persistent, longitudinal profiles of individual students, ¶¶ 179-84; and **Leadfeeder**, a marketing company that combines the data with Google's tracking identifiers to create persistent, longitudinal profiles of individual students, ¶¶ 207-215. Plaintiffs further allege that Renaissance explicitly takes no responsibility for the security or use of student data once shared. ¶ 254.

Plaintiffs' extensive allegations of data-sharing with a multitude of third

parties, many of which are advertising giants and identity-resolution companies, are more than sufficient to allege the publicity element under Wisconsin, California, and Kansas law. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (Google gave publicity to plaintiffs' private facts and sensitive information by selling it to large number of companies); *McKenzie v. Foley*, 1995 WL 18253130, at *3 (Kan. App. Aug. 11, 1995) (holding that leaving video in tavern and photos along street, even though the video and photos were seen by only one person before being removed, constituted "publicity"); *Hillman v. Columbia Cnty.*, 474 N.W.2d 913, 920 (Wis. App. 1991) (holding that "oral communication among numerous employees and inmates of a jail is sufficient to constitute 'publicity'").

Renaissance argues that Plaintiffs do not allege a "special relationship" with the third-party companies receiving their data. But a special relationship is not required where, as here, private information is disclosed to a multitude of parties. For example, in *Pachowitz v. LeDoux*, a case cited by Renaissance and this Court in its Order, the plaintiff's private information was disclosed to only one person, which would generally not be enough to constitute "publicity." 265 Wis. 2d 631, 642-44 (2003). But because there was evidence of a special relationship between the plaintiff and the recipient, which is a factor in the "publicity" determination, the court found the disclosure sufficient. *Id*. at 645-48.

*Pachowitz* is wholly unlike this case. Here, Plaintiffs allege that Renaissance disclosed their data to at least 17 third-party corporate vendors, many of which operate global advertising and marketing platforms along with their other operations, ¶¶ 33, 231, 238-51, and at least seven other third-party advertising, marketing, and identity-resolution companies, ¶¶ 33, 99-226. The sheer number and size of the companies and their operations, which would require a massive number of employees, are sufficient to constitute publicity without the existence of a special relationship.

Renaissance further argues that Plaintiffs' allegations that their data has value

suggest that "it is not plausible that third parties, incentivized to keep this information private [because Plaintiffs allege that all of the companies commercially benefit from the data] would instead disseminate it widely." Mot. at 29-30. But Plaintiffs do not allege that any of the companies are incentivized to keep the data private and in fact allege the opposite: they allege that Renaissance and the third-party companies are incentivized to use and disseminate the data widely *because* the data has value and *because* they all profit from the use and sharing of the data. ¶¶ 7-8, 33, 104-05, 235-37, 245-46, 252. Thus, Plaintiffs allege a vast data-sharing network motivated to continue using and sharing their data ever more widely.

The other cases cited by Renaissance are readily distinguishable. *See Orff v. City of Imperial*, 2017 WL 5569843, at *11 (S.D. Cal. Nov. 17, 2017) (no publicity where plaintiff alleged disclosure to only two individuals); *Nabozny v. Optio Sols., LLC*, 583 F. Supp. 3d 1209, 1211, 1213-14 (W.D. Wis. 2022), *aff'd*, 84 F.4th 731 (7th Cir. 2023) (no publicity where plaintiff alleged only that debt collection agency shared her debt information with company that processes and mails debt-collection letters); *Shields v. Prof. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 829 (10th Cir. 2022) (no publicity where plaintiff alleged only that defendant "disclosed her debt to its outside mailer—certainly not the public at large nor someone likely to widely communicate her debt"); *Zhu v. St. Francis Health Ctr.*, 150 P.3d 926, at *5 (Kan. App. 2007) (no publicity where "the only allegation of publicity was that the report was provided to the opposing party in the car accident litigation").[10]

### 2. Plaintiffs plausibly allege highly offensive conduct.

Renaissance argues that its alleged disclosure of Plaintiffs' and other students'

---

[10] Renaissance notes that M.C. 1 and M.C. 2 used only Renaissance's DnA product, arguing that the forensic testing is irrelevant to them. Not so. Plaintiffs extensively describe Renaissance's data sharing, both with third-party vendors and with undisclosed advertising and identity-resolution companies, ¶¶ 99-226, 238-52, and allege that "[b]ased on forensic testing of the Nearpod and FastBridge products, Renaissance employs the same or similar tracking tools and data sharing practices on the other Products at issue in this case." ¶ 221. Further, additional forensic analysis is not required at this stage and is instead a matter for discovery.

personal information would not be highly offensive to a reasonable person. Mot. at 31-32. But Plaintiffs extensively allege facts that, when taken together, plausibly allege that Renaissance's disclosures would be highly offensive to a reasonable person.

