COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

NAOMI HARRALSON MAY (291462)
(nmay@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

STEPHANIE SCHUYLER
(Admitted *Pro Hac Vice)*
(sschuyler@cooley.com)
ERIKA P. BRIGANTTI ABRAHAM
(Admitted *Pro Hac Vice*)
(ebrigantiabraham@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

Attorneys for Defendant
RENAISSANCE LEARNING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION - SANTA ANA

M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian AMY WARREN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

RENAISSANCE LEARNING, INC.,

Defendant.

Case No. 8:25-cv-01379-FWS-JDE

**DEFENDANT RENAISSANCE LEARNING, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date: September 10, 2026
Time: 10:00 a.m.
Courtroom: 10D

Pretrial Conference: March 9, 2028
Trial Date: April 4, 2028

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
  A. The Court Should Disregard Plaintiffs' Policy Manifesto ..... 2
  B. The Court Should Dismiss Plaintiffs' "Withdrawn" Claims With Prejudice (Counts II, VIII, X, and XIV) ..... 3
  C. The Party Exception Bars Plaintiffs' Wiretapping Claims (Counts I and IX) ..... 5
  D. Plaintiffs Fail to State Claims for Invasion of Privacy (Count III) and Intrusion Upon Seclusion (Counts IV and XII) ..... 8
    1. Plaintiffs Fail to Plead a Reasonable Expectation of Privacy ..... 8
    2. Plaintiffs Fail to Plead Cognizable Intrusion ..... 12
    3. Plaintiffs Fail to Plead Intrusion Was "Highly Offensive" ..... 13
  E. Plaintiffs' Public-Disclosure-of-Private-Facts Claims Fail (Counts V, VI, and XIII) ..... 15
    1. Plaintiffs Fail to Plead Publicity ..... 16
    2. Plaintiffs Fail to Plead a Disclosure of Intimate Facts ..... 17
    3. Plaintiffs Fail to Plead No Legitimate Public Concern ..... 18
  F. Plaintiffs' Unjust Enrichment Claims Fail (Counts VII and XI) ..... 19
    1. Plaintiffs Fail to Plead a Measurable Economic Benefit ..... 19
    2. Even if Plaintiffs Had Pled a Benefit, Any Alleged Retention Is Not Inequitable ..... 21
  G. The SAC Should Be Dismissed with Prejudice ..... 23
III. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 .......... 19

*Bd. of Educ. v. Sinclair*,
222 N.W.2d 143 (Wis. 1974) .......... 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*Brahm v. Hosp. Sisters Health Sys*.,
2024 WL 3226135 (W.D. Wis. June 28, 2024) .......... 6, 7

*Brame v. General Motors LLC*,
535 F. Supp. 3d 832 (E.D. Wis. 2021) .......... 21, 22

*BRV, Inc. v. Superior Ct.*,
143 Cal. App. 4th 742 (2006) .......... 11

*Cafasso v. General Dynamics C4 Sys., Inc*.,
637 F.3d 1047 (9th Cir. 2011) .......... 23

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 5

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......... 14, 15, 18

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 18

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 10

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 9, 10

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) .......... 9, 10

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) .......... 6

*Doe v. Tenet Healthcare Corp*.,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 7

*In re Emporia Property Group, LLC*,
2022 WL 567727 (Bankr. D. Kan. Feb. 24, 2022) .......... 19, 20

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Evans v. Amazon.com, Inc.*,
759 F. Supp. 3d 891 (E.D. Wis. 2024) .... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 10

*Frye v. IBP, Inc.*,
15 F. Supp. 2d 1032 (D. Kan. 1998) .... 9

*Gassman v. Guardian Credit Union*,
2026 WL 884211 (E.D. Wis. Mar. 31, 2026) .... 7

*Giasson v. MRA - Mgmt. Ass'n, Inc.*,
777 F. Supp. 3d 913 (E.D. Wis. 2025) .... 19, 20

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .... 7

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .... 17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 8, 11, 13

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
403 F.3d 683 (9th Cir. 2005) .... 4

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .... 8

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .... 9, 10, 16

*Hillman v. Columbia Cnty.*,
164 Wis. 2d 376 (1991) .... 16, 17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .... 13, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .... 15

*Johnson v. City of Long Beach*,
2026 WL 1020810 (C.D. Cal. Mar. 9, 2026) .... 12

*Karimi v. Golden Gate Sch. of L.*,
361 F. Supp. 3d 956 (N.D. Cal. 2019) .... 18

*Lakes v. Ubisoft*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 6, 7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Landon v. TSC Acquisition Corp.*, 2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) .......... 4

*Lazaro v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 13012735 (C.D. Cal. Sept. 17, 2012) .......... 5, 23

*Levy v. 24 Hour Fitness Worldwide, Inc. (Santa Monica)*, 2013 WL 2456566 (N.D. Cal. June 6, 2013) .......... 5

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 23

*Lutfi v. Al Naimi*, 2018 WL 6265082 (C.D. Cal. Jan. 17, 2018) .......... 18

*McKenzie v. Foley*, 1995 WL 18253130 (Kan. App. Aug. 11, 1995) .......... 17

*Mirabelli v. Olson*, 691 F. Supp. 3d 1197 (S.D. Cal. 2023) .......... 12

*Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114762 (C.D. Cal. Oct. 8, 2013) .......... 11

*Nabeel v. Taylor Swift Prods., Inc.*, 2024 WL 4444483 (C.D. Cal. July 31, 2024) .......... 18

*Pachowitz v. LeDoux*, 265 Wis. 2d 631 (2003) .......... 16

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) .......... 5, 6

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 6

*R.S. v. Prime Healthcare Servs.*, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 7

*Reade v. N.Y. Times Co.*, 2022 WL 2396083 (E.D. Cal. July 1, 2022) .......... 18

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 7, 17

*Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 9, 10

*Rowell v. King*, 2005 WL 2099718 (D. Kan. Aug. 30, 2005) .......... 14

# TABLE OF AUTHORITIES
(continued)


**Page(s)**

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .... 5, 12

*Settle v. Hendrix*, 1993 WL 13965689 (Kan. App. Mar. 12, 1993) .... 12

*Shanahan v. IXL Learning, Inc.*, 2026 WL 982855 (9th Cir. Apr. 13, 2026) .... 3, 22

*Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200 (1998) .... 15

*Shutts v. Phillips Petroleum Co.*, 222 Kan. 527 (1977) .... 20, 21

*Silva v. U.S. Bancorp*, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) .... 4

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .... 7

*Steril-Aire, Inc. v. First Light Techs., Inc.*, 2010 WL 11519628 (C.D. Cal. Feb. 25, 2010) .... 4