Plaintiffs allege that they have an expectation of privacy based on COPPA and FERPA and that Renaissance's violation of COPPA and exceeding the scope of the "school official" exception under FERPA is highly offensive conduct. *See Turner*, 737 F. Supp. 3d at 884 ("A violation of federal law is generally considered egregious, and because COPPA prohibits such data collection from minors to protect their privacy, plaintiffs have adequately pleaded an egregious intrusion into the minors' expectation of privacy."); *In re Tiktok*, 2025 WL 3628598, at *16 ("Consistent with *Turner*, *McDonald*, and *Hubbard*, the Court finds that Plaintiffs' allegations that Defendants targeted children and knowingly violated COPPA sufficient to plead the requisite offensiveness at this stage."). As these decisions show, there is no requirement of a private right of action under a privacy statute for a court to consider a violation of those statutes in evaluating privacy claims.

Specifically, Plaintiffs plausibly allege that Renaissance violated multiple provisions of COPPA and that its actions do not comport with multiple provisions of FERPA. ¶¶ 88-90, 92-93, 95, 98, 270, 315 (violated COPPA by failing to provide parents access to personal information of their under-13 children), ¶ 233 (violated COPPA by amending its list of purported subprocessors without notice to parents), ¶ 313 (violated COPPA by failing to provide parents with notice of its data practices) ¶¶ 295, 314 (violated COPPA by failing to obtain parental consent before collecting, using, or disclosing children's personal information), ¶¶ 75-87, 99-225, 231-58, 304-06, 326-329 (violated FERPA by taking personal and private information directly from students and in excess of "education records;" by generating, taking, using, and disclosing student data more than necessary for legitimate educational interests; and by redisclosing student data to myriad third parties without obtaining

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

parental consent). Plaintiffs further plausibly allege that Renaissance falsely states that it complies with COPPA and that it operates in compliance with the "school official" exception under FERPA, further alleging offensive conduct. ¶¶ 311-29.

Further, Plaintiffs allege far more than COPPA and FERPA violations, significant as those violations are. Contrary to Renaissance's contention that Plaintiffs do not allege that the personal information taken from them is sufficiently personal and private, Plaintiffs allege that Renaissance takes and discloses a vast array of personal and sensitive information, including personal information about their academic progress, abilities and struggles, work ethic, attention span, social-emotional or behavioral problems, and lunch balance, ¶ 4; their contact information, identifying demographic information, assignment submissions, assessment scores, browser and device data, and behavioral data including whether they are at risk for social-emotional behavior problems, ¶ 19; their skill and subject mastery, strengths and weaknesses, depth of understanding, comprehension challenges, and social-emotional and behavioral health, ¶ 53; their knowledge, understanding and engagement with lesson content, thought processes and learning habits, mastery of a skill, ability to communicate thoughts and think critically, and the likelihood students will pass upcoming assessments, ¶ 61; rankings of their social and emotional behavior, ¶ 69; whether they are at risk for social or emotional problems, how accurately they perceive themselves, and whether to require them to submit to an emotional regulation program or other intervention, ¶ 70; their physical location, browser language, time spent on particular pages, parts of products used, links clicked, search terms, and keywords, ¶ 76; metadata demonstrating their behavior and learning habits, ¶ 78; their response time, error patterns, gaps in mastery, engagement and focus, work ethic, and test-taking strategies, ¶ 79; their in-app assessment performance, ¶ 81; their participation in lesson activities, engagement with educational videos, and submission of assignment responses, ¶ 154; which pages they visited and for how long, and the number of sessions in which they

participated and engagement time, ¶ 158, 198; specific videos they watch and for how long, and specific content and lessons they interact with and for how long ¶ 159; detailed lesson metadata, ¶ 161; personally identifiable information identifying them as individuals who requested or obtained specific instructional video materials, ¶ 163; their media consumption across multiple devices, ¶ 177; their activity across websites, ¶ 131; their "exact behavior," ¶ 208; whole child data, ¶ 265; and the equivalent of credit reports on children, ¶ 351.[11]