*Sussman v. Am. Broad. Co.*, 186 F.3d 1200 (9th Cir. 1999) .... 6

*In re TikTok, Inc., Minor Privacy Litigation*, 2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) .... 11, 17

*A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) .... 13

*Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139 (E.D. Wis. July 1, 2019) .... 21, 23

*Werner v. Kliewer*, 238 Kan. 289 (1985) .... 16

*Woods v. City of Hayward*, 2020 WL 1233841 (N.D. Cal. Mar. 13, 2020) .... 12

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .... 10

*Zocco v. Nelnet, Inc.*, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) .... 7

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .... 5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

California Unfair Competition Law ........ 1

Children's Online Privacy Protection Act ........ *passim*

Electronic Communications Privacy Act ........ 5, 6, 7

Video Privacy Protection Act ........ 1

Wis. Stat. Ann. § 995.50(2)(am)(1) ........ 8

Wisconsin Deceptive Trade Practices Act ........ 1

Wisconsin Electronic Surveillance Control Law ........ 5, 7

**Other Authorities**

34 C.F.R. § 99.30 et seq. ........ 11

Federal Rule of Civil Procedure 15 ........ 4

Federal Rule of Civil Procedure 41 ........ 4

# I. INTRODUCTION

The Second Amended Complaint ("SAC," Dkt. No. 60) is a policy wish-list disguised as legal claims, which Plaintiffs' opposition brief ("Opposition" or "Opp.," Dkt. No. 65) does nothing to salvage. After multiple amendments, the claims remain fatally defective and must be dismissed for the reasons set forth below and in Renaissance's Motion to Dismiss (the "Motion" or "Mot.," Dkt. No. 63).

Plaintiffs do not even bother trying to defend four of the claims: (1) Count II (California Unfair Competition Law), (2) Count VIII (negligence), (3) Count X (Wisconsin Deceptive Trade Practices Act), and (4) Count XIV (Video Privacy Protection Act). In apparent recognition of the merits of the Motion, Plaintiffs purport to withdraw them "without prejudice." Because Plaintiffs do not comply with the rules governing amendment or seek leave of Court, however, the "withdrawal" is legally ineffective. And to the extent Plaintiffs' attempt to drop the claims is a strategic move to avoid an order granting the Motion with prejudice, the Court should not condone it. Plaintiffs have already made three attempts to plead viable claims and should not be permitted to reserve rights to a fourth amendment.

As to the remaining claims, Plaintiffs begin with a lengthy political manifesto designed to distract from the weakness of those claims, which must be dismissed. The SAC does not plausibly plead a claim for wiretapping (Count I and IX) because Renaissance is a party to the at-issue communications and because Plaintiffs fail to allege Renaissance had a separate tortious intent beyond the act of interception, which would be necessary to invoke the crime-tort exception. Plaintiffs' state-law invasion of privacy claim (Count III) and intrusion upon seclusion claims (Counts IV and XII) must be dismissed because neither the SAC nor the Opposition offers any basis for the Court to reconsider its prior conclusion that Plaintiffs fail to plead a reasonable expectation of privacy or a cognizable intrusion. Likewise, the claims for public disclosure of private facts under California, Kansas, and Wisconsin law (Counts V, VI, and XIII) fail for three independent reasons: (1) because the limited

disclosure to service providers alleged in the SAC does not constitute publicity, (2) because Plaintiffs still fail to point to any "intimate" facts that were disclosed, and (3) because Plaintiffs allege only the bare conclusion that Renaissance's activities were of "no legitimate public concern." Finally, Plaintiffs' unjust enrichment claims (Counts VII and XI) should face the same fate as in the First Amended Complaint ("FAC," Dkt. No. 30) because Plaintiffs allege no facts that could support a finding that Renaissance received a measurable economic benefit from the collection of student data and because Plaintiffs do not dispute that they received something in return—access to sophisticated educational tools—that makes Renaissance's retention of any benefit equitable.

After three attempts, Plaintiffs are no closer to pleading a viable claim. The Court should dismiss the SAC in its entirety with prejudice.

## II. ARGUMENT

### A. The Court Should Disregard Plaintiffs' Policy Manifesto

Plaintiffs dedicate the first seven pages of the Opposition to their usual policy diatribe that misrepresents Renaissance's Motion and seeks to use the Court to further their legislative and regulatory mission. Opp. at 9–15. Plaintiffs' arguments are misplaced, non-responsive, and legally irrelevant to the resolution of the Motion.

To justify their sideshow, Plaintiffs point to Renaissance's reference, in the ***factual background section*** of the Motion, to the "well-established regulatory regime" that permits schools to consent to use of edtech tools like Renaissance's products on behalf of parents. Opp. at 9 (citing Mot. at 2). Tellingly, Renaissance does not move to dismiss any claim based on FERPA, COPPA, KOPIPA or the related regulatory framework, and resolution of the meaning and application of those statutes is not necessary for the Court to grant the Motion and dismiss every claim in the SAC.[1]

---

[1] Plaintiffs also attack the straw-man argument that FERPA "does not provide a private defense." Opp. at 10. But Renaissance asserted no such thing, and Plaintiffs'

In support of their arguments about COPPA, Plaintiffs also mischaracterize the Ninth Circuit's opinion in *Shanahan v. IXL Learning, Inc.*, 2026 WL 982855 (9th Cir. Apr. 13, 2026). Opp. at 13 (asserting that *Shanahan* supports Plaintiffs' position that "the exceptions to parental consent [under COPPA] do not include providing technology services to schools"). But *Shanahan* does not stand for the sweeping proposition for which Plaintiffs cite it. It says nothing about whether COPPA permits schools to consent to technology services; rather, it addressed the narrow question of whether, on a motion to compel arbitration, COPPA "created a presumptive agency relationship between the schools and the parents, such that the schools could consent to ***arbitrate*** on [p]laintiffs' behalf," a question the court answered in the negative. *Shanahan*, 2026 WL 982855, at *2 (emphasis added). *Shanahan* thus does not determine whether Plaintiffs' schools in this case could consent to use of Renaissance products or data collection in connection with those products, much less preclude dismissal of Plaintiffs' defective claims for wiretapping and state-law torts.

Plaintiffs have failed to plausibly plead those claims. The statutes Plaintiffs cite—which contain no private right of action—cannot be used to bootstrap them, and the Court should dismiss the SAC in its entirety.