In addition, and as detailed above, Plaintiffs extensively allege that Renaissance shared Plaintiffs' personal and sensitive information with a multitude of third-party commercial entities, including those disclosed by Renaissance, ¶ 238-50, and many others that Renaissance conceal that are discoverable only through forensic analysis, as conducted in this case, ¶¶ 99-225. The concealed third-party companies include numerous global advertising and identity-resolution companies with commercial interests in using and further sharing the data, and that use the data to build profiles of each student for the purpose of targeted advertising.

"Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Riganian*, 791 F. Supp. 3d at 1088 (cleaned up). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests can the question of a serious or highly offensive invasion be adjudicated as a matter of law." *Id*. (cleaned up); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021). And as previously mentioned, at least one California court has concluded that allegations that an EdTech company "collects, for its own commercial benefit, data about public-school kids from information that the students share as part of their legally required education . . . without parental notice or consent . . . plausibly

---

[11] Renaissance argues that Plaintiffs do not adequately allege that the social-emotional data collected by its SAEBRS product is disclosed to third parties. Mot. at 13 n.2, 32 n.20. But Plaintiffs allege extensive data-sharing, ¶¶ 99-225, 238-50, and further forensic analysis of Renaissance's products is a matter for discovery.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

describes conduct that is highly offensive to a reasonable person and constitutes an egregious breach of the social norms." *Cherkin*, 2025 WL 844378, at *3 (cleaned up); *see also Turner*, 737 F. Supp. 3d at 884 (minors adequately alleged reasonable expectation of privacy in their personal information disclosed on apps).

### 3. Plaintiffs plausibly allege that their data is of no legitimate concern to the public.

Renaissance contends that Plaintiffs fail to adequately allege that the student data disclosed by Renaissance was not of "legitimate concern to the public" or that Renaissance acted unreasonably or recklessly with respect to or with knowledge that there was a "legitimate public interest" in the information. Mot. at 33. Renaissance contends that Plaintiffs "offer[] no basis to discount the public interest in the availability of educational software in schools." *Id*.

But the proper question is whether there is a legitimate public interest in *the data disclosed*, not whether there is a legitimate public interest in the system underlying the collection and disclosure of that data. The question is thus whether there is a legitimate public interest *in Plaintiffs' personal information extracted from them as they do their schoolwork*. Plaintiffs plausibly allege that there is not. ¶¶ 336-37, 498, 513, 663 (alleging that there is no legitimate public interest in millions of minor schoolchildren's online school activities and behavior, academic assessments, social-emotional or behavioral health, and the myriad other personal and sensitive information taken and disclosed by Renaissance). As explained in section A, *supra*, COPPA and FERPA demonstrate a legislative intent to strictly limit disclosure of schoolchildren's personal information , thereby establishing that there is no legitimate public interest in that personal information.

### E. Plaintiffs plausibly allege facts supporting their unjust enrichment claims.

Renaissance argues that Plaintiffs do not adequately allege two elements of their unjust-enrichment claims under Kansas and Wisconsin law: (1) that Plaintiffs

conferred a benefit upon Renaissance, and (2) that it is inequitable under the circumstances for Renaissance to accept or retain the benefit without paying its value. Mot. at 33-35. Plaintiffs plausibly allege both.

### 1. Plaintiffs plausibly allege a benefit conferred on Renaissance.

Renaissance contends that Plaintiffs fail to adequately allege a benefit or how it was received by Renaissance. *Id*. at 33-34. Not so.