### B. The Court Should Dismiss Plaintiffs' "Withdrawn" Claims With Prejudice (Counts II, VIII, X, and XIV)

Plaintiffs' attempt to withdraw Counts II, VIII, X, and XIV is gamesmanship, plain and simple. In apparent recognition of the strength of Renaissance's motion to dismiss those claims, the Opposition attempts to "withdraw" them "without prejudice" to Plaintiffs' refiling them at some future point. Opp. at 9 n.2. The "withdrawal" is procedurally improper and legally ineffective, and the Court should

---

argument merely highlights that FERPA "creates no private rights" (Opp. at 10)—including ***for Plaintiffs***, who have not asserted a claim under that statute. FERPA (as with COPPA and KOPIPA) is therefore not a basis to deny the Motion, and Plaintiffs' lengthy posturing about those statutes, Opp. at 10–15, does not move the needle on the Motion.

dismiss the claims with prejudice for at least three reasons.

***First***, a withdrawal of claims must comply with Rule 15, which Plaintiffs' cursory footnote does not.[2] *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) ("[W]ithdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendments to pleadings."); *Steril-Aire, Inc. v. First Light Techs., Inc.*, 2010 WL 11519628, at *3 (C.D. Cal. Feb. 25, 2010) ("Procedurally, a party cannot unilaterally 'withdraw' its claims without filing a motion pursuant to Rule 15 or Rule 41. [Plaintiff] made no motion to withdraw its claims, nor has the Court approved such withdrawal. Absent any evidence to support [plaintiff's] remaining claims, [defendant] is entitled to judgment."). If Plaintiffs had filed a Rule 15 motion seeking leave to amend, Renaissance would have had the opportunity to brief, among other things, the futility of Plaintiffs' reservation of rights to refile the withdrawn claims. Plaintiffs instead attempt to circumvent that process. In such circumstances, the appropriate response is for the Court to "construe" the withdrawal "to mean [plaintiffs] do not oppose the dismissal of the" claims and to dismiss them. *See Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *8 (C.D. Cal. Nov. 1, 2024).

***Second***, the Opposition fails to address Renaissance's arguments for dismissal of those claims, thereby conceding them. *See Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (dismissing claim with prejudice where plaintiff "concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition"). Other than Plaintiffs' ineffective attempt to withdraw Counts II, VIII, X, and XIV of the SAC, the Opposition does not even mention them, let alone attempt to defend them.

---

[2] Although Plaintiffs cite Rule 41(a)(1)(B), Opp. at 9 n.2, that rule only applies to dismissal of "actions," not individual claims. *See Hells Canyon Pres. Council*, 403 F.3d at 687. In any event, Plaintiffs did not follow that rule either, which requires the filing of a "notice of dismissal." Fed. R. Civ. P. 41(a)(1)(A)(i).

***Third***, as to Counts II, VIII, and X, the SAC is the third time Plaintiffs have attempted to plead these claims. Plaintiffs' failure to cure the fatal defects in the claims despite receiving multiple opportunities to do so provides an independent basis to dismiss them with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("As here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'"); *Levy v. 24 Hour Fitness Worldwide, Inc. (Santa Monica)*, 2013 WL 2456566, at *4 (N.D. Cal. June 6, 2013) (similar); *Lazaro v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 13012735, at *4 (C.D. Cal. Sept. 17, 2012) (similar). Forcing Renaissance to fully brief the defects in the third iteration of these claims, only to permit Plaintiffs to help themselves to a fourth bite at the apple, would be a waste of party and judicial resources.

Because Plaintiffs failed to properly withdraw Counts II, VIII, X, and XIV and failed to address Defendant's arguments against these claims in its Opposition, Counts II, VIII, X, and XIV should be dismissed with prejudice.

### C. The Party Exception Bars Plaintiffs' Wiretapping Claims (Counts I and IX)

Plaintiffs attempt to salvage their federal ("ECPA") and Wisconsin ("WESCL") wiretapping claims by invoking the crime-tort exception to the party exception that Renaissance argues should apply. Opp. at 15–17. But the crime-tort exception does not apply because Renaissance did not allegedly "intercept[] the communication ***for the purpose of a tortious or criminal act that is independent of the intentional act of recording***." *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010) (emphasis added), *cited with approval in Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Nor do Plaintiffs allege that Renaissance's "***primary motivation***" or a "determining factor in [its] actions" was "to injure plaintiffs tortiously." *Saedi v. SPD Swiss Precision Diagnostics GmbH*,

2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025) (emphasis added).

Plaintiffs' contrary argument is circular: Renaissance "intercepted their communications for the independent purposes of tortiously invading their privacy[.]" Opp. at 16. A plaintiff could argue that in every case, and it adds nothing. Indeed, courts have squarely rejected this exact reasoning, holding that the crime-tort exception requires a "further impropriety" that is "separate and independent" from the alleged interception. *See Planned Parenthood Fed'n of Am., Inc.*, 51 F.4th at 1135–36 (exception did not apply where the purpose of the recording was the same as the purpose of the alleged tort); *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) (no wrongful purpose beyond the recording, so no viable ECPA claim); *see also Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) (dismissing ECPA claim and noting that "[v]arious courts have held that a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself").

Seeking to avoid that result, Plaintiffs argue that Renaissance's "disclosing and using their data without their consent for advertising, marketing, analytics and other services" is separate from the act of interception and establishes a wrongful tortious purpose. Opp. at 16–17. But Plaintiffs' cited authority does not help them. In those cases, the defendant's ***primary motivation*** was to commit a further, independently actionable wrong—mainly, the disclosure of protected health or financial information in violation of HIPAA and other privacy rights. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901–902 (C.D. Cal. 2024) (denying motion to dismiss wiretapping claim where plaintiff stated viable claims for disclosure of health information in violation of HIPAA)[3]; *Brahm v. Hosp. Sisters Health Sys.*, 2024 WL

[3] In fact, it was on this basis that the court in *Lakes v. Ubisoft* declined to apply the crime-tort exception to the use of the Meta pixel tracking technology for advertising purposes, distinguishing *R.C. v. Walgreen* as applicable only to cases where a separate HIPAA violation is pled. 777 F. Supp. 3d 1047, 1057-58 (N.D. Cal. 2025).

3226135, at *5–6 (W.D. Wis. June 28, 2024) (defendants' primary motivation was disclosure of patients' personal health information for advertising, marketing, and revenue generation in violation of HIPAA); *Smith v. Rack Room Shoes, Inc*., 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (primary motivation was disclosure of personally identifiable communications in violation of defendant's own privacy policy, which the court analogized to the purpose of engaging in a HIPAA violation); *Gassman v. Guardian Credit Union*, 2026 WL 884211, at *9–10 (E.D. Wis. Mar. 31, 2026) (plaintiff independently pled Wisconsin statutory claims related to disclosure of personal financial information). Plaintiffs here fail to plead a claim for any independently injurious act, Mot. at Section IV.D–F; Section B, *supra*; Sections D–F, *infra*, and the only motivation the SAC points to is improving Renaissance's products, *see* SAC ¶¶ 432 (ECPA), 591 (WESCL).