Plaintiffs allege that the benefit received by Renaissance is a wealth of valuable personal and sensitive data, which Renaissance uses and shares to generate revenue. ¶¶ 7-8, 35-38, 353-58, 380-81, 390-92. Specifically, Plaintiffs allege that Renaissance generates vast revenue from using student data to build, market, deliver, and improve its products, including to its artificial-intelligence technologies, ¶¶ 33, 225, 235, 237, 258, 260-69, 271; obtain and implement valuable data-sharing agreements with third-party companies, ¶¶ 245-46, 252; attract and receive tens of millions of dollars from investors, ¶¶ 48-49; and receive valuable analytics and behavioral-insight services from third-party advertising, analytics, and identity-resolution companies, ¶¶ 99-105.

Plaintiffs also allege that Renaissance's data-sharing agreements with third-party companies are "beneficial to both Renaissance and the third parties" because "[t]he companies all monetize the data in numerous ways, such as by using it to develop and enhance their own products, facilitate greater data analytics and 'user insights,' improve internal operations, or more effectively target their marketing efforts and attract new customers." ¶ 252. As further alleged, "[t]hese types of indirect data monetization can be at least as valuable to a company as directly monetizing it through the sale of raw or aggregated data." *Id*.

Thus, Plaintiffs allege far more than "that the provision of their personal information to Renaissance, without more, constitutes a benefit[,]" as Renaissance contends. Mot. at 34. Renaissance's cases are distinguishable. *Giasson v. MRA Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 940-41 (E.D. Wis. 2025) (plaintiff did not

allege a conferred benefit by alleging only that defendant used her personal information "to facilitate its business operations"); *In re Emporia Prop. Grp., LLC*, 2022 WL 567727, at *7 (Bankr. D. Kan. Feb. 24, 2022) (plaintiff made only conclusory allegation that "[d]efendants had a benefit conferred upon them by the [i]nvestors" and did not allege what benefit was received, from whom it was received, and how it was received).

### 2. Plaintiffs plausibly allege that it is inequitable for Renaissance to retain the benefit.

Renaissance contends that Plaintiffs do not adequately allege inequitable retention of the benefit because "Plaintiffs receive Renaissance's sophisticated educational products in exchange for this benefit, for free." Mot. at 34. This argument fails at each step.

First, Plaintiffs do not, as Renaissance misstates, concede that "they receive 'improved' educational products because of Renaissance's use of their personal information." Mot. at 34. Renaissance's argument misleadingly suggests that Plaintiffs concede that its products are improved over other educational products or traditional educational techniques when Plaintiffs make no such concession. Rather, Plaintiffs discuss the issue of improvement only in the context of Renaissance using their information to improve *its own products* for its own commercial benefit. ¶¶ 33, 235, 260, 537.

Second, Renaissance once again cites inapposite cases involving adults voluntarily entering into commercial transactions. *Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 843 (E.D. Wis. 2021) (no inequity where plaintiffs purchased GM vehicle because they received vehicle in exchange for money even though vehicle was allegedly defective); *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *6 (E.D. Wis. July 1, 2019) (no inequity where plaintiff purchased and received dog food in exchange for money even if it was not dog food he wanted). Again, Plaintiffs did not voluntarily enter into a commercial transaction with

Renaissance for educational services. *See* Order [Dkt. 59] at 19 ("Plaintiffs are not in a position to 'choose one product over another'"). Rather, Plaintiffs are entitled and required to go to school, their use of Renaissance products was required by their schools as part of their compulsory education, and their parents were given neither notice nor an opportunity to consent or withhold consent to Renaissance's data-mining practices. ¶¶ 20, 233, 272-309, 313, 335, 379. Plaintiffs' schools, not Plaintiffs, are the contracting parties that choose to purchase Renaissance's products. Plaintiffs and other students are entitled and required to receive educational services regardless of how their schools choose to deliver those services to them. As Plaintiffs explicitly allege in the SAC, "[i]n exchange for the[] benefits to Renaissance, Plaintiffs and Nationwide Class members received nothing but educational services to which they were already legally entitled and required to receive." ¶ 537.

Renaissance anticipates the argument that Plaintiffs are legally entitled to use Renaissance's products as part of their public education. Mot. at 34-35. But that is not what Plaintiffs argue. They argue that they are legally entitled to receive *public educational services*, not that they are legally entitled to use *Renaissance's* services. That their schools choose to contract with Renaissance and require Plaintiffs to use its services is merely their schools' decision about *how to deliver* those educational services. Plaintiffs do not receive anything other than what they were already entitled to receive: public educational services, which happened to be provided by Renaissance.