Plaintiffs' argument that a profit motive is sufficient to establish a primary motivation to injure them fares no better. Opp. at 18. Interception ***for the purpose of financial gain*** is insufficient. Plaintiffs' cited authority hinges on ***independent*** tortious acts that could "not be excused on the grounds that [the defendant] acted in pursuit of profit." *Riganian v. LiveRamp Holdings, Inc*., 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (disclosure for purpose of building identity profiles and selling that data on the public market in violation of separate privacy rights); *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) (disclosure for purpose of violating HIPAA); *R.S. v. Prime Healthcare Servs*., 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (same); *Brahm*, 2024 WL 3226135, at *5 (same). Profit motive, standing alone, is not enough. *See In re Google Inc. Gmail Litig*., 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Lakes*, 777 F. Supp. 3d at 1058 (N.D. Cal. 2025) (same). "More is needed." *Zocco v. Nelnet, Inc*., 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026). Because Plaintiffs cannot point to an independent, actionable wrong, the bare allegation that Renaissance intercepted

Plaintiffs' data for its own financial gain is not enough to salvage Plaintiffs' wiretapping claims, which must be dismissed.

### D. Plaintiffs Fail to State Claims for Invasion of Privacy (Count III) and Intrusion Upon Seclusion (Counts IV and XII)

The Court should dismiss Plaintiffs' invasion of privacy and intrusion upon seclusion claims, just as it dismissed their prior invasion of privacy claim, because Plaintiffs fail to plead (1) a reasonable expectation of privacy, (2) a cognizable intrusion, and (3) highly offensive conduct.[4]

#### 1. Plaintiffs Fail to Plead a Reasonable Expectation of Privacy

Neither the SAC nor the Opposition offers any basis to change this Court's finding that Plaintiffs have "no reasonable expectation of privacy" in the data ***they themselves*** submitted to Renaissance's platform. Order Granting Def.'s Mot. to Dismiss Pls.' FAC ("FAC Order") at 9–10, Dkt. No. 59 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) ("no reasonable expectation of privacy when the data collection is within users' common-sense expectation")). Rather than point to any new factual allegations to support this claim, Plaintiffs rely on the same allegations this Court previously disregarded as

---

[4] Although Plaintiffs attempted to avoid the Court's prior ruling by dropping their claim under Wisconsin law and bringing claims under Kansas and California law and the California constitution instead, those claims have substantively similar elements and should be treated accordingly. *Compare* Wis. Stat. Ann. § 995.50(2)(am)(1) (intrusion claim requires "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private, or in a manner that is actionable for trespass"), *with Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("the common law tort of intrusion has two elements": (1) "the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion must occur in a manner highly offensive to a reasonable person"). Courts also regularly analyze common-law and constitutional privacy claims together. *See Hammerling*, 615 F. Supp. 3d at 1088; *Hernandez*, 47 Cal. 4th at 286.

insufficient, asking it to revisit a question it already resolved against them. *Compare* SAC ¶¶ 464, 467, 478, 480, 483, 496, 499, 501, 514, 516, 563, 588, 623, 643, 645, 647, 662, 664, 666 (cited in Opp. at 21), *with* FAC ¶¶ 435–38 (cited in Dkt. No. 52 at 17).[5] That is far from enough to plead an expectation of privacy "founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 42 (1994); *see also Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1040 (D. Kan. 1998) (a plaintiff "must show that both the manner of the intrusion and the nature of the information sought rise to the level of being highly offensive to a reasonable person"). Plaintiffs' arguments to the contrary are unavailing.

***First***, Plaintiffs argue that a reasonable expectation of privacy is a question of fact not amenable to resolution at the pleadings stage. Opp. at 23. But courts regularly dismiss claims for failure to plead facts giving rise to a reasonable expectation, as this Court did previously. *See* FAC Order at 7–9; Mot. at 14–16 (citing cases)*; see also Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, at *5 (C.D. Cal. Apr. 20, 2026) (dismissing California constitutional and common-law invasion of privacy claims for lack of Article III standing because "the intercepted information Plaintiffs cite does not provide a sufficient basis to establish an expectation of privacy"); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (holding no expectation of privacy sufficient to establish Article III standing for an intrusion upon seclusion claim based on collection of PII by tracking pixels and transmission to third-party servers to construct profiles to facilitate targeted advertising); *Rodriguez v. Culligan Int'l Co.,* 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (similar).

---

[5] The only new allegations to which Plaintiffs point rely on COPPA and FERPA to create a reasonable expectation of privacy, *see* Opp. at 21 (citing SAC ¶¶ 467, 483, 496, 563, 643, 647, 662, 666), but, as explained below, those statutes cannot create a reasonable expectation of privacy where there is none. *Infra*, at 10-11.

***Second***, Plaintiffs do not meaningfully engage with Renaissance's argument that the ubiquity and institutional approval of edtech tools inform widely accepted community norms. Mot. at 15 (citing SAC ¶¶ 39, 41). Indeed, it is widely accepted that there is no reasonable expectation of privacy in the type of information at issue here sufficient to establish standing, let alone to state a claim. *See Diaz*, 2026 WL 1090958, at *5; *Dawidzik.*, 2025 WL 3786963, at *5; *Rodriguez,* 2025 WL 3064113, at *5; Mot. at 14–16. Plaintiffs cite no contrary authority.

***Third***, Plaintiffs' argument that "Plaintiffs' use of Renaissance's products was involuntary and without their parents' consent," Opp. at 20, fares no better, as choice is not a factor in the reasonable expectation of privacy analysis. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) ("the case law suggests that in determining whether a plaintiff has satisfied the elements of the claim, ***a plaintiff's lack of consent does not matter*** so much as the nature of the information in which he or she alleges a privacy interest" (emphasis added)). Failure to obtain consent does not ***create*** a reasonable expectation of privacy in the underlying information, and the sole case Plaintiffs cite on this point is factually inapposite. Opp. at 23 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602–03 (9th Cir. 2020) (finding reasonable expectation of privacy where Facebook "set an expectation that logged-out user data would not be collected" through affirmative statements it would not, but continued to track users off-site to collect "an enormous amount of individualized data")); *see D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1205 (S.D. Cal. 2024) (distinguishing *In re Facebook* and finding no reasonable expectation of privacy because "Plaintiffs do not allege that Defendant set out an expectation that it would not collect" data).

***Fourth***, Plaintiffs point to allegations of COPPA and FERPA violations, but those statutes alone—which contain no private right of action—cannot, without more, create a reasonable expectation of privacy in the underlying information, and Plaintiffs cite no authority to the contrary. *See* Mot. at 14–15; *Hill*, 7 Cal. 4th at 42.