In countering the anticipated argument that Plaintiffs were entitled to use Renaissance's products as part of their public education, Renaissance first cites a 1974 case in which the Wisconsin Supreme Court addressed the types of items that were included in Wisconsin's "free" education. *See Board of Educ. v. Sinclair*, 222 N.W.2d 143, 148 (Wis. 1974) (discussing whether textbooks, workbooks, notebooks, gym suits, and towels, among other things, fell within "free" provisions

of Wisconsin Constitution). There is no evidence at this stage that EdTech tools and products fall outside of Wisconsin's provision of free education, and even if there were, Plaintiffs argue only that they were entitled to receive educational services, not services specifically provided by Renaissance or any other EdTech company.

Renaissance also cites *Shanahan*, but it misrepresents the court's holding. Mot. at 34 (citing 2026 WL 982855, at *4). Renaissance cites *Shanahan* for the proposition that the "requirement to attend school does not extend to use of in-school ed-tech software." *Id*. at 34-35. But the issue in *Shanahan* was whether plaintiff schoolchildren had voluntarily accepted the benefits of a contract with an EdTech company such that they would be bound to the arbitration agreement in the contract.2026 WL 982855, at *4. The court held that the plaintiffs had the burden to prove lack of voluntariness and remanded for a determination of whether the plaintiffs (1) continued to use IXL products and (2) if so, whether such use was voluntary. *Id*. The court noted that Kansas law required the plaintiffs to attend school, not to use IXL's products, but did so only with respect to the issue of voluntariness under California Civil Code section 1589, which is not at issue here. *Id*.

Because Plaintiffs plausibly allege their unjust-enrichment claims, those claims should not be dismissed.

### CONCLUSION

Plaintiffs respectfully request that the Court deny Renaissance's motion to dismiss in its entirety. To the extent necessary, however, Plaintiffs request leave to amend the SAC. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).[12]

---

[12] Renaissance argues that the SAC should be dismissed with prejudice if this Court determines dismissal is warranted. Mot. at 39. But Plaintiffs have made a good-faith attempt to correct any deficiencies identified in this Court's Order and have added additional claims and extensive allegations in the SAC. By contrast, in Renaissance's cited case, *Kiprilov v. Nat'l. Bd. of Med. Exam'rs*, 2016 WL 6900724, at *1 (C.D. Cal. Oct. 24, 2016), the plaintiff repeated the same allegations as those made in her previously dismissed claim and made incorrect factual assertions.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 8:25-CV-01379-FWS-JDE**

Dated: June 15, 2026

Respectfully submitted,

By: */s/ Andrew Ready Tate*
Andrew Ready Tate*
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(314) 669-3600
atate@peifferwolf.com

Melisa A. Rosadini-Knott
(California Bar No. 316369)
**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**
3435 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90010-1923
(323) 982-4109
mrosadini@peifferwolf.com

Julie U. Liddell*
**EDTECH LAW CENTER PLLC**
904 Rio Grande St., Suite 100
Austin, Texas 78701
(737) 351-5855
julie.liddell@edtech.law

Karen Dahlberg O'Connell*
**ALMEIDA LAW GROUP LLC**
157 Columbus Ave, 4th Floor
New York NY 10023
(347) 395-5666
karen@almeidalawgroup.com

Lori G. Feldman*
**HECHT PARTNERS LLP**
125 Park Avenue, 25th Floor
New York, NY 10017
Main Phone: (212) 851-6821
LFeldman@hechtpartners.com

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
8:25-CV-01379-FWS-JDE**

e-servicecapg@hechtpartners.com

\* *pro hac vice* granted

*Counsel for Plaintiffs and the Proposed Classes*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**8:25-CV-01379-FWS-JDE**

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 9,960 words, which complies with the 10,000-word limit set by the Court Order entered on March 27, 2026 (Dkt. 62).

June 15, 2026

*/s/ Andrew Ready Tate*
Andrew Ready Tate

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**8:25-CV-01379-FWS-JDE**