Plaintiffs' reliance on *In re TikTok, Inc., Minor Privacy Litigation*, 2025 WL 3628598, at *14 (C.D. Cal. Nov. 5, 2025), in support of this point is misguided. *TikTok* is factually inapposite, as it involved a knowing violation of a ***prior*** $5.7 million COPPA civil penalty and injunction barring data collection from children (which itself set the reasonable expectation of privacy). Further, that case reinforces that a COPPA violation, even in those circumstances, is ***not*** dispositive in the reasonable expectation of privacy analysis and should only be considered to the extent it affects (if at all) any of the "customs, practices, and circumstances surrounding the data collection." *In re TikTok, Inc.*, 2025 WL 3628598, at *14 (quoting *Hammerling*, 615 F. Supp. 3d at 1088). As Plaintiffs themselves allege, Renaissance is a school-contracted educational services provider receiving authorization for its data practices from schools, such that "customs, practices, and circumstances" do not support a plausible claim of a reasonable expectation of privacy. SAC ¶¶ 3, 5, 10; *see also Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114762, at *24 (C.D. Cal. Oct. 8, 2013) (holding that "right to privacy in educational records" under FERPA is not "absolute" and dismissing California constitutional privacy claim based on non-consensual gathering of "private educational information" information).

Plaintiffs' allegations of FERPA violations also do not support a reasonable expectation of privacy, particularly where Renaissance's data use is expressly authorized by the Local Educational Agency ("LEA") school official exception (also known as the contractor exception), which allows Renaissance to receive education records without the consent otherwise required by section 99.30. 34 C.F.R. § 99.31(a)(1)(i)(B). Plaintiffs cannot invoke FERPA's privacy protections while ignoring the statutory authorization that brings Renaissance's conduct squarely within them. Plaintiffs' cited cases are inapposite, as they do not address whether FERPA creates a reasonable expectation of privacy for an intrusion claim. *See BRV, Inc. v. Superior Ct.*, 143 Cal. App. 4th 742 (2006) (discussing FERPA in context of

releasing report about superintendent's misconduct); *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023) (same, in context of teachers' suit against school for school policy prohibiting them from disclosing students' gender identity to parents). Plaintiffs' COPPA and FERPA allegations do not support a reasonable expectation of privacy here.[6]

**2. Plaintiffs Fail to Plead Cognizable Intrusion**

This Court has already recognized that "one cannot logically intrude into communications to which they are a party." FAC Order at 7 n.1 (quoting *Saedi*, 2025 WL 1141168, at *8). Plaintiffs respond by arguing that their use of Renaissance products was involuntary because they were minors. Opp. at 24. But they cite no authority (and Renaissance is aware of none) for the proposition that being a minor converts them into non-parties to their own communications or otherwise converts Renaissance into an "intruder" for purposes of their privacy claim.[7]

Plaintiffs' effort to distinguish *Settle v. Hendrix*, 1993 WL 13965689 (Kan. App. Mar. 12, 1993), by arguing that Renaissance "itself took" their data (as opposed to a third party), Opp. at 24, misreads the case and goes beyond the SAC's own allegations. *Settle* held that no intrusion claim lies where the defendant obtained the

---

[6] Plaintiffs' suggestion that the burden rests on Renaissance to disprove an expectation of privacy for every category of data, Opp. at 20 (citing *Woods v. City of Hayward*, 2020 WL 1233841, at *10 (N.D. Cal. Mar. 13, 2020)), misapprehends the pleading standard. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it is ***Plaintiffs*** who must plausibly allege each element of their claims, including a reasonable expectation of privacy, *see Johnson v. City of Long Beach*, 2026 WL 1020810, at *6 (C.D. Cal. Mar. 9, 2026) (under *Twombly*, "facts are necessary to establish each element of the claim"); they cannot shift that burden to the moving party. Plaintiffs' failure to distinguish the data types they assert an expectation of privacy in, or to allege any factual basis for that expectation, is a failure of pleading, not of Renaissance's briefing.

[7] Plaintiffs expressly concede Renaissance's argument that its alleged ***disclosure*** (as opposed to collection) of data to third parties does not constitute a separate "intrusion" under the law. Opp. at 24–25 (conceding intrusion claim is based only on "collection and use"); Mot. at 16–17.

plaintiff's information through the plaintiff's own interaction with a platform, precisely the scenario the SAC alleges here. 1993 WL 13965689, at *2. Plaintiffs' characterization that Renaissance "sought out" their data, Opp. at 24, cannot be squared with their own pleading that it was collected "through their use of its Products." SAC ¶ 54.

### 3. Plaintiffs Fail to Plead Intrusion Was "Highly Offensive"

None of the SAC's allegations justify a departure from this Court's prior finding that "Plaintiffs have not adequately alleged 'that the alleged intrusion into [their] privacy would be highly offensive to a reasonable person.'" FAC Order at 9 (citation omitted). The SAC allegations the Opposition cites for this point are substantively identical to those in the FAC that the Court already rejected as insufficient. Opp. at 25–26. As set forth in the Motion, Plaintiffs fail to meet the "high bar" required for a finding of highly offensive intrusion. Mot. at 17–18 (citing *Hammerling*, 615 F. Supp. 3d at 1088).

In response, Plaintiffs ask the Court to make a categorical decision that allegations of COPPA violations are sufficient to constitute highly offensive conduct as a matter of law. Opp. at 26–27 (citing *A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024)). But COPPA violations do not, *per se*, constitute highly offensive conduct for an invasion of privacy claim. *Hubbard v. Google LLC* is instructive on this point. In that case, the plaintiff, also citing *Turner*, advanced the same theory as Plaintiffs do here, namely that "Defendants' collection of children's data necessarily constitutes highly offensive behavior as an alleged violation of the COPPA . . . ." 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024). The court squarely rejected that interpretation of *Turner*, finding instead that "violations of law do not necessarily represent highly offensive behavior." *Id.*

Plaintiffs' assertion that "Renaissance falsely states that it complies with COPPA," Opp. at 25–26, also does not provide a basis to find a highly offensive intrusion. Aside from being conclusory and unsupported by substantive factual

allegations, the assertion also fails to account for Renaissance's argument that good-faith adherence to FTC guidance authorizing school consent precludes any finding of highly offensive conduct as a matter of law. Mot. at 18 (citing *Rowell v. King*, 2005 WL 2099718, at *2 (D. Kan. Aug. 30, 2005) (conduct conforming to regulatory directives "cannot . . . be characterized as 'beyond all possible bounds of decency'" (citation omitted))). Plaintiffs offer no specific, non-conclusory facts establishing that any representation about COPPA compliance was false; their allegations are at most that Renaissance's interpretation of COPPA differs from theirs—a legal dispute that does not transform a data-collection practice into a highly offensive intrusion.

Plaintiffs also cite *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025), in support of their COPPA argument, Opp. at 26, but that case is factually inapposite and does not support a finding of a "highly offensive" intrusion here. ***First***, the court in *Cherkin* found offensive conduct in allegations that PowerSchool embedded tracking technologies permitting it to "track [students] across the internet for purpose of collecting data" even after students "navigated away from PowerSchool's application or website." 2025 WL 844378, at *2. Because students could log on to PowerSchool using family-owned devices, its tracking technologies followed students into their homes and across the internet. Plaintiffs here allege no off-platform or cross-device surveillance. ***Second***, PowerSchool is a centralized school database system that maintained extensive records that students did not provide to it, including health and disciplinary records, student grades, evaluations, and behavioral data. *Id.* Renaissance, by contrast, is an online classroom platform, and Plaintiffs allege only that it collected information from students "***through their use of its Products***," SAC ¶ 54, and "***when they use its Products***," *id*. ¶ 77 (emphases added). Even the SAEBRS social-emotional data Plaintiffs allege Renaissance collects is collected through a structured survey instrument that students (or their teachers on their behalf) ***knowingly complete*** as a directed school activity, SAC ¶¶ 67–70, unlike in *Cherkin*, where "social-emotional learning indicators" were

harvested passively through automated, platform-level surveillance of students' activities without their knowledge or directed input. 2025 WL 844378, at *2. Deliberate, supervised responses to a structured survey bear no resemblance to the passive, cross-system data harvesting—that extended to personal devices and into students' homes—that animated the *Cherkin* court's offensiveness analysis. Because the offensiveness inquiry is "context specific" and "each case must be taken on its facts," *id.* (quoting *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998)), *Cherkin* does not support a finding of highly offensive conduct on Plaintiffs' materially narrower allegations.

Plaintiffs' attempt to distinguish Renaissance's case law holding that data sharing practices like those alleged here are not "highly offensive," Mot. at 17–18, on the ground that those cases involved "adults who voluntarily chose to visit websites[,]" Opp. at 27, is likewise unavailing. "[C]ollection of internet-browsing data and persistent identifiers, does not obtain a more-offensive status merely because the behavior happened to involve a child in a particular instance." *Hubbard*, 2024 WL 3302066, at *8. Plaintiffs' status as minors, without more, does not convert Renaissance's receipt of their routine educational data into a highly offensive intrusion. Nor does Plaintiffs' allegation that the data was allegedly collected without "parental consent," Opp. at 27, change the analysis. Plaintiffs cite no authority for this proposition, and in fact, the relevant authority is to the contrary. Mot. at 18 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure does not constitute an egregious breach of social norms.")).

### E. Plaintiffs' Public-Disclosure-of-Private-Facts Claims Fail (Counts V, VI, and XIII)

The Opposition cannot save Plaintiffs' public-disclosure-of-private-facts claims from the fatal defects that remain in the SAC, on which this Court based its

decision dismissing the analogous claim in the FAC. *See* FAC Order at 8–9. Specifically, Plaintiffs still fail to plead (1) publicity, (2) a disclosure highly offensive to a reasonable person, and (3) no public concern.

**1. Plaintiffs Fail to Plead Publicity**

Plaintiffs offer no new allegations that would alter this Court's finding that "the limited number of third parties to which Renaissance allegedly disclosed Plaintiffs' allegedly private information, and the lack of any alleged special relationship or other facts that would support a particular level of embarrassment due to the disclosure to these particular third-parties . . . do not adequately support [publicity]." FAC Order at 9. The allegations in the SAC on which the Opposition relies are substantively identical to those the Court already rejected in the FAC as insufficient. Opp. at 28; *compare* FAC ¶¶ 32, 132, 136–37, 141–49, 152–53, 156–70, 197–211, 171–81, 182–83, 184–86, 187–90, 191–95, 212–19, *with* SAC ¶¶ 33, 231, 238–41, 245–51, 118, 125–47, 187–206, 148–66, 167–69, 216–19, 170–73, 174–78, 179–84, 207–215 254.[8]

Plaintiffs also cite no authority for their argument that disclosure to third-party vendors establishes publicity. Plaintiffs concede Renaissance did not share information with the public at large and do not dispute that they must allege disclosure "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Werner v. Kliewer*, 238 Kan. 289, 294 (1985); *Pachowitz v. LeDoux*, 265 Wis. 2d 631, 643 (2003) (quoting *Hillman v. Columbia Cnty.*, 164 Wis. 2d 376, 394 (1991)); *accord Hill*, 7 Cal. 4th at 42. A mere allegation of disclosure to "a multitude of third parties," as Plaintiffs allege here, Opp. at 28–29, is insufficient. *See id.* Plaintiffs instead rely on factually inapposite

[8] The only new allegation—Plaintiffs' speculation that Renaissance "makes no warranty" about how third-party service providers maintain data, SAC ¶ 254—without more, has no bearing on the question of publicity and certainly offers no justification to stray from this Court's prior determination that Plaintiffs fail to plead that element.

cases that feature disclosure under circumstances bearing no resemblance to Plaintiffs' allegations of disclosure to 24 private service providers. *Compare* Opp. at 29, *with In re Google RTB Consumer Priv. Litig*., 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (disclosure to a "group of RTB participants" when "over 1 million publishers are known to participate in the RTB bidding process"), *and McKenzie v. Foley*, 1995 WL 18253130, at *3 (Kan. App. Aug. 11, 1995) (photos were scattered on a public street and videotape was left at tavern), *and Hillman*, 164 Wis. 2d at 387 (jail personnel "disclosed his HIV positive status to other jail employees and inmates"). And Plaintiffs' argument that third parties have an *incentive* to disseminate Plaintiffs' information, Opp. at 30, is pure speculation unsupported by a single factual allegation. Plaintiffs fail to plead disclosure that is substantially certain to become one of public knowledge, and so fail to plead publicity.[9]

**2. Plaintiffs Fail to Plead a Disclosure of Intimate Facts**

The Opposition mischaracterizes the standard for a "highly offensive" disclosure, which evaluates whether the ***information disclosed*** constituted sensitive or intimate private facts such that their disclosure would be highly offensive to a reasonable person. *See* Mot. at 21–22. Plaintiffs cite inapposite cases regarding claims of ***intrusion upon seclusion***, which—unlike public disclosure claims—evaluate the offensiveness of the ***intrusion***, not the private nature of the ***facts***. Opp. at 31, 33–34 (citing *In re TikTok, Inc.*, 2025 WL 3628598, at *16 (analyzing whether "the manner" of data collection was highly offensive for intrusion upon seclusion claim); *Turner*, 737 F. Supp. 3d at 884–85 (same); *Riganian*, 791 F. Supp. 3d at 1088

[9] As to Plaintiffs' Wisconsin public-disclosure-of-private-facts claim, Plaintiffs also implicitly concede that there is no special relationship between Plaintiffs and the third parties at issue. Opp. at 29 (arguing a special relationship is not required, not that there was one here). The Court already dismissed this claim for "lack of any alleged special relationship," which Wisconsin law requires where, as here, there is disclosure to a limited set of third parties. FAC Order at 9. The same result should hold here.

(same); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) (same); *Cherkin*, 2025 WL 844378, at *4–6 (same)).

As courts have made clear, consideration of whether "publication of this information was highly offensive, [] is not the proper basis for a claim of public disclosure of private facts. The proper question is whether there is a disclosure of the kind of sufficiently ***sensitive or intimate private facts*** which would be offensive and objectionable to the reasonable person." *Lutfi v. Al Naimi*, 2018 WL 6265082, at *5 (C.D. Cal. Jan. 17, 2018) (emphasis added) (citation and quotations omitted). Tellingly, Plaintiffs fail to even address Renaissance's cited cases dismissing public-disclosure-of-private-facts claims on this basis. *Compare* Opp. at 33–34, *with* Mot. at 21–22 (citing *Reade v. N.Y. Times Co.*, 2022 WL 2396083, at *7 (E.D. Cal. July 1, 2022) (dismissing public-disclosure-of-private-facts claim for disclosure of Social Security number); *Karimi v. Golden Gate Sch. of L.*, 361 F. Supp. 3d 956, 980 (N.D. Cal. 2019) (law student's suspension in alleged violation of FERPA not "intimate detail"); *Nabeel v. Taylor Swift Prods., Inc.*, 2024 WL 4444483, at *3 (C.D. Cal. July 31, 2024) ("mental illness" and "family issues" do not "rise to the level of intimate information")); *see also Evans v. Amazon.com, Inc.*, 759 F. Supp. 3d 891, 902 (E.D. Wis. 2024) (publication of video recorded without consent from hidden camera not highly offensive where facts disclosed dissimilar to highly intimate "drug overdose or employment misconduct").

Indeed, Plaintiffs cite no authority to support their claim that the disclosure of routine educational data is highly offensive, instead simply asserting that the data is "sufficiently personal and private." Opp. at 32. Without factual allegations, and with the relevant authority compelling the opposite conclusion, Plaintiffs fail to allege disclosure of facts that would be highly offensive to a reasonable person.

**3. Plaintiffs Fail to Plead No Legitimate Public Concern**

Plaintiffs argue in their Opposition that they "plausibly allege that there is" no legitimate public concern, but upon review, the cited paragraphs of the SAC are bare

recitations of this element. Opp. at 34; SAC ¶¶ 336–37, 498, 513, 663 (reciting "no legitimate public interest," or that "Renaissance either knew that there was no legitimate public interest . . . or acted unreasonably or recklessly"). That is insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("formulaic recitation of the elements of a cause of action" insufficient to plausibly plead a claim).

### F. Plaintiffs' Unjust Enrichment Claims Fail (Counts VII and XI)

The Opposition does nothing to cure the pleading failures in the SAC: Plaintiffs still have not plausibly alleged (1) a benefit conferred upon Renaissance in any measurable economic sense, or (2) that it is inequitable for Renaissance to retain that alleged benefit. Either deficiency independently compels dismissal.

#### 1. Plaintiffs Fail to Plead a Measurable Economic Benefit

Both Wisconsin and Kansas law require that any benefit conferred be an economic one, quantifiable in some "measurable, economic sense." *Giasson v. MRA - Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 941 (E.D. Wis. 2025). Plaintiffs argue that *Giasson* and *In re Emporia Property Group, LLC,* 2022 WL 567727 (Bankr. D. Kan. Feb. 24, 2022), are distinguishable because the SAC goes beyond alleging data sharing and instead identifies specific ways Renaissance monetizes student data. Opp. at 35–36. That argument misreads both decisions and mischaracterizes the SAC's allegations. In *Giasson*, the plaintiff alleged the defendant "used [her] PII/PHI to facilitate its business operations," and devoted considerable attention to the value of PII generally and on the dark web. 777 F. Supp. 3d at 941. The court dismissed the PII-based theory ***with prejudice*** nonetheless, finding the complaint "lack[ed] any contextualizing information as to what role plaintiff's PII played in business operation and how retention of her PII benefitted [the defendant] in some measurable, economic sense." *Id.* Critically, the court drew a sharp distinction between the market value of stolen PII generally (what was alleged) and the economic value of that PII to the defendant's ***own business*** (what was missing). *Id.* Likewise, in *In re Emporia Property Group*, the court dismissed an unjust enrichment

claim that "contain[ed] nothing but a conclusory allegation of benefit" and "fail[ed] to allege what was received, from whom the benefit was received, and how the benefit was received." 2022 WL 567727, at *7.

The same reasoning is applicable here, where the allegations in the SAC, though voluminous, remain vague and conclusory on the dispositive question: how Plaintiffs' data specifically benefitted Renaissance in a measurable economic sense. *See* Mot. at 23–24. The core allegations Plaintiffs highlight in their Opposition to demonstrate an adequately pleaded "measurable, economic" benefit are substantively identical to those in the FAC (and in some cases verbatim). *See* Opp. at 35.[10] The only new allegations Plaintiffs present do nothing to advance a cognizable theory of measurable economic benefit because they speak only ***generally*** about the value of user data to companies that collect it. SAC ¶¶ 36, 380–81. This is the same abstraction the *Giasson* court refused to credit. 777 F. Supp. 3d at 941. Similarly, the forensic testing allegations that Plaintiffs cite in the Opposition, SAC ¶¶ 99–105, merely add detail to the FAC's allegations about third parties with whom Renaissance allegedly shares user data, *cf.* FAC ¶¶152–95. The mere fact that data is allegedly shared does nothing to substantiate a claim of measurable economic benefit, and Plaintiffs cite no authority for that proposition. Despite Plaintiffs' repeated attempts to bolster their unjust enrichment claim, the SAC's amendments do not cure the FAC's fundamental failure to plead a measurable economic benefit.

---

[10] *Compare* SAC ¶¶ 7–8, 35–38, 353–58, 390–92 (allegations that data has economic value and generates revenue), *with* FAC ¶¶ 5–6, 34–38, 306–11, 341–43 (same); *compare* SAC ¶¶ 33, 225, 235, 237, 258, 260–69, 271 (allegations that using student data to "build, market, deliver, and improve" Renaissance's products generates revenue), *with* FAC ¶¶ 32, 110–12, 114–24 (same); *compare* SAC ¶¶ 245–46, 252 (value alleged in data-sharing agreements with third parties), *with* FAC ¶¶ 141–44, 150 (same); *compare* SAC ¶¶ 48–49 (value in student data allegedly attracted investors), *with* FAC ¶¶ 47–48 (same).

### 2. Even if Plaintiffs Had Pled a Benefit, Any Alleged Retention Is Not Inequitable

The doctrine of unjust enrichment exists to "prevent[] one from profiting or enriching himself at the expense of another contrary to equity." *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 558–59 (1977) (emphasis added)*; see also Brame v. General Motors LLC*, 535 F. Supp. 3d 832, 842 (E.D. Wis. 2021) ("[U]njust enrichment is an equitable doctrine that is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust."). None of the arguments in Plaintiffs' Opposition demonstrate this doctrine is applicable here.

**Plaintiffs benefit from the very practices they challenge**. In the Motion, Renaissance argued that Plaintiffs themselves concede they received a benefit from an arrangement where their data is collected and shared incidentally to their use of the at-issue products. *See* Mot. at 24 (citing *Weaver v. Champion Petfoods USA Inc*., 2019 WL 2774139, at *6 (E.D. Wis. July 1, 2019); *Brame*, 535 F. Supp. 3d 832 at 843). The SAC alleges that Renaissance's use of their data "improved" Renaissance's educational products, SAC ¶¶ 534, 629, which Plaintiffs access through their schools. Providing students with enhanced educational tools improved in part by analyzing insights from user data is not the kind of benefit "at the expense of another contrary to equity" that unjust enrichment is designed to remedy. *Shutts*, 222 Kan. at 558–59. In the Opposition, Plaintiffs do not dispute that Renaissance's collection of data is used to "improve" its products. Instead, they argue that an inequitable benefit can be inferred from the mere fact that Renaissance *also* benefits commercially from the collection of data. Opp. at 36. Plaintiffs cite no authority for this proposition.

Plaintiffs' contention that *Brame* and *Weaver* are inapposite because they involved adults in commercial transactions is similarly unavailing. Opp. at 36–37. Both opinions turned on the principle that unjust enrichment "involves getting something for nothing"—not on the nature of the parties. *See Weaver*, 2019 WL

2774139, at *6; *Brame*, 535 F. Supp. 3d at 842. In both cases, dismissal followed because plaintiffs received something in exchange for the complained-of conduct. The same is true here. The SAC itself alleges that Plaintiffs received "educational services" "[i]n exchange for" Renaissance's data practices—a recognition that value flowed in both directions. SAC ¶¶ 537, 633. Plaintiffs' assertions that Renaissance's motives are commercial or that Plaintiffs are not adults are thus beside the point.

**Compulsory schooling does not negate the value received**. Plaintiffs also fail to meaningfully rebut Renaissance's argument that compulsory school education does not include the right to use edtech products, or even if it did, that would not negate the benefit that Plaintiffs received in using Renaissance's products. Mot. at 24–25. Plaintiffs assert that they receive no value from Renaissance's products because they were entitled to receive the underlying education services regardless, Opp. at 37–38, but they fail to distinguish Renaissance's cited cases or to supply any of their own. *Id.* Plaintiffs claim Renaissance "misrepresents" the holding of *Shanahan*, 2026 WL 982855, at *4, but it is Plaintiffs who misread the case. *See* Opp. at 38. The Motion cited *Shanahan* for the simple principle that legal compulsion to attend school does not extend to using any particular product. *See* Mot. at 24–25. Indeed, the Ninth Circuit stated that "[t]he law often compels parties to transact" and that "Kansas law does not require Plaintiffs to use IXL's products; it requires only that Plaintiffs attend school." *Shanahan*, 2026 WL 982855, at *4. So too here: the schools' decision to contract with Renaissance was a choice, not a legal mandate, and Plaintiffs' legal entitlement to a free education does not encompass every technological tool used to deliver it. *See Bd. of Educ. v. Sinclair*, 222 N.W.2d 143, 146–48 (Wis. 1974) (holding certain instructional tools fall outside Wisconsin's constitutional "free" education guarantee). That Plaintiffs' schools chose to provide them with the at-issue products thus does not negate the benefit Plaintiffs received from using those products.

In any event, the unjust enrichment inquiry does not ask whether students were required to use Renaissance's products; it asks whether, having used those products, students received something of value in return for the data incidentally provided. The answer, confirmed by the SAC itself, is yes: sophisticated, tailored educational products delivered to them for free, further improved by Renaissance's user data insights. SAC ¶¶ 534, 537, 629, 633. That exchange defeats any claim that Renaissance's retention of a benefit is inequitable. *See Weaver*, 2019 WL 2774139, at *6. The unjust enrichment claims should be dismissed.

### G. The SAC Should Be Dismissed with Prejudice

The Opposition addresses only in a cursory footnote Renaissance's argument that the Court should dismiss the SAC with prejudice. Opp. at 38 n.12. Plaintiffs offer no meaningful response to the authority cited by Renaissance, holding that a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Mot. at 29 (quoting *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011)). Plaintiffs' only cited case, *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000), is readily distinguishable. There, the Ninth Circuit ruled that the court below erred in denying leave to amend a second time to a pro se prisoner who had sued under the Prison Litigation Reform Act, where amendment could correct the defects in his complaint. *Id*. at 1130.

As explained in the Motion and Section II.B, *supra*, the Court has broad discretion to deny leave to amend in the circumstances present here: Where Plaintiffs have already been granted two opportunities to amend their complaint and have attempted three times, but failed, to make out a plausible claim against Renaissance, further amendment would be futile and dismissal should be with prejudice. *See Lazaro*, 2012 WL 13012735, at *4 (dismissing claim with prejudice and denying leave to "amend a second time" where "[p]laintiffs were given an opportunity to cure the deficiency in their Complaint and failed to do so").

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss all counts of the SAC with prejudice.

Dated: July 13, 2026

COOLEY LLP

By: *Matthew D. Brown*
Matthew D. Brown

Attorneys for Defendant
RENAISSANCE LEARNING, INC.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

Pursuant to Local Rule 11-6.2, I hereby certify the foregoing Reply Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and text of this certification, comprises 8,021 words, in compliance with Local Civil Rule 11-6.2 and this Court's March 27, 2026 Order (Dkt. No. 62).

Dated: July 13, 2026

COOLEY LLP

By: */s/ Matthew D. Brown*
Matthew D. Brown

Attorneys for Defendant
RENAISSANCE LEARNING, INC